IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OAKWOOD HOMES CORPORATION, *et al.*, | Bankr. Case No. 02-13396 (PJW) |
| Debtors. | Jointly Administered |
| JPMORGAN CHASE BANK, TRUSTEE, | |
| Appellant, | |
| vs. | Civil Action No. 04-951-JJF |
| U.S. BANK NATIONAL ASSOCIATION, | |
| Appellee. | |

**MOTION OF THE OHC LIQUIDATION TRUST FOR
PARTIAL RELIEF FROM THE COURT'S SEPTEMBER 28, 2004
ORDER GRANTING APPELLANT'S MOTION FOR A STAY PENDING APPEAL**

The OHC Liquidation Trust (the "Trust"), by and through its undersigned counsel, respectfully submits this motion, pursuant to 28 U.S.C. § 1651, Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 60(b) of the Federal Rules of Civil Procedure ("Federal Rules"), for partial relief from the Court's Order dated September 28, 2004 (the "Stay Order") granting the *Emergency Motion of JPMorgan Chase Bank, as Trustee, for a Temporary Stay Without Bond Pending the Later of the Successful Completion of Mandatory Mediation or Final Resolution of the Reserve Appeal; Alternatively, for Reconsideration of this*

*Court's Order Denying JPMorgan's Motion for a Stay Pending Appeal*, dated September 14, 2004 (the "Emergency Stay Motion"). A true and correct copy of the Stay Order is attached hereto as Exhibit A and a true and correct copy of the Emergency Stay Motion is attached hereto as Exhibit B. In support of its Motion, the Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  The Trust herein requests a modification to the manner in which it has been Ordered to protect the interests of Appellant JPMorgan Chase Bank ("JPMorgan") pending resolution of this appeal (the "Reserve Appeal"). In the Stay Order, the Trust was directed to hold in reserve more than $61 million pending resolution of the Reserve Appeal. As of the date of this filing, the Trust continues to dutifully hold more than $61 million, awaiting further Order of this Court.

2.  There has, however, been a recent and substantial change in fact that strongly suggests the Court should grant the Trust partial relief from the Stay Order. As the Court may recall, the large size of the reserve was based on the large size of certain disputed unsecured claims asserted by JPMorgan that are at the heart of a companion appeal previously before this Court (Civil Action No. 04-835) (the "Claims Allowance Appeal"). In the Claims Allowance Appeal, JPMorgan argued that it should be allowed general unsecured claims in the Debtors' cases for, not only the principal amount of certain Class B-2 Certificates (about $98.7 million), but also for post-petition interest on such Certificates (total argued claim equaling about $411.6 million). On February 17, 2005, the Court ruled in the Claims Allowance Appeal, affirming orders of the United States Bankruptcy Court (the "Bankruptcy Court") that allowed JPMorgan's claims in the approximate amount of only $25.3 million. JPMorgan has since

appealed the Court's February 17th ruling to the United States Court of Appeals for the Third Circuit (the "Third Circuit").

3. In its Third Circuit appeal, JPMorgan has not pressed its argument for post-petition interest on the Class B-2 Certificates. In other words, JPMorgan requests of the Third Circuit only the allowance of claims equal to the principal amount of the Class B-2 Certificates, or $98.7 million. Furthermore, since no party-in-interest has objected to that portion of JPMorgan's claims previously allowed by the Bankruptcy Court, the Trust has long recognized as allowed about $25.3 million of the $98.7 million in requested claims.

4. In sum, since entry of the Stay Order, the amount of JPMorgan claims in dispute has decreased from $411.6 million to $73.4 million. Meanwhile, as indicated above, the Trust continues to hold in reserve, pursuant to the Stay Order, more than $61 million, or about 83% of JPMorgan's disputed claims. In stark contrast to this reserve, the Trust to date has only been able to distribute to unsecured creditors and into other disputed claims reserves 15.5% of the claimed amount, which in JPMorgan's case would equal a reserve of only about $11.4 million. The Stay Order has, therefore, compelled the Trust to over-reserve for JPMorgan in an amount equal to almost $50 million.

5. The Trust respectfully submits that the Court can afford the Trust partial relief from the Stay Order to enable distributions to creditors of excess reserve funding and, at the same time, protect JPMorgan's interests should it be successful in its Third Circuit appeal. The Court only needs to Order: (1) the Trust shall leave in the JPMorgan reserve an amount that would equate to a pro rata distribution to JPMorgan on account of its claims in dispute (about $73.4 million) as of the date of the Order (as of the date of this filing, 15.5% of $73.4 million, or $11.4 million); and (2) if additional distributions are made to unsecured creditors and into

3

disputed claims reserves before conclusion of the Third Circuit appeal, the Trust shall add to the JPMorgan reserve an amount that would equate to a pro rata distribution to JPMorgan on account of its $73.4 million disputed claims.

6. For these reasons, as more fully elaborated herein, the Trust respectfully requests that the Court enter the proposed form of order attached hereto.

**BACKGROUND**

7. **The Chapter 11 Cases.** On November 15, 2002 (the "Petition Date"), most of the Debtors filed voluntary petitions for Chapter 11 relief with the Bankruptcy Court. The Chapter 11 cases culminated in the Debtors' *Second Amended Joint Consolidated Plan of Reorganization*, dated February 6, 2004 (as amended, the "Plan"), which was confirmed by the Bankruptcy Court on March 31, 2004 and became effective by its terms on April 15, 2004 (the "Effective Date"). A true and correct copy of the Plan (excluding exhibits, which are available upon request) is attached hereto as Exhibit C.

8. **The Trust as Primary Successor to the Debtors.** On the Plan's Effective Date, substantially all of the Debtors' assets and businesses were sold. (Plan § 6.1). Sale proceeds and unsold estate assets were vested in the Trust. (Plan § 6.1(c)). The Trust is directed by the Plan to make distributions to creditors, and is charged with substantially all administrative responsibilities for winding-up the Debtors' Chapter 11 cases. (Plan § 6.3(b)). Unsecured creditors received beneficial interests in the Trust and have a remainderman's interest in the Trust's corpus (after full satisfaction of allowed administrative, priority, and secured claims, and satisfaction of the Trust's administrative expenses). (Plan §§ 4.16-4.20).

9. **Reserve Mechanics Under the Plan for Disputed Claims.** The Trust's obligations regarding distributions to creditors are subject to the establishment and maintenance

4

of "disputed claims reserves." (Plan § 8.2(a)). Specifically, the Plan requires the Trust to establish a separate disputed claims reserve pending allowance of any disputed claim. Id. Distributions into a disputed claims reserve must be made at the time of distribution to holders of allowed claims in the same class. (Plan § 8.2(c)). The amount to be placed in such a reserve is based on either the ratable proportion of all cash or other property allocated for distribution on account of each disputed claim based upon the asserted amount of such disputed claim, or such lesser amount as may be agreed to by the holder of the disputed claim and the Trust, or as may otherwise be determined by the Bankruptcy Court. Id. Since the Effective Date, the Trust has used this Plan mechanic to establish reserves for hundreds of millions of dollars in claims that were and/or remain in dispute. Because of the holdback required by the Stay Order, the Trust has not used this Plan mechanic to establish reserves for JPMorgan.

10.   **The Claims Allowance Appeal.** On May 6, 2004, the Bankruptcy Court entered five orders granting in part and denying in part claims objections filed by Appellee U.S. Bank National Association ("U.S. Bank") to proofs of claim filed by JPMorgan as trustee for holders of certain Class B-2 Certificates guaranteed by Debtor Oakwood Homes Corporation. In the five orders, the Bankruptcy Court ruled that the claims were disallowed to the extent that they included post-petition interest and that the claims were only entitled to be allowed to the extent of their present value as of the Petition Date. JPMorgan appealed the Bankruptcy Court's orders to this Court on behalf of certain of the holders of Class B-2 Certificates. On February 17, 2005, the Court issued a Memorandum Opinion affirming the Bankruptcy Court orders. A true and correct copy of the Court's Memorandum Opinion is attached hereto as Exhibit D. JPMorgan has since appealed the Court's ruling to the Third Circuit.

11. **The Reserve Appeal and Stay Order.** On June 6, 2004, the Bankruptcy Court entered an order respecting a motion filed by JPMorgan seeking an order directing the Trust to establish a reserve pending resolution of the Claims Allowance Appeal. In its order, the Bankruptcy Court ruled that the Trust does not need to place any amount in reserve for JPMorgan, but enabled JPMorgan to direct the Trust to reserve up to about $61 million pending resolution of the Claims Allowance Appeal if it posts a bond by August 1, 2004 equal to 7.74% of the amount to be held in reserve. JPMorgan did not post the bond contemplated by the Bankruptcy Court's order. Rather, JPMorgan appealed the order to this Court, thereby creating the instant controversy.

12. Thereafter (but several months prior to the Court's February 15th ruling in the Claims Allowance Appeal), JPMorgan filed the Emergency Stay Motion, requesting an order staying the Trust from distributing more than $61 million, which funds would be held in reserve pending resolution of the Claims Allowance Appeal. On September 28, 2004, the Court entered the Stay Order and, since that time, the Trust has maintained more than $61 million in reserve pending further Order of this Court.

13. **Meanwhile, Distributions Have Been Made to JPMorgan.** Notwithstanding its reserve of more than $61 million for JPMorgan, the Trust has long recognized that a portion of the JPMorgan claims are allowed and entitled to distributions. As noted above, the Bankruptcy Court allowed JPMorgan's claims in the amount of about $25.3 million and no party-in-interest has appealed that aspect of the Bankruptcy Court orders. Accordingly, the Trust has made distributions to JPMorgan on account of the allowed part of its claims.

14. **A Substantial Change in Facts: JPMorgan Did Not Press its Claim for Post-Petition Interest in the Third Circuit Appeal.** Attached hereto as <u>Exhibit E</u> is a true and

correct copy of JPMorgan's opening brief in the Third Circuit appeal (without exhibits or appendix which are available upon request). The brief does not include an argument for allowance of post-petition interest. As a result, the amount in controversy has decreased from $411.6 million (principal amount plus post-petition interest) to $73.4 million (principal amount, or $98.7 million, minus the amount long recognized by the Trust as allowed, or $25.3 million). Stated differently, the amount at issue is slightly less than 18% as large as it was when the Court issued the Stay Order.

## LEGAL ARGUMENT

15.     The All Writs Act, 28 U.S.C § 1651(a), enables federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

16.     In the bankruptcy context, Bankruptcy Code Section 105(a),[1] Bankruptcy Rule 9024,[2] and Federal Rule 60(b)[3] enable a court to modify its prior orders in appropriate circumstances. Specifically, a court may revisit a prior order if it finds that "it is no longer equitable" for the order to stand as originally entered, or if there are "other reason[s] justifying

---

[1] Bankruptcy Code Section 105(a) provides, in pertinent part, as follows: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

[2] Bankruptcy Rule 9024 renders Federal Rule 60(b) generally applicable to bankruptcy cases.

[3] Federal Rule 60(b) provides, in pertinent part, as follows: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

7

relief" from the prior order. Fed. R. Civ. P. (60)(b)(5), (6); see BII, Inc. v. Chapter 7 Trustee (In re IBI Sec. Serv., Inc.), 133 F.3d 205, 209 (2d Cir. 1998) ("A bankruptcy court has the power to reverse its prior orders pursuant either to its general equitable powers or Bankruptcy Rule 9024.").

17.  Whether a court should exercise such powers is a matter that falls squarely within its sound discretion. See Lasky v. Continental Products Corp., 804 F.2d 250, 256 (3d Cir. 1986) (the determination to grant or deny relief under Rule 60(b) is within the sound discretion of the court); see also Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 393 (1992) (O'Connor, J., concurring) (when modifying an order under Rule 60(b), "[d]etermining what is 'equitable' is necessarily a task that entails substantial discretion").

18.  Modification of a prior order is especially warranted where there is a material change in facts. See Rufo, 502 U.S. 367; Building and Constr. Trades Council v. N.L.R.B., 64 F.3d 880, 887 (3d Cir. 1995); see also State Bank v. Gledhill (In re Gledhill), 76 F.3d 1070, 1080-82 (10th Cir. 1996) (relief from lift stay order was warranted under Bankruptcy Rule 9024 and Federal Rule 60(b) due to subsequent changes in the facts of the case); C.I.T. Corp. v. Johnson & Morgan Contractors (In re Johnson & Morgan Contractors), 29 B.R. 372, 374 (Bankr. M.D. Pa. 1983) (same); In re Integrated Health Services, Inc., 2000 WL 33712482, *2 (Bankr. D. Del. Oct. 10, 2000) (modifying previous order because, under Bankruptcy Rule 9024 and Federal Rule 60(b), "it is no longer equitable for the Order to have prospective effect" due to change in facts since issuance of the order).

19.  Here, there is more than ample reason justifying partial relief from the Stay Order. The amount in dispute has decreased from $411.6 million to $73.4 million. The $61 million reserve being held by the Trust is 83% of the disputed amount of JPMorgan's claims. At

the same time, unsecured creditors have received and disputed claims reserves are holding only 15.5% of the claimed amount. As a result, the Stay Order is compelling an over-funding of the JPMorgan reserve by almost $50 million.

20.  As an alternative way to protect JPMorgan, the Trust respectfully requests an alternative Order, which directs the Trust as follows: (1) the Trust shall leave in the JPMorgan reserve an amount that would equate to a pro rata distribution to JPMorgan on account of its claims in dispute (about $73.4 million) as of the date of the Order (as of the date of this filing, 15.5% of $73.4 million, or $11.4 million);[4] and (2) if additional distributions are made to unsecured creditors and into disputed claims reserves before conclusion of the Third Circuit appeal, the Trust shall add to the JPMorgan reserve an amount that would equate to a pro rata distribution to JPMorgan on account of its $73.4 million disputed claims. This will mirror the reserve mechanic prescribed by the Plan and that is working effectively for many other claimants in the cases.

## DISCUSSIONS WITH THE PRINCIPAL PARTIES

21.  Prior to filing this Motion, the Trust spent a considerable amount of time and expended significant effort attempting to achieve full consensus among the parties regarding the relief requested in this Motion. The Trust was not, however, able to develop consensus on the wording of a proposed "Stipulation and Order" largely due to concerns about the implications such a ruling might have to the Claims Allowance Appeal and/or the Reserve Appeal. The Trust filed this Motion promptly after settlement discussions with the parties concluded. The proposed

---

[4] This amount is likely to increase because the Trust is directed by the Plan to make, when feasible, quarterly distributions to unsecured creditors. The Trust presently anticipates making an additional distribution to creditors within the few weeks following this filing.

form of order attached hereto endeavors to capture the procedural nature of the relief requested in this Motion and specifically provides that it will have no substantive implications to the parties' respective positions in the Claims Allowance Appeal or the Reserve Appeal.

### CONCLUSION

**WHEREFORE**, the Trust respectfully requests that the Court enter the proposed form of Order attached hereto, and otherwise grant the Trust such other and further relief as is just and proper.

Dated:   August 5, 2005
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Gilbert R. Saydah, Jr.*

Robert J. Dehney (No. 3578)
Michael G. Busenkell (No. 3933)
Gilbert R. Saydah, Jr. (No. 4304)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
Tele:  (302) 658-9200
Fax:   (302) 658-3989

– and –

BROWN RUDNICK BERLACK ISRAELS LLP
Robert J. Stark
Seven Times Square
New York, New York 10036
Tele:  (212) 209-4800
Fax:   (212-209-4801

CO-COUNSEL TO THE OHC LIQUIDATION TRUST