# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| OAKWOOD HOMES CORPORATION, et al.,[1] | ) ) | Case No. 02-13396 (PJW) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

---

## SECOND AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION OF OAKWOOD HOMES CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

### Dated: February 6, 2004

**MORRIS, NICHOLS, ARSHT & TUNNELL**
Robert J. Dehney (No. 3578)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

- and -

**RAYBURN COOPER & DURHAM, P.A.**
C. Richard Rayburn, Jr.
Albert F. Durham
Patricia B. Edmondson
1200 Carillon, 227 West Trade Street
Charlotte, North Carolina 28202-1675
(704) 334-0891

Co-Counsel for Oakwood Homes Corporation, et al., Debtors and Debtors In Possession

---

[1] The Debtors are the following entities: Oakwood Homes Corporation, New Dimension Homes, Inc., Dream Street Company, LLC, Oakwood Shared Services, LLC, HBOS Manufacturing, LP, Oakwood MHD4, LLC, Oakwood Acceptance Corporation, LLC, Oakwood Mobile Homes, Inc., Suburban Home Sales, Inc., FSI Financial Services, Inc., Home Service Contract, Inc., Tri-State Insurance Agency, Inc., Golden West Leasing, LLC, Crest Capital, LLC and Preferred Housing Services, LP.

THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES WHETHER DEBT OR EQUITY OF THE DEBTORS SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTUAL, THREATENED OR POTENTIAL ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED AS AN ADMISSION, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# TABLE OF CONTENTS

**Page**

| ARTICLE I. | | DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW | 1 |
|---|---|---|---|
| | 1.1 | DEFINITIONS. | 1 |
| | (1) | 1997 BONDS SECURED CLAIM | 1 |
| | (2) | 1997-A GUARANTEE | 1 |
| | (3) | 1997-B GUARANTEE | 1 |
| | (4) | 1997-C GUARANTEE | 1 |
| | (5) | 1997-D GUARANTEE | 1 |
| | (6) | 1998 BONDS SECURED CLAIM | 2 |
| | (7) | 1998-B GUARANTEE | 2 |
| | (8) | 1998-C GUARANTEE | 2 |
| | (9) | 1998-D GUARANTEE | 2 |
| | (10) | 1999-A GUARANTEE | 2 |
| | (11) | 1999-B GUARANTEE | 2 |
| | (12) | 1999-C LIMITED GUARANTEE | 2 |
| | (13) | 1999-C GUARANTEE | 2 |
| | (14) | 1999-D GUARANTEE | 2 |
| | (15) | 1999-E GUARANTEE | 2 |
| | (16) | 2000-A GUARANTEE | 2 |
| | (17) | 2000-B GUARANTEE | 2 |
| | (18) | 2001-B GUARANTEE | 2 |
| | (19) | 2001-C GUARANTEE | 2 |
| | (20) | 2001-D GUARANTEE | 2 |
| | (21) | 2001-E GUARANTEE | 3 |
| | (22) | 2002-A GUARANTEE | 3 |
| | (23) | 2002-B GUARANTEE | 3 |
| | (24) | ADMINISTRATIVE CLAIM | 3 |
| | (25) | ADMINISTRATIVE CLAIM BAR DATE ORDER | 3 |
| | (26) | AFFILIATE DEBTOR(S) | 3 |
| | (27) | ALLOWED CLAIM OR INTEREST | 3 |
| | (28) | ALLOWED [CLASS DESIGNATION] CLAIM OR INTEREST | 4 |
| | (29) | AMENDED AND RESTATED BYLAWS | 4 |
| | (30) | AMENDED AND RESTATED CERTIFICATES OF INCORPORATION | 4 |
| | (31) | APPROVAL HEARING | 4 |
| | (32) | ASSETS | 4 |
| | (33) | AUTO SECURED CLAIM | 4 |
| | (34) | AVOIDANCE ACTIONS | 4 |
| | (35) | B-2 REMIC GUARANTEES | 4 |
| | (36) | B-PIECE REMIC CERTIFICATES | 5 |
| | (37) | BALLOT | 5 |

(i)

| | | |
|---|---|---|
| (38) | BALLOT DEADLINE | 5 |
| (39) | BALLOTING AGENT | 5 |
| (40) | BANKRUPTCY CODE | 5 |
| (41) | BANKRUPTCY COURT | 5 |
| (42) | BANKRUPTCY RULES | 5 |
| (43) | BAR DATE ORDER | 5 |
| (44) | BERKSHIRE | 5 |
| (45) | BID PROCEDURES ORDER | 5 |
| (46) | BSI | 5 |
| (47) | BUSINESS DAY | 6 |
| (48) | BUYER | 6 |
| (49) | CAROLINA SECURED CLAIM | 6 |
| (50) | CASH | 6 |
| (51) | CASH EQUIVALENTS | 6 |
| (52) | CAUSES OF ACTION | 6 |
| (53) | CHAPTER 11 CASE | 6 |
| (54) | CLAIM | 6 |
| (55) | CLAIMS AGENT | 7 |
| (56) | CLAIMS/INTERESTS OBJECTION DEADLINE | 7 |
| (57) | CLASS | 7 |
| (58) | CONFIRMATION DATE | 7 |
| (59) | CONFIRMATION HEARING | 7 |
| (60) | CONFIRMATION ORDER | 7 |
| (61) | CONVENIENCE CLAIM | 7 |
| (62) | CONVENIENCE CLASS ELECTION | 7 |
| (63) | CONVENIENCE CLASS OPT-IN ELECTION | 7 |
| (64) | CONVENIENCE CLASS OPT-OUT ELECTION | 7 |
| (65) | CREDITORS' COMMITTEE | 8 |
| (66) | DEBTOR-HELD INTEREST | 8 |
| (67) | DEBTOR(S) | 8 |
| (68) | DIP CLAIM | 8 |
| (69) | DIP LENDERS | 8 |
| (70) | DISALLOWED | 8 |
| (71) | DISCLOSURE STATEMENT | 8 |
| (72) | DISCLOSURE STATEMENT ORDER | 8 |
| (73) | DISPUTED AMOUNT | 8 |
| (74) | DISPUTED CLAIM OR INTEREST | 9 |
| (75) | DISPUTED CLAIMS RESERVE | 9 |
| (76) | DISTRIBUTION ADDRESS | 9 |
| (77) | DISTRIBUTION DATE | 9 |
| (78) | EFFECTIVE DATE | 9 |
| (79) | ESTATE | 9 |
| (80) | ESTIMATION ORDER | 9 |
| (81) | EXCLUDED ASSETS | 10 |
| (82) | EXCLUDED SALE DEBTOR ASSETS | 10 |
| (83) | EXCLUDED SALE TRUST ASSETS | 10 |
| (84) | EXECUTORY CONTRACT SCHEDULE | 10 |

(ii)

| (85) | EXIT FACILITY | 10 |
| (86) | EXIT FACILITY AGREEMENT | 10 |
| (87) | EXIT FACILITY LENDER | 10 |
| (88) | FACE AMOUNT | 10 |
| (89) | FEE CLAIM | 10 |
| (90) | FEE ORDER | 10 |
| (91) | FINAL DIP AGREEMENT | 11 |
| (92) | FINAL DIP ORDER | 11 |
| (93) | FINAL ORDER | 11 |
| (94) | FIRST AMERICAN SECURED CLAIM | 11 |
| (95) | FOOTHILL | 11 |
| (96) | FOOTHILL SECURED CLAIM | 11 |
| (97) | FUTURE CLAIM | 11 |
| (98) | HOLDER | 12 |
| (99) | IMPAIRED | 12 |
| (100) | INITIAL DISTRIBUTION DATE | 12 |
| (101) | INITIAL STAND ALONE TRUST ASSETS | 12 |
| (102) | INSIDER | 12 |
| (103) | INTERCOMPANY CLAIM | 12 |
| (104) | INTEREST | 12 |
| (105) | INTERESTED PARTY PROFESSIONALS | 12 |
| (106) | JPMORGAN | 13 |
| (107) | JUNIOR NOTES | 13 |
| (108) | JUNIOR NOTES CLAIM | 13 |
| (109) | JUNIOR NOTES INDENTURE | 13 |
| (110) | JUNIOR NOTES INDENTURE TRUSTEE | 13 |
| (111) | LIEN | 13 |
| (112) | LIQUIDATION TRUST | 13 |
| (113) | LIQUIDATION TRUST ADVISORY COMMITTEE | 13 |
| (114) | LIQUIDATION TRUST AGREEMENT | 13 |
| (115) | LIQUIDATION TRUSTEE | 13 |
| (116) | LITIGATION CLAIMS | 13 |
| (117) | NET PROCEEDS | 14 |
| (118) | NEW COMMON STOCK | 14 |
| (119) | NEW WARRANTS | 14 |
| (120) | NON-DEBTOR-HELD INTEREST | 14 |
| (121) | OAC | 14 |
| (122) | OAKWOOD | 14 |
| (123) | OFC | 14 |
| (124) | OFC AND OIC TAX CLAIMS | 14 |
| (125) | OIC | 14 |
| (126) | OLD COMMON STOCK | 14 |
| (127) | OMI | 15 |
| (128) | OMI TRUST 1995-B | 15 |
| (129) | OMI TRUST 1996-A | 15 |
| (130) | OMI TRUST 1996-B | 15 |
| (131) | OMI TRUST 1996-C | 15 |

(iii)

| | | |
|---|---|---|
| (132) | OMI TRUST 1997-A | 15 |
| (133) | OMI TRUST 1997-B | 15 |
| (134) | OMI TRUST 1997-C | 15 |
| (135) | OMI TRUST 1997-D | 15 |
| (136) | OMI TRUST 1998-A | 16 |
| (137) | OMI TRUST 1998-B | 16 |
| (138) | OMI TRUST 1998-C | 16 |
| (139) | OMI TRUST 1998-D | 16 |
| (140) | OMI TRUST 1999-A | 16 |
| (141) | OMI TRUST 1999-B | 16 |
| (142) | OMI TRUST 1999-C | 16 |
| (143) | OMI TRUST 1999-D | 16 |
| (144) | OMI TRUST 1999-E | 16 |
| (145) | OMI TRUST 2000-A | 17 |
| (146) | OMI TRUST 2000-B | 17 |
| (147) | OMI TRUST 2000-C | 17 |
| (148) | OMI TRUST 2000-D | 17 |
| (149) | OMI TRUST 2001-B | 17 |
| (150) | OMI TRUST 2001-C | 17 |
| (151) | OMI TRUST 2001-D | 17 |
| (152) | OMI TRUST 2001-E | 17 |
| (153) | OMI TRUST 2002-A | 18 |
| (154) | OMI TRUST 2002-B | 18 |
| (155) | OMI TRUST 2002-C | 18 |
| (156) | OSHC | 18 |
| (157) | OTHER SECURED AND SETOFF CLAIM | 18 |
| (158) | OTHER UNSECURED CLAIMS | 18 |
| (159) | PERSON | 18 |
| (160) | PETITION DATE | 18 |
| (161) | PLAN | 18 |
| (162) | PLAN SUPPLEMENT | 18 |
| (163) | PNC | 18 |
| (164) | PREPETITION LOAN AGREEMENT | 18 |
| (165) | PRIORITY NON-TAX CLAIM | 19 |
| (166) | PRIORITY TAX CLAIM | 19 |
| (167) | PROOF OF CLAIM | 19 |
| (168) | PURCHASE AGREEMENT | 19 |
| (169) | PURCHASE CONSIDERATION | 19 |
| (170) | PURCHASED BUSINESS | 19 |
| (171) | QUARTERLY DISTRIBUTION DATE | 19 |
| (172) | RATABLE, RATABLY OR RATABLE SHARE | 19 |
| (173) | RECORD DATE | 19 |
| (174) | REMIC GUARANTEE CLAIMS | 19 |
| (175) | REMIC TRUSTEE | 19 |
| (176) | REMIC TRUSTS | 19 |
| (177) | REORGANIZED SALE DEBTORS | 20 |
| (178) | REORGANIZED SALE OKWD | 20 |

|        |                                                                          |     |
|--------|--------------------------------------------------------------------------|-----|
| (179)  | REORGANIZED SALE DEBTORS CAPITALIZATION AMOUNT                           | 20  |
| (180)  | REORGANIZED STAND ALONE DEBTORS                                          | 20  |
| (181)  | REORGANIZED STAND ALONE OAKWOOD                                          | 20  |
| (182)  | RESECURITIZATION NOTE                                                    | 20  |
| (183)  | RESECURITIZATION NOTE PUT OPTION                                         | 20  |
| (184)  | RESECURITIZATION TRUST                                                   | 20  |
| (185)  | RESECURITIZATION TRUSTEE                                                 | 21  |
| (186)  | RESIDUAL REMIC CERTIFICATES                                             | 21  |
| (187)  | SALE OPTION                                                              | 21  |
| (188)  | SCHEDULE OF ASSETS AND LIABILITIES                                       | 21  |
| (189)  | SECURED CLAIM                                                            | 21  |
| (190)  | SECURED TAX CLAIM                                                        | 21  |
| (191)  | SENIOR NOTES                                                             | 21  |
| (192)  | SENIOR NOTES CLAIM                                                       | 21  |
| (193)  | SENIOR NOTES INDENTURE                                                   | 21  |
| (194)  | SENIOR NOTES INDENTURE TRUSTEE                                           | 21  |
| (195)  | SERVICING AGREEMENTS                                                     | 22  |
| (196)  | SOLICITATION PROCEDURES ORDER                                           | 22  |
| (197)  | STAND ALONE OPTION                                                       | 22  |
| (198)  | STAND ALONE VOTING TRUST                                                 | 22  |
| (199)  | STAND ALONE VOTING TRUST AGREEMENT                                      | 22  |
| (200)  | STAND ALONE VOTING TRUSTEE                                               | 22  |
| (201)  | STATEMENT OF FINANCIAL AFFAIRS                                          | 22  |
| (202)  | SUBSERVICING AGREEMENTS                                                  | 22  |
| (203)  | THOMAS SECURED CLAIM                                                     | 22  |
| (204)  | TRANSFER                                                                 | 22  |
| (205)  | U.S. BANK SECURED CLAIM                                                  | 22  |
| (206)  | U.S. GOVERNMENT OBLIGATIONS                                             | 22  |
| (207)  | UNCLAIMED PROPERTY                                                       | 23  |
| (208)  | UNIMPAIRED                                                               | 23  |
| (209)  | UNITED STATES TRUSTEE                                                    | 23  |
| (210)  | UNSECURED CLAIM                                                          | 23  |
| (211)  | WARRANT AGREEMENT                                                        | 23  |
| (212)  | X REMIC CERTIFICATES                                                     | 23  |
| 1.2    | RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW.         | 23  |
|        | (a)     Rules of Interpretation.                                        | 23  |
|        | (b)     Computation of Time.                                            | 24  |
|        | (c)     Governing Law.                                                  | 24  |
| ARTICLE II. | METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS | 24  |
| 2.1    | GENERAL RULES OF CLASSIFICATION.                                        | 24  |
| 2.2    | HOLDERS OF CLAIMS ENTITLED TO VOTE.                                     | 25  |
| 2.3    | ACCEPTANCE BY IMPAIRED CLASSES.                                         | 25  |
| 2.4    | NON-CONSENSUAL CONFIRMATION.                                            | 25  |

|  | 2.5 | ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND FEE CLAIMS. | 25 |
|  | 2.6 | SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS. | 25 |
|  | 2.7 | INTENTIONALLY OMITTED. | 25 |
|  | 2.8 | BAR DATES FOR ADMINISTRATIVE CLAIMS. | 25 |
|  | 2.9 | BAR DATE FOR FEE CLAIMS. | 26 |
| **ARTICLE III.** | **UNCLASSIFIED CLAIMS** | | **26** |
|  | 3.1 | ADMINISTRATIVE CLAIMS. | 26 |
|  | 3.2 | PRIORITY TAX CLAIMS. | 27 |
|  | 3.3 | FEE CLAIMS. | 27 |
|  | 3.4 | OFC AND OIC TAX CLAIMS. | 27 |
| **ARTICLE IV.** | **CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS** | | **28** |
|  | 4.1 | SUMMARY. | 28 |
|  | 4.2 | CLASS 1 (PRIORITY NON-TAX CLAIMS). | 29 |
|  | 4.3 | CLASS 2A (SECURED TAX CLAIMS). | 29 |
|  | 4.4 | CLASS 2B (1997 BONDS SECURED CLAIMS). | 30 |
|  | 4.5 | CLASS 2C (1998 BONDS SECURED CLAIMS). | 30 |
|  | 4.6 | CLASS 2D (AUTO SECURED CLAIMS). | 31 |
|  | 4.7 | CLASS 2E (CAROLINA SECURED CLAIMS). | 31 |
|  | 4.8 | CLASS 2F (FIRST AMERICAN SECURED CLAIMS). | 32 |
|  | 4.9 | CLASS 2G (FOOTHILL SECURED CLAIMS). | 32 |
|  | 4.10 | INTENTIONALLY OMITTED. | 33 |
|  | 4.11 | INTENTIONALLY OMITTED. | 33 |
|  | 4.12 | CLASS 2J (THOMAS SECURED CLAIMS). | 33 |
|  | 4.13 | CLASS 2K (U.S. BANK SECURED CLAIMS). | 34 |
|  | 4.14 | CLASS 2L (OTHER SECURED AND SETOFF CLAIMS). | 34 |
|  | 4.15 | CLASS 3 (CONVENIENCE CLAIMS). | 35 |
|  | 4.16 | CLASS 4A (SENIOR NOTES CLAIMS). | 36 |
|  | 4.17 | CLASS 4B (JUNIOR NOTES CLAIMS). | 36 |
|  | 4.18 | CLASS 4C (REMIC GUARANTEE CLAIMS). | 36 |
|  | 4.19 | CLASS 4D (LITIGATION CLAIMS). | 37 |
|  | 4.20 | CLASS 4E (OTHER UNSECURED CLAIMS). | 37 |
|  | 4.21 | INTENTIONALLY OMITTED. | 38 |
|  | 4.22 | CLASS 6A (NON-DEBTOR-HELD INTERESTS). | 38 |
|  | 4.23 | INTENTIONALLY OMITTED. | 38 |
| **ARTICLE V.** | **CONDITIONS PRECEDENT** | | **38** |
|  | 5.1 | CONDITIONS TO CONFIRMATION. | 38 |
|  |  | *(a)  Under the Sale Option.* | 38 |
|  |  | *(b)  Under the Stand Alone Option.* | 41 |
|  | 5.2 | CONDITIONS TO CONSUMMATION. | 42 |
|  |  | *(a)  Under the Sale Option.* | 42 |
|  |  | *(b)  Under the Stand Alone Option.* | 43 |
|  | 5.3 | WAIVER OF CONDITIONS. | 44 |

(vi)

| | | |
|---|---|---:|
| 5.4 | EFFECT OF NONOCCURRENCE OF THE CONDITIONS TO CONSUMMATION. | 44 |
| **ARTICLE VI.** | **IMPLEMENTATION** | **44** |
| 6.1 | PLAN IMPLEMENTATION UNDER THE SALE OPTION. | 45 |
| (a) | *Consummation of Sale Transaction.* | 45 |
| (b) | *Authorization of the Sale Transaction.* | 45 |
| (c) | *Revesting and Transfer of Assets.* | 45 |
| (d) | *Merger of Debtors and Vesting of Assets in Reorganized Sale Debtors.* | 46 |
| (e) | *Treatment of Old Common Stock, Interests and Beneficial Interest in the Liquidation Trust.* | 46 |
| (f) | *Considerations Regarding the Additional Debtors.* | 46 |
| (g) | *Distributions of Cash.* | 47 |
| 6.2 | PLAN IMPLEMENTATION UNDER THE STAND ALONE OPTION. | 47 |
| (a) | *Vesting of Assets.* | 47 |
| (b) | *Amended and Restated Certificates of Incorporation.* | 47 |
| (c) | *Amended and Restated Bylaws.* | 48 |
| (d) | *New Securities.* | 48 |
| (e) | *Directors.* | 48 |
| (f) | *Officers.* | 49 |
| (g) | *Employment Contracts and Professional Retentions.* | 49 |
| (h) | *Corporate Action and Other Documents and Actions.* | 49 |
| (i) | *Approval of the Exit Facility.* | 49 |
| (j) | *Distributions of Cash.* | 50 |
| (k) | *Distributions of Proceeds from the Liquidation Trust.* | 50 |
| 6.3 | PROVISIONS CONCERNING PLAN IMPLEMENTATION UNDER BOTH THE SALE OPTION AND THE STAND ALONE OPTION. | 50 |
| (a) | *Substantive Consolidation.* | 50 |
| (b) | *Creation of the Liquidation Trust.* | 51 |
| (c) | *Federal Income Tax Treatment of the Trust for the Liquidation Trust Assets.* | 52 |
| (d) | *Appointment of Liquidation Trustee* | 54 |
| (e) | *The Liquidation Trust Advisory Committee.* | 54 |
| (f) | *Causes of Actions and Defenses.* | 55 |
| (g) | *Termination of the Final DIP Agreement.* | 56 |
| (h) | *Dissolution of the Creditors' Committee.* | 56 |
| **ARTICLE VII.** | **EFFECTS OF PLAN CONFIRMATION** | **56** |

| | | |
|---|---|---|
| 7.1 | DISCHARGE. | 56 |
| 7.2 | RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS. | 57 |
| 7.3 | POST-CONSUMMATION EFFECT OF EVIDENCE OF CLAIMS OR INTERESTS. | 57 |
| 7.4 | TREATMENT OF FUTURE CLAIMS. | 58 |
| 7.5 | LIMITED RELEASES BY DEBTORS. | 58 |
| 7.6 | TERM OF INJUNCTIONS OR STAYS. | 59 |
| 7.7 | EXCULPATION. | 59 |
| 7.8 | INJUNCTION. | 59 |
| 7.9 | WAIVER OF CERTAIN CLAIMS. | 60 |
| 7.10 | INTENTIONALLY OMITTED. | 61 |
| 7.11 | RELEASE OF LIENS AND PERFECTION OF LIENS. | 61 |
| 7.12 | INSURANCE PRESERVATION. | 62 |
| **ARTICLE VIII.** | **GENERAL PROVISIONS REGARDING TREATMENT OF CLAIMS AND INTERESTS AND DISTRIBUTIONS UNDER THE PLAN** | **62** |
| 8.1 | SPECIAL CONSIDERATIONS FOR DISTRIBUTIONS TO CLASSES 4A, 4B AND 4C. | 62 |
| 8.2 | DISPUTED CLAIM RESERVES AND STAND ALONE VOTING TRUST. | 63 |
| | (a)  *Establishment of Disputed Claim Reserves for Cash Distributions.* | 63 |
| | (b)  *Establishment of the Stand Alone Voting Trust for New Common Stock and New Warrant Distribution.* | 63 |
| | (c)  *Amounts to Be Reserved.* | 63 |
| | (d)  *Distribution.* | 64 |
| | (e)  *Termination of Disputed Claim Reserve or Stand Alone Voting Trust.* | 64 |
| | (f)  *Limitation of Liability for Funding the Disputed Claim Reserve.* | 64 |
| 8.3 | TRANSMITTAL OF DISTRIBUTIONS AND NOTICES. | 65 |
| 8.4 | UNCLAIMED DISTRIBUTIONS. | 65 |
| 8.5 | SETOFFS. | 65 |
| 8.6 | WITHHOLDING TAXES AND EXPENSES OF DISTRIBUTION. | 65 |
| 8.7 | ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST. | 66 |
| 8.8 | DISPUTED IDENTITY OF HOLDER. | 66 |
| 8.9 | TRANSFERS OF CLAIMS. | 66 |
| 8.10 | METHOD OF CASH DISTRIBUTIONS. | 67 |
| 8.11 | DE MINIMIS DISTRIBUTIONS. | 67 |
| 8.12 | NO DISTRIBUTION IN EXCESS OF ALLOWED AMOUNT OF CLAIM. | 67 |
| 8.13 | EXEMPTION FROM CERTAIN TRANSFER TAXES. | 67 |

**ARTICLE IX.**      **EXECUTORY CONTRACTS AND UNEXPIRED**
                         **LEASES**                                                                   **68**

       9.1      ASSUMPTION OR REJECTION OF EXECUTORY
               CONTRACTS AND UNEXPIRED LEASES.                      68
       9.2      BAR DATE FOR REJECTION DAMAGES.                      69
       9.3      PROCEDURES FOR THE DETERMINATION OF CURE
               AMOUNTS.                                             69

**ARTICLE X.**       **DISPUTED, CONTINGENT AND UNLIQUIDATED**
                         **CLAIMS AND INTERESTS**                                      **70**

       10.1     OBJECTIONS TO CLAIMS AND INTERESTS.                  70
       10.2     ESTIMATION OF CLAIMS OR INTERESTS.                   70
       10.3     AMENDMENTS TO CLAIMS OR INTERESTS.                   71
       10.4     AUTHORITY TO SETTLE DISPUTED CLAIMS OR
               INTERESTS.                                           71
       10.5     NO RECOURSE.                                         71

**ARTICLE XI.**      **ADMINISTRATIVE PROVISIONS**                                **72**

       11.1     RETENTION OF JURISDICTION.                           72
       11.2     INTENTIONALLY OMITTED.                               74
       11.3     AMENDMENTS.                                          74
               (a)      *Preconfirmation Amendment.*                74
              (b)      *Postconfirmation/Preconsummation*
                    *Amendment Not Requiring Resolicitation.*    75
              (c)      *Postconfirmation/Preconsummation*
                    *Amendment Requiring Resolicitation.*        75
       11.4     SEVERABILITY OF PLAN PROVISIONS.                     75
       11.5     SUCCESSORS AND ASSIGNS.                              75
       11.6     EFFECTUATING DOCUMENTS AND FURTHER
               TRANSACTIONS.                                        76
       11.7     PLAN SUPPLEMENT.                                     76
       11.8     CONFIRMATION ORDER AND PLAN CONTROL.                 76
       11.9     PAYMENT OF STATUTORY FEES.                           76
       11.10    WITHDRAWAL OF PLAN.                                  76
       11.11    PAYMENT DATES.                                       77
       11.12    NOTICES.                                             77
       11.13    NO ADMISSIONS.                                       78

**ARTICLE XII.**     **CONFIRMATION REQUEST**                                     **79**

## INTRODUCTION

The Chapter 11 Cases of Oakwood Homes Corporation, Oakwood Mobile Homes, Inc., Oakwood Acceptance Corporation, LLC, HBOS Manufacturing, LP, Suburban Home Sales, Inc., FSI Financial Services, Inc., Home Service Contract, Inc., Tri-State Insurance Agency, Inc., New Dimension Homes, Inc., Dreamstreet Company, LLC, Golden West Leasing, LLC, Crest Capital, LLC, Oakwood Shared Services, LLC, Preferred Housing Services, LP, Oakwood MHD4, LLC, Oakwood Financial Corporation, Oakwood Investment Corporation and Oakwood Servicing Holdings Co., LLC, have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Plan is proposed by the Debtors. Reference is made to the Disclosure Statement for a discussion of, among other things, the Debtors' history, businesses, historical financial information and properties, and for a summary of the Plan. All creditors entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan. In addition, there are other agreements and documents which have been or will be filed as the Plan Supplement which are referenced in the Plan and/or the Disclosure Statement and will be available for review. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I.

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

**1.1     Definitions.**

The capitalized terms set forth below shall have the following meanings:

(1)     **1997 Bonds Secured Claim** means that portion of the Claim of Wells Fargo Bank, N.A. arising under loan agreements with Elkhart County, Indiana respecting certain variable rate demand economic development bonds, but only to the extent that it is a Secured Claim secured by a Letter of Credit Mortgage on Debtor HBOS Manufacturing, LP's plant in Elkhart County, Indiana.

(2)     **1997-A Guarantee** means the Limited Guarantee by Oakwood, dated February 1, 1997, of the B-Piece REMIC Certificates issued by OMI Trust 1997-A.

(3)     **1997-B Guarantee** means the Limited Guarantee by Oakwood, dated May 1, 1997, of the B-Piece REMIC Certificates issued by OMI Trust 1997-B.

(4)     **1997-C Guarantee** means the Limited Guarantee by Oakwood, dated August 1, 1997, of the B-Piece REMIC Certificates issued by OMI Trust 1997-C.

(5)     **1997-D Guarantee** means the Limited Guarantee by Oakwood, dated November 1, 1997, of the B-Piece REMIC Certificates issued by OMI Trust 1997-D.

1

(6)    **1998 Bonds Secured Claim** means that portion of the Claim of Wells Fargo Bank, N.A. arising under loan agreements with Kosciusko County, Indiana respecting certain variable rate demand economic development bonds, but only to the extent that it is a Secured Claim secured by a Letter of Credit and Mortgage on Debtor HBOS Manufacturing, LP's plant in Kosciusko County, Indiana.

(7)    **1998-B Guarantee** means the Limited Guarantee by Oakwood, dated May 1, 1998, of the B-Piece REMIC Certificates issued by OMI Trust 1998-B.

(8)    **1998-C Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 1998-C.

(9)    **1998-D Guarantee** means the Limited Guarantee by Oakwood, dated October 1, 1998, of the B-Piece REMIC Certificates issued by OMI Trust 1998-D.

(10)    **1999-A Guarantee** means the Limited Guarantee by Oakwood, dated January 1, 1999, of the B-Piece REMIC Certificates issued by OMI Trust 1999-A.

(11)    **1999-B Guarantee** means the Limited Guarantee by Oakwood, dated April 1, 1999, of the B-Piece REMIC Certificates issued by OMI Trust 1999-B.

(12)    **1999-C Limited Guarantee** means the Limited Guarantee by Oakwood, dated June 1, 1999, of the B-Piece REMIC Certificates issued by OMI Trust 1999-C.

(13)    **1999-C Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 1999-C.

(14)    **1999-D Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 1999-D.

(15)    **1999-E Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 1999-E.

(16)    **2000-A Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 2000-A.

(17)    **2000-B Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 2000-B.

(18)    **2001-B Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 2001-B.

(19)    **2001-C Guarantee** means the Guarantee by Oakwood, dated August 10, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 2001-C.

(20)    **2001-D Guarantee** means the Guarantee by Oakwood, dated January 10, 2002, of the B-Piece REMIC Certificates issued by OMI Trust 2001-D.

(21)   **2001-E Guarantee** means the Guarantee by Oakwood, dated November 1, 2001, of the B-Piece REMIC Certificates issued by OMI Trust 2001-E.

(22)   **2002-A Guarantee** means the Guarantee by Oakwood, dated February 1, 2002, of the B-Piece REMIC Certificates issued by OMI Trust 2002-A.

(23)   **2002-B Guarantee** means the Guarantee by Oakwood, dated May 1, 2002, of the B-Piece REMIC Certificates issued by OMI Trust 2002-B.

(24)   **Administrative Claim** means: (a) a DIP Claim; (b) a Claim, other than a Fee Claim, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation (i) the actual, necessary costs and expenses incurred after the Petition Date for preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services rendered) and (ii) all fees and charges assessed against the Estates pursuant to section 1930 of title 28 of the United States Code; (c) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code; or (d) any Claim based upon a seller's common law right to reclaim goods as used in section 546(c) of the Bankruptcy Code pursuant to the Bankruptcy Court's Order Establishing Procedures With Respect To Reclamation Claims (D.I. 36) entered on November 19, 2002 (y) that has been granted priority under section 546(c)(2)(A) of the Bankruptcy Code or (z) which the Debtors, in their reasonable discretion, elect to treat as though such priority has been granted. Notwithstanding the foregoing, Administrative Claims shall not include any Intercompany Claims.

(25)   **Administrative Claim Bar Date Order** means the Bankruptcy Court's order (D.I. 2148) which established the bar date for the filing of certain Administrative Claims arising between the Petition Date and September 30, 2003.

(26)   **Affiliate Debtor(s)** means, in the singular or plural form, the following debtors and debtors-in-possession under the Bankruptcy Code in Chapter 11 Case Nos. 02-13390 through 02-13395, 02-13397 through 02-13404 and 04-10743 through 04-10747, pending in the Bankruptcy Court: Oakwood Mobile Homes, Inc., Oakwood Acceptance Corporation, LLC, HBOS Manufacturing, LP, Suburban Home Sales, Inc., FSI Financial Services, Inc., Home Service Contract, Inc., Tri-State Insurance Agency, Inc., New Dimension Homes, Inc., Dreamstreet Company, LLC, Golden West Leasing, LLC, Crest Capital, LLC, Oakwood Shared Services, LLC, Preferred Housing Services, LP, Oakwood MHD4, LLC, Oakwood Financial Corporation, Oakwood Investment Corporation and Oakwood Servicing Holdings Co., LLC.

(27)   **Allowed Claim or Interest** means a Claim or Interest to the extent (a) such Claim or Interest is scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed; or (b) a proof of such Claim has been timely filed, or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Orders of the Bankruptcy Court, or late filed with leave of the Bankruptcy Court, and either (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court or (ii) has otherwise been

allowed by a Final Order. An Allowed Claim or Allowed Interest: (y) includes a previously Disputed Claim or Interest to the extent such Disputed Claim or Interest becomes allowed when the context so requires; and (z) shall be net of any valid setoff or recoupment amount based on a valid offset or recoupment right. Unless otherwise expressly provided herein, in the Confirmation Order or in another Final Order of the Bankruptcy Court, the term "Allowed Claim" or "Allowed Interest" shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damages or any other claims or obligations that do not compensate for actual losses incurred or (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

(28)    **Allowed [Class Designation] Claim or Interest** means an Allowed Claim or Allowed Interest in the specified Class. For example, an Allowed Convenience Claim is an Allowed Claim in the Class designated herein as Class 3.

(29)    **Amended and Restated Bylaws** mean the Reorganized Stand Alone Debtors' bylaws which shall be substantially in the form set forth in the Plan Supplement.

(30)    **Amended and Restated Certificates of Incorporation** means the Reorganized Stand Alone Debtors' certificates of incorporation, LLC agreements or similar organizational documents in effect under the laws of the appropriate states, as amended by the Plan, which shall be substantially in the form set forth in the Plan Supplement.

(31)    **Approval Hearing** means the Approval Hearing as set forth in the Bid Procedures Order.

(32)    **Assets** means all assets and properties of every kind, nature, character and description (whether real, personal or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtors that constitute property of the Estates within the purview of section 541 of the Bankruptcy Code, including without limitation, any and all claims, causes of action or rights of the Debtors under federal, state or foreign law, letters of credit issued for or on behalf of the Debtors and the proceeds thereof and monies deposited to secure the performance of any contract or lease by the Debtors or any affiliate thereof.

(33)    **Auto Secured Claim** means that portion of the Claim of Citizens Federal S&L and other lenders, but only to the extent that it is a Secured Claim secured by eight (8) automobiles owned by Debtor Suburban Home Sales, Inc.

(34)    **Avoidance Actions** mean any claims, rights, defenses or other causes of action arising under any section of chapter 5 of the Bankruptcy Code, including, without limitation, sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or under similar or related state or federal statues and common law, including state fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such actions.

(35)    **B-2 REMIC Guarantees** means collectively, the 1997-A Guarantee, the 1997-B Guarantee, the 1997-C Guarantee, the 1997-D Guarantee, the 1998-B Guarantee, the

4

1998-C Guarantee, the 1998-D Guarantee, the 1999-A Guarantee, the 1999-B Guarantee, the 1999-C Limited Guarantee, the 1999-C Guarantee, the 1999-D Guarantee, the 1999-E Guarantee, the 2000-A Guarantee, the 2000-B Guarantee, the 2001-B Guarantee, the 2001-C Guarantee, the 2001-D Guarantee, the 2001-E Guarantee, the 2002-A Guarantee and the 2002-B Guarantee.

(36)    **B-Piece REMIC Certificates** means the B-2 certificates issued by the REMIC Trusts.

(37)    **Ballot** means the ballot distributed to each eligible Holder of a Claim or Interest by the Balloting Agent, on which ballot such Holder may, among other things, vote for or against the Plan.

(38)    **Ballot Deadline** means the date and time set by the Bankruptcy Court by which the Balloting Agent must receive all Ballots.

(39)    **Balloting Agent** means the entity designated by the Bankruptcy Court to distribute, collect and tabulate Ballots from Holders, or any successor Claims Agent. Initially, the Balloting Agent is BSI.

(40)    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

(41)    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware.

(42)    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules and general orders of the Bankruptcy Court, as now in effect or hereafter amended.

(43)    **Bar Date Order** means the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (D.I. 370), dated January 7, 2003 which established the bar date for the filing of proofs of Unsecured Claims as March 27, 2003.

(44)    **Berkshire** means Berkshire Hathaway Inc., a corporation incorporated under the laws of Delaware.

(45)    **Bid Procedures Order** means the Order Under 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002 and 6004 Approving Bidding Procedures, Break-Up Fee, Performance of Pre-Closing Obligations, and Form and Manner of Notice Thereof with Respect to Proposed Sale Pursuant to Plan of Reorganization (D.I. 2652).

(46)    **BSI** means Bankruptcy Services LLC.

5

(47)   **Business Day** means any day except a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

(48)   **Buyer** means Clayton Homes, Inc. or its designee or its designees, as set forth in the Purchase Agreement.

(49)   **Carolina Secured Claim** means that portion of the Claim of Carolina First Bank arising under a note dated December 27, 2001, but only to the extent that it is a Secured Claim secured by land owned by Debtor Oakwood Mobile Homes, Inc. and located at 3200 Earle E. Morris, Jr. Hwy, Piedmont, South Carolina.

(50)   **Cash** means cash and Cash Equivalents, including but not limited to bank deposits, checks, treasury notes and other marketable securities.

(51)   **Cash Equivalents** means equivalents of cash in the form of readily marketable securities or instruments issued by a person other than the Debtors or Reorganized Sale Debtors, including, without limitation, U.S. Government Obligations, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million U.S. Dollars ($200,000,000.00), having maturities of no more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

(52)   **Causes of Action** mean any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims, including, but not limited, to: all Avoidance Actions and all other claims in avoidance, recovery, subordination or other actions against any Persons, including, but not limited to, those actions described in the Disclosure Statement as amended, the Schedules of Assets and Liabilities as amended from time to time, the Statement of Financial Affairs as amended from time to time and the Plan as amended, whether arising under the Bankruptcy Code or federal, state, or common law, but regardless of whether any of the foregoing matters are subject to pending litigation or proceedings at the Confirmation Date or brought after that date; provided, however, that under the Sale Option, Causes of Action do not include those claims, rights, defenses, offsets, recoupments, actions in equity or other causes of action that are transferred to the Buyer pursuant to the Purchase Agreement.

(53)   **Chapter 11 Case** means the chapter 11 case of each Debtor pending before the Bankruptcy Court.

(54)   **Claim** means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, including but not limited to any liability, Interest, Lien, encumbrance or any other "debt" (as that term is defined in section 101(12) of the Bankruptcy Code), from or against the Debtors, their Estates, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, or arising from any agreement of the

6

Debtors entered into or obligation of any kind of the Debtors incurred before the Effective Date, or from any conduct of the Debtors occurring prior to the Effective Date or that otherwise arose before the Effective Date (including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the date of commencement of the applicable Chapter 11 Case).

(55)    **Claims Agent** means the entity designated by the Bankruptcy Court to act as the claims agent in the Chapter 11 Cases, or any successor claims agent. As of the date of the Plan, the Claims Agent is BSI.

(56)    **Claims/Interests Objection Deadline** means the last day for filing objections to Claims, including but not limited to Administrative Claims, and Interests as provided in Article X of the Plan.

(57)    **Class** means a group of Claims or Interests described in Articles III and IV of the Plan.

(58)    **Confirmation Date** means the date the Bankruptcy Court enters the Confirmation Order on its docket.

(59)    **Confirmation Hearing** means the hearing or hearings pursuant to which the Bankruptcy Court considers the confirmation of this Plan.

(60)    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(61)    **Convenience Claim** means the Claims of a Holder of one or more Allowed Unsecured Claims that, pursuant to section 1122(b) of the Bankruptcy Code, otherwise would be Allowed Other Unsecured Claims that have aggregate Face Amounts of: (i) $5,000.00 or less unless the Holder has properly made the Convenience Class Opt-Out Election on a Ballot properly cast by the Ballot Deadline to opt out of Class 3; or (ii) more than $5,000.00 if the Holder has properly made the Convenience Class Opt-In Election on a Ballot properly cast by the Ballot Deadline to opt into Class 3.

(62)    **Convenience Class Election** means a Convenience Class Opt-In Election and/or a Convenience Class Opt-Out Election.

(63)    **Convenience Class Opt-In Election** means the election available to a Holder of one or more Allowed Other Unsecured Claims with aggregate Face Amounts in excess of $5,000.00 to opt into Class 3 and have such Claim(s) treated as a Convenience Claim; provided, however, that the Holder of Such Allowed Other Unsecured Claim(s) has agreed to reduce the Face Amount of such Claim(s) for purposes of voting and distributions under the Plan to a single Claim in an amount equal to or less than $5,000.00.

(64)    **Convenience Class Opt-Out Election** means the election available to a Holder of one or more Allowed Unsecured Claims that, pursuant to section 1122(b) of the Bankruptcy Code, otherwise would be a Convenience Claim that has an aggregate Face Amount

7

of $5,000.00 or less to opt out of Class 3 and have such Claim treated as an Other Unsecured Claim.

(65)   **Creditors' Committee** means the Official Committee of Unsecured Creditors in the Chapter 11 Cases, as appointed by the United States Trustee and reconstituted from time to time.

(66)   **Debtor-Held Interest** means an Interest in Oakwood or an Affiliate Debtor when the Holder is another Debtor.

(67)   **Debtor(s)** mean, in the singular form, Oakwood or any one of the Affiliate Debtors and, in the plural form, all of Oakwood and the Affiliate Debtors.

(68)   **DIP Claim** means a Claim of a DIP Lender arising under the Final DIP Agreement and the Final DIP Order.

(69)   **DIP Lenders** collectively means Greenwich Capital Financial Products, Inc. and the other financial institutions (including Berkshire or one of its designees or affiliates) lending under the Final DIP Agreement.

(70)   **Disallowed** means a Claim or Interest or any portion thereof that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been timely filed pursuant to the Bar Date Order or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or (c) is not scheduled by the Debtors in the Schedules of Assets and Liabilities and as to which (i) no Proof of Claim has been timely filed pursuant to the Bar Date Order or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or (ii) no request for payment of an Administrative Claim or Fee Claim has been timely filed by the applicable deadline pursuant to Sections 2.8 and 2.9 of the Plan or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

(71)   **Disclosure Statement** means the disclosure statement that relates to this Plan that was approved by the Bankruptcy Court (D.I. 2050), as such Disclosure Statement may be amended, modified, or supplemented, including the supplemental disclosure statement (D.I. 3538) approved by the Bankruptcy Court by the Disclosure Statement Order pursuant to section 1125 of the Bankruptcy Code (and all exhibits and schedules annexed thereto or referred to therein).

(72)   **Disclosure Statement Order** means the order of the Bankruptcy Court approving the Disclosure Statement, as supplemented, as containing adequate information pursuant to section 1125 of the Bankruptcy Code (D.I. 3543).

(73)   **Disputed Amount** means an amount equal to the total of that portion (including, when appropriate, the whole) of a Claim or Interest that is a Disputed Claim or Interest, including that portion of the Face Amount of a Disputed Claim or Interest which is not an Allowed Claim or Interest or a Disallowed Claim or Interest.

8

(74)    **Disputed Claim or Interest** means that portion (including, when appropriate, the whole) of a Claim or Interest that is not an Allowed Claim or Interest or Disallowed Claim or Interest and (i) to which an objection has been timely filed or (ii) before the time that an objection has been or may be filed if: (a) the amount or classification of the Claim or Interest specified in the relevant proof of Claim or Interest exceeds the amount or is different from the classification of any corresponding Claim or Interest scheduled by the relevant Debtor in its Schedules of Assets and Liabilities; (b) any corresponding Claim or Interest scheduled by the relevant Debtor has been scheduled as disputed, contingent or unliquidated; or (c) no corresponding Claim or Interest has been scheduled by the relevant Debtor in its Schedules of Assets and Liabilities.

(75)    **Disputed Claims Reserve** shall have the meaning ascribed to it in Section 6.3(c)(ii) of the Plan.

(76)    **Distribution Address** means (a) the address indicated on any notice of appearance filed by a Person or his authorized agent prior to the Effective Date, (b) if no notice of appearance has been filed, then the address indicated on a properly filed Proof of Claim or, absent such a Proof of Claim, the address set forth in the relevant Schedule of Assets and Liabilities for that Person or register maintained for registered securities, or (c) for REMIC Guarantee Claims, the address set forth in Section 8.3 of the Plan.

(77)    **Distribution Date** means (i) initially, the Initial Distribution Date, and (ii) subsequently, the Quarterly Distribution Dates or such other dates as the Liquidation Trust may establish from time to time to make any distribution.

(78)    **Effective Date** means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date all of the conditions set forth in the Plan have been satisfied or waived as set forth in the Plan, or such later date as may reasonably be agreed to by the Debtors, the Creditors' Committee and the Buyer (under the Sale Option) or Berkshire (under the Stand Alone Option); or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later date as may reasonably be agreed by the Debtors, the Creditors' Committee and the Buyer (under the Sale Option) or Berkshire (under the Stand Alone Option)) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

(79)    **Estate** means the relevant estate created in each of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code, both individually and collectively, including the consolidated Estates of the Debtors pursuant to the Plan and the Confirmation Order.

(80)    **Estimation Order** means a Final Order of the Bankruptcy Court, pursuant to Rule 3018 of the Bankruptcy Rules, which may be the Confirmation Order, estimating for voting, distribution or any other proper purposes under the Bankruptcy Code (under section 502(c) of the Bankruptcy Code) the aggregate (and if applicable, individual) Face Amount of Disputed Claims, whether classified or unclassified under this Plan.

9

(81)    **Excluded Assets** mean those Assets that, under the Sale Option, will not be Transferred to the Buyer on the Effective Date, as provided in the Purchase Agreement. For the avoidance of doubt, the Causes of Action are Excluded Assets.

(82)    **Excluded Sale Debtor Assets** mean the following Excluded Assets: (a) all policies of insurance held by the Debtors and their non-debtor affiliates; and (b) all Excluded Assets owned by OFC and OIC.

(83)    **Excluded Sale Trust Assets** mean all Excluded Assets other than the Excluded Sale Debtor Assets.

(84)    **Executory Contract Schedule** means the schedule of executory contracts and unexpired leases designated by the Debtors for assumption, under the Sale Option, or rejection, under the Stand Alone Option, as of the Effective Date of the Plan, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Section 9.1 of this Plan, which shall be in substantially the form contained in the Plan Supplement.

(85)    **Exit Facility** means the financing or financings obtained by the Debtors pursuant to the Exit Facility Agreement under the Stand Alone Option.

(86)    **Exit Facility Agreement** means, under the Stand Alone Option, that certain financing agreement obtained by the Debtors which is substantially in the form set forth in the Plan Supplement.

(87)    **Exit Facility Lender** means the lender or lenders providing the Exit Facility under the Stand Alone Option.

(88)    **Face Amount** means: (a) with respect to any Claim for which a Proof of Claim is filed, an amount equal to: (i) the liquidated amount, if any, set forth therein; or (ii) any other amount set forth in an Estimation Order or order allowing such a Claim; or (b) with respect to any Claim scheduled in the relevant Debtor's Schedules of Assets and Liabilities, but for which no Proof of Claim is timely filed, the amount of the Claim scheduled as undisputed, noncontingent and liquidated.

(89)    **Fee Claim** means: (a) a Claim of a professional person retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to section 327, 328, 330 or 331 of the Bankruptcy Code in connection with the Chapter 11 Cases or (b) a Claim of any professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to sections 503(b)(3), 503(b)(4), 503(b)(5) or 503(b)(6) of the Bankruptcy Code.

(90)    **Fee Order** means the Bankruptcy Court's Administrative Order, Pursuant To Sections 331 And 105 Of The Bankruptcy Code, Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals [D.I. 60] dated December 18, 2002 (D.I. 277), in the Chapter 11 Cases, as may have been amended or supplemented from time to time.

10

(91)  **Final DIP Agreement** means the Amended and Restated Debtor-In-Possession Financing And Security Agreement, dated as of December 31, 2003, by and among the Debtors and Greenwich Capital Financial Products, Inc., as agent, and all other supporting and related agreements and documents, as amended, whenever finalized and signed, as authorized by the Final DIP Order.

(92)  **Final DIP Order** means the Bankruptcy Court's Final Order Pursuant To 11 U.S.C. §§ 105, 362 And 364, And Bankruptcy Rules 2002, 4001 And 9014 (a) Approving Replacement Debtor-In-Possession Financing With Administrative Expense Superpriority And Secured By Senior Liens, (b) Granting Senior Liens And Superpriority Administrative Expense Status And (c) Granting Other Relief (D.I. 328) dated December 31, 2002 as amended and restated by the Bankruptcy Court's Final Order Pursuant To 11 U.S.C. §§ 105, 362 And 364, And Bankruptcy Rules 2002, 4001 And 9014 (a) Approving Replacement Debtor-In-Possession Financing With Administrative Expense Superpriority And Secured By Senior Liens, (b) Granting Senior Liens And Superpriority Administrative Expense Status And (c) Granting Other Relief (D.I. 3346) dated January 15, 2004.

(93)  **Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

(94)  **First American Secured Claim** means that portion of the Claim of First American Title on behalf of Yuet and Toy Wong arising under a note dated July 8, 1981, but only to the extent that it is a Secured Claim secured by property owned by Debtor HBOS Manufacturing, LP and located at 6258 Northwest Grand Ave., Glendale, Arizona 85301.

(95)  **Foothill** collectively means Foothill Capital Corporation and certain other lenders (including Wells Fargo Bank, N.A.) under the Prepetition Loan Agreement.

(96)  **Foothill Secured Claim** means that portion of the Claim of Foothill arising under the Prepetition Loan Agreement, but only to the extent that it is a Secured Claim secured by an escrow deposit established pursuant to the Bankruptcy Court's Order Adjourning Hearing On Foothill Capital Corp.'s As Agent For Itself & Certain DIP Lenders, Notice Of Payoff & Setting Dates By Which Briefs Are Due (D.I. 471), dated January 23, 2003; and the agreement executed pursuant to that order.

(97)  **Future Claim** means any Claim against a Debtor that (a) arises out of or relates to pre-Confirmation Date actions, omissions, events, occurrences, or failures, (b) did not manifest itself sufficiently prior to the Confirmation Date to provide the Holder of the Claim with a Constitutionally sufficient opportunity to file proof of such Claim or otherwise assert

11

rights with respect to such Claim in the Debtors' Chapter 11 cases, and (c) did not "arise" for purposes of applicable non-bankruptcy law until after the Confirmation Date.

(98)   **Holder** means a Person holding an Interest or a Claim.

(99)   **Impaired** shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

(100)  **Initial Distribution Date** means (a) with respect to Administrative Claims, Priority Non-Tax Claims, Priority Tax Claims and Convenience Claims, the date that is the later of (i) the Effective Date (or as soon thereafter as reasonably practicable) and (ii) the date (or as soon thereafter as is reasonably practicable) such Claims become Allowed Claims or otherwise become payable under the Plan; (b) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims (i) are allowed by Final Order of the Bankruptcy Court or (ii) become Allowed Claims after the Effective Date; and (c) with respect to the Secured Claims, the Junior Notes Claims, the Senior Notes Claims, the REMIC Guarantee Claims, the Litigation Claims, the Other Unsecured Claims and the Interests (subject to the priority scheme set forth in the Plan), the date as soon as reasonably practicable after the Effective Date or the date they become Allowed Claims.  With respect to Secured Claims, occurrence of the Distribution Date shall be subject, if applicable, to the Estates' receipt of the Net Proceeds of the sale of the relevant collateral.

(101)  **Initial Stand Alone Trust Assets** means the Causes of Action and $1,000,000 in Cash.

(102)  **Insider** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

(103)  **Intercompany Claim** means a Claim of any Debtor against another Debtor, whether arising before or after the Petition Date, including, without limitation, any Claim by OAC against OSHC  for damages arising from rejection of the Subservicing Agreements.

(104)  **Interest** means any equity security, including Old Common Stock, within the meaning of section 101(16) of the Bankruptcy Code, in a Debtor.  For purposes of voting and distributions under the Plan, the defined term Interest shall also include a Claim against a Debtor that is subject to subordination under section 510(b) of the Bankruptcy Code.

(105)  **Interested Party Professionals** means the following professionals, and only the following professionals, of the Debtors, the Creditors' Committee or members and ex officio members of the Creditors' Committee: Morris, Nichols, Arsht & Tunnell; Rayburn, Cooper & Durham, P.A.; Hunton & Williams; Kennedy Covington Lobdell & Hickman L.L.P.; FTI Consulting, Inc.; PricewaterhouseCoopers LLP; Akin Gump Strauss Hauer & Feld LLP; McCarter & English, LLP; Deloitte & Touche LLP; Alvarez & Marsal; Stites & Harbison, PLLC; Faegre & Benson LLP; Seward & Kissel LLP; Richards, Layton & Finger, P.C.; Morgan Lewis & Bockius LLP; Prime Locations, LLC; The Core Network; Andrew Davidson & Co., Inc.; Miller Buckfire Lewis Ying & Co., LLC; Munger, Tolles & Olson LLP; Young Conaway Stargatt & Taylor, LLP; and King & Spalding LLP.

(106) **JPMorgan** means JPMorgan Chase Bank, formerly known as The Chase Manhattan Bank.

(107) **Junior Notes** mean the 8% Reset Debentures in the original principal amount of $17 million due June 1, 2007, pursuant to an Indenture and a First Supplemental Indenture, both dated March 1, 1992, and the 8% Reset Debentures in the original principal amount of $23 million due June 1, 2007, pursuant to a Second Supplemental Indenture dated July 15, 1992.

(108) **Junior Notes Claim** means an Unsecured Claim of the Junior Notes Indenture Trustee under the Junior Notes Indenture, or an Unsecured Claim of any Holder of Junior Notes for the payment of any principal, premium, if any, and interest owing and unpaid as of the Petition Date in respect of such Junior Notes.

(109) **Junior Notes Indenture** means the Indenture and First Supplemental Indenture both dated March 1, 1992 and the Second Supplemental Indenture dated July 15, 1992, between the Debtors and First Union National Bank, f/k/a Delaware Trust Company, with respect to the Junior Notes, as the same may have been amended and/or supplemented from time to time.

(110) **Junior Notes Indenture Trustee** means U.S. Bank Trust, N.A., as the indenture trustee under the Junior Notes Indenture, or any successor indenture trustees under the Junior Notes Indenture.

(111) **Lien** has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action or any other Cause of Action shall not constitute a Lien).

(112) **Liquidation Trust** means the trust created on the Effective Date pursuant to this Plan and the Liquidation Trust Agreement.

(113) **Liquidation Trust Advisory Committee** means the advisory board that is to be created pursuant to Section 6.3 of the Plan.

(114) **Liquidation Trust Agreement** means that certain agreement which is to govern the Liquidation Trust, substantially in the form set forth in the Plan Supplement.

(115) **Liquidation Trustee** means the trustee appointed pursuant to the Plan and the Liquidation Trust Agreement.

(116) **Litigation Claims** means: (a) all Claims against the Debtors asserted under lawsuits or complaints which are pending as of the commencement of the Chapter 11 Cases in any court, including, without limitation, state or federal court; (b) all Claims against the Debtors subject to mediation or arbitration which are pending as of the commencement of the Chapter 11 Cases that could potentially be asserted under lawsuits or complaints in any court; or (c) all Claims raised or made to the Debtors by any Person, including, without limitation, offices of state attorneys general, related to matters arising prior to commencement of the Chapter 11

Cases that could have been asserted under lawsuits or complaints in any court or could have been subject to mediation or arbitration.

(117) **Net Proceeds** means the Cash consideration received from the sale, Transfer, or collection of property of the Estates or the conversion of such property to Cash in some other manner as contemplated in, or reasonably within the scope of, this Plan including the Purchase Consideration, whether occurring prior to or after the Effective Date, less the reasonable, necessary and customary expenses attributable to such sale, Transfer, collection or conversion, including costs of curing defaults under executory contracts that are assigned, paying personal property or other taxes accruing in connection with such sale, Transfer or conversion of such property, brokerage fees and commissions, collection costs, reasonable attorneys' fees and expenses, and any applicable taxes or other claims of any governmental authority in connection with such property and any escrows or accounts established to hold funds for purchase price adjustments, indemnification claims or other purposes in connection with such sale, Transfer or collection; provided, however, that upon the release to the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) of funds from such escrows or accounts, such funds shall become Net Proceeds of the relevant sale, Transfer or collection.

(118) **New Common Stock** means, under the Stand Alone Option, the 20,000,000 shares of common stock of Reorganized Stand Alone Oakwood to be authorized in accordance with the Plan and Reorganized Stand Alone Oakwood's Amended and Restated Certificate of Incorporation, having a par value of $0.01 per share.

(119) **New Warrants** means, under the Stand Alone Option, warrants to purchase 1,000,000 shares of New Common Stock pursuant to the terms of the Warrant Agreement, under the Stand Alone Option.

(120) **Non-Debtor-Held Interest** means an Interest in Oakwood when the Holder is not a Debtor.

(121) **OAC** means Oakwood Acceptance Corporation, LLC.

(122) **Oakwood** means Oakwood Homes Corporation.

(123) **OFC** means Oakwood Financial Corporation.

(124) **OFC and OIC Tax Claims** mean all contingent unliquidated Claims (a) against OFC for federal and state income taxes arising out of its ownership of certain of the REMIC Residual Certificates; and (b) against OIC for federal and state income taxes arising out of its ownership of certain of the Residual REMIC Certificates.

(125) **OIC** means Oakwood Investment Corporation.

(126) **Old Common Stock** means the pre-confirmation common stock of, or other equity interest in, however derivative, Oakwood and outstanding or held in treasury as of the Record Date.

14

(127)  **OMI** means Oakwood Mortgage Investors, Inc.

(128)  **OMI Trust 1995-B** means the trust formed pursuant to the Series 1995-B Pooling and Servicing Agreement, dated as of October 1, 1995, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as Servicer, and JPMorgan as successor in interest to the Chase Manhattan Trust Company, National Association, as trustee.

(129)  **OMI Trust 1996-A** means the trust formed pursuant to the Series 1996-A Pooling and Servicing Agreement, dated as of February 1, 1996, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as Servicer, and JPMorgan as successor in interest to the Chase Manhattan Trust Company, National Association, as trustee.

(130)  **OMI Trust 1996-B** means the trust formed pursuant to the Series 1996-B Pooling and Servicing Agreement, dated as of July 1, 1996, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as Servicer, and JPMorgan as successor in interest to PNC, as trustee.

(131)  **OMI Trust 1996-C** means the trust formed pursuant to the Series 1996-C Pooling and Servicing Agreement, dated as of October 1, 1995, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as Servicer, and JPMorgan as successor in interest to PNC, as trustee.

(132)  **OMI Trust 1997-A** means the trust formed pursuant to the Series 1997-A Pooling and Servicing Agreement, dated as of February 1, 1997, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(133)  **OMI Trust 1997-B** means the trust formed pursuant to the Series 1997-B Pooling and Servicing Agreement, dated as of May 1, 1997, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(134)  **OMI Trust 1997-C** means the trust formed pursuant to the Series 1997-C Pooling and Servicing Agreement, dated as of August 1, 1997, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(135)  **OMI Trust 1997-D** means the trust formed pursuant to the Series 1997-D Pooling and Servicing Agreement, dated as of November 1, 1997, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

15

(136)  **OMI Trust 1998-A** means the trust formed pursuant to the Series 1998-A Pooling and Servicing Agreement, dated as of February 1, 1998, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as Servicer, and JPMorgan as successor in interest to PNC, as trustee.

(137)  **OMI Trust 1998-B** means the trust formed pursuant to the Series 1998-B Pooling and Servicing Agreement, dated as of May 1, 1998, as amended December 11, 2000 and September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, November 1995 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(138)  **OMI Trust 1998-C** means the trust formed pursuant to the Series 1998-C Pooling and Servicing Agreement, dated as of August 1, 1998, as amended December 12, 2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, July 1998 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(139)  **OMI Trust 1998-D** means the trust formed pursuant to the Series 1998-D Pooling and Servicing Agreement, dated as of October 1, 1998, as amended April 29, 1999 and September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, July 1998 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(140)  **OMI Trust 1999-A** means the trust formed pursuant to the Series 1999-A Pooling and Servicing Agreement, dated as of January 1, 1999, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, July 1998 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(141)  **OMI Trust 1999-B** means the trust formed pursuant to the Series 1999-B Pooling and Servicing Agreement, dated as of April 1, 1999, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, July 1998 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(142)  **OMI Trust 1999-C** means the trust formed pursuant to the Series 1999-C Pooling and Servicing Agreement, dated as of June 1, 1999, as amended November 1, 2000, December 12, 2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(143)  **OMI Trust 1999-D** means the trust formed pursuant to the Series 1999-D Pooling and Servicing Agreement, dated as of August 1, 1999, as amended December 12, 2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(144)  **OMI Trust 1999-E** means the trust formed pursuant to the Series 1999-E Pooling and Servicing Agreement, dated as of November 1, 1999, as amended December 11,

2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(145)  **OMI Trust 2000-A** means the trust formed pursuant to the Series 2000-A Pooling and Servicing Agreement, dated as of March 1, 2000, as amended December 11, 2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(146)  **OMI Trust 2000-B** means the trust formed pursuant to the Series 2000-B Pooling and Servicing Agreement, dated as of June 1, 2000, as amended December 11, 2000, September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(147)  **OMI Trust 2000-C** means the trust formed pursuant to the Series 2000-C Pooling and Servicing Agreement, dated as of September 1, 2000, as amended December 1, 2000, December 14, 2000 and September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and Wells Fargo Bank Minnesota, National Association, as trustee.

(148)  **OMI Trust 2000-D** means the trust formed pursuant to the Series 2000-D Pooling and Servicing Agreement, dated as of December 1, 2000, as amended September 28, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 1999 Edition, among OMI, OAC, as servicer, and Wells Fargo Bank Minnesota, National Association, as trustee.

(149)  **OMI Trust 2001-B** means the trust formed pursuant to the Series 2001-B Pooling and Servicing Agreement, dated as of February 1, 2001, as amended September 28, 2001 and August 10, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, February 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(150)  **OMI Trust 2001-C** means the trust formed pursuant to the Series 2001-C Pooling and Servicing Agreement, dated as of May 1, 2001, as amended October 2, 2001, August 10, 2001 and December 12, 2001, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(151)  **OMI Trust 2001-D** means the trust formed pursuant to the Series 2001-D Pooling and Servicing Agreement, dated as of August 1, 2001, as amended December 12, 2001 and January 10, 2002, and incorporating the Standard Terms to Pooling and Servicing Agreement, May 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(152)  **OMI Trust 2001-E** means the trust formed pursuant to the Series 2001-E Pooling and Servicing Agreement, dated as of November 1, 2001, and incorporating the Standard

Terms to Pooling and Servicing Agreement, September 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(153)   **OMI Trust 2002-A** means the trust formed pursuant to the Series 2002-A Pooling and Servicing Agreement, dated as of February 1, 2002, and incorporating the Standard Terms to Pooling and Servicing Agreement, September 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(154)   **OMI Trust 2002-B** means the trust formed pursuant to the Series 2002-B Pooling and Servicing Agreement, dated as of May 1, 2002, and incorporating the Standard Terms to Pooling and Servicing Agreement, September 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(155)   **OMI Trust 2002-C** means the trust formed pursuant to the Series 2002-C Pooling and Servicing Agreement, dated as of August 1, 2002, and incorporating the Standard Terms to Pooling and Servicing Agreement, September 2001 Edition, among OMI, OAC, as servicer, and JPMorgan as successor in interest to PNC, as trustee.

(156)   **OSHC** means Oakwood Servicing Holdings Co., LLC.

(157)   **Other Secured and Setoff Claim** means any Secured Claim that is not: (a) a DIP Claim; (b) the 1997 Bonds Secured Claim; (c) the 1998 Bonds Secured Claim; (d) the Auto Secured Claim; (e) the Carolina Secured Claim; (f) the First American Secured Claim; (g) the Foothill Secured Claim; (h) the Thomas Secured Claim; (i) the U.S. Bank Secured Claim; or (j) a Secured Tax Claim.

(158)   **Other Unsecured Claims** means an Unsecured Claim that is not: (a) a Convenience Claim; (b) a REMIC Guarantee Claim; (c) a Senior Notes Claim; (d) a Junior Notes Claim; (e) a Litigation Claim; (f) an Administrative Claim; (g) a Fee Claim; (h) a Priority Tax Claim; or (i) a Priority Non-Tax Claim.

(159)   **Person** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

(160)   **Petition Date** means November 15, 2002.

(161)   **Plan** means this Plan of Reorganization, dated as of the date set forth on the first page hereof, for each of the Debtors, together with any amendments or modifications hereto as the Debtors may file hereafter in accordance with the terms of the Plan.

(162)   **Plan Supplement** means the Bankruptcy Court filing specified in Section 11.7 of the Plan, the content of which is incorporated herein by reference.

(163)   **PNC** means PNC Bank National Association.

(164)   **Prepetition Loan Agreement** means that Loan and Security Agreement dated January 22, 2002 among the Debtors and Foothill, as amended pursuant to the First

Amendment to Loan Agreement dated July 2002 and the Second Amendment to Loan Agreement dated July 31, 2002.

(165)  **Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Fee Claim.

(166)  **Priority Tax Claim** means a Claim for taxes entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

(167)  **Proof of Claim** means a proof of claim that is timely filed and in compliance with the Bankruptcy Rules and the Bar Date Order.

(168)  **Purchase Agreement** means that certain Asset Purchase Agreement, dated as of November 24, 2003, by and among the Debtors and certain non-debtor affiliates and Buyer, as attached as an exhibit to the Disclosure Statement, pursuant to which the Buyer will purchase the Purchased Business under the Sale Option.

(169)  **Purchase Consideration** means the consideration to be paid by the Buyer pursuant to the Purchase Agreement under the Sale Option.

(170)  **Purchased Business** means, under the Sale Option, all of the Assets to be Transferred to the Buyer on the Effective Date pursuant to the Purchase Agreement. For the avoidance of doubt, the Purchased Business does not include the Excluded Assets.

(171)  **Quarterly Distribution Date** means the first Business Day after the end of each quarterly calendar period (*i.e.,* March 31, June 30, September 30, and December 31 of each calendar year) following the Effective Date.

(172)  **Ratable, Ratably or Ratable Share** means, at any time, the proportion that the Face Amount of a Claim in a particular Class or group of Classes (in the case of Class 4) bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or group of Classes (in the case of Class 4), unless the Plan otherwise provides.

(173)  **Record Date** means the Confirmation Date.

(174)  **REMIC Guarantee Claims** mean all of the Unsecured Claims arising from the B-2 REMIC Guarantees and the Resecuritization Note Put Option.

(175)  **REMIC Trustee** means JPMorgan in its capacity as trustee, indenture trustee, successor trustee, securities intermediary, verification agent, paying agent, as applicable, and Resecuritization Trustee, for the holders of notes and certificates, including Holders of the B-Piece REMIC Certificates and the Resecuritization Note, issued by each of the REMIC Trusts and the Resecuritization Trust and any duly appointed successor or successors.

(176)  **REMIC Trusts** mean the following non-Debtor Real Estate Mortgage Investment Conduit Securitization Trusts: the OMI Trust 1995-B, the OMI Trust 1996-A, the

19

OMI Trust 1996-B, the OMI Trust 1996-C, the OMI Trust 1997-A, the OMI Trust 1997-B, the OMI Trust 1997-C, the OMI Trust 1997-D, the OMI Trust 1998-A, the OMI Trust 1998-B, the OMI Trust 1998-C, the OMI Trust 1998-D, the OMI Trust 1999-A, the OMI Trust 1999-B, the OMI Trust 1999-C, the OMI Trust 1999-D, the OMI Trust 1999-E, the OMI Trust 2000-A, the OMI Trust 2000-B, the OMI Trust 2000-C, the OMI Trust 2000-D, the OMI Trust 2001-B, the OMI Trust 2001-C, the OMI Trust 2001-D, the OMI Trust 2001-E, the OMI Trust 2002-A, the OMI Trust 2002-B and the OMI Trust 2002-C.

(177) **Reorganized Sale Debtors** means, under the Sale Option, (a) Reorganized Sale OKWD, (b) the Affiliate Debtors and OSHC as merged into Reorganized Sale OKWD on or after the Effective Date, (c) OFC and (d) OIC on and after the Effective Date.

(178) **Reorganized Sale OKWD** means, under the Sale Option, Oakwood on and after the Effective Date.

(179) **Reorganized Sale Debtors Capitalization Amount** means, under the Sale Option, those Assets as may be identified in the Plan Supplement and determined pursuant to an order or orders of the Bankruptcy Court (which may be the Confirmation Order) to be appropriate to fund the post-Effective Date operation of the Reorganized Sale Debtor, including the payment of all insurance premiums and the resolution of Future Claims.

(180) **Reorganized Stand Alone Debtors** means, under the Stand Alone Option, Reorganized Stand Alone Oakwood and the Affiliate Debtors on and after the Effective Date as reincorporated or otherwise established.

(181) **Reorganized Stand Alone Oakwood** means, under the Stand Alone Option, Oakwood on and after the Effective Date as reincorporated or otherwise established.

(182) **Resecuritization Note** means the Class A note issued by the Resecuritization Trust secured, in part, by certain B-Piece REMIC Certificates and X REMIC Certificates issued by the OMI Trust 1998-C, the OMI Trust 1999-C, the OMI Trust 1999-D, the OMI Trust 1999-E, the OMI Trust 2000-A, the OMI Trust 2000-B, the OMI Trust 2001-B, the OMI Trust 2001-C, the OMI Trust 2001-D, the OMI Trust 2001-E, the OMI Trust 2002-A and the OMI Trust 2002-B.

(183) **Resecuritization Note Put Option** means Oakwood's obligation to the holder of the Resecuritization Note to purchase the Resecuritization Note on each payment date under the Resecuritization Note, beginning with the payment date occurring in September 2011 and ending with the payment date occurring in September 2012.

(184) **Resecuritization Trust** means the Oakwood Mortgage Resecuritization Trust 2001 formed pursuant to the Amended and Restated Trust Agreement, dated as of February 1, 2002, as amended and supplemented by the Trust Agreement Amendment and Supplement, dated as of March 1, 2002, and the Trust Agreement Amendment and Supplement, dated as of June 1, 2002, among OMI, as depositor, OAC, as securities administrator, and the Resecuritization Trustee.

(185)  **Resecuritization Trustee** means JPMorgan in its capacity as trustee and securities intermediary of the Resecuritization Trust.

(186)  **Residual REMIC Certificates** means the Class R REMIC Certificates representing the residual interests in the REMIC Trusts.

(187)  **Sale Option** means the implementation of the Plan pursuant to Section 6.1 and other attendant provisions of the Plan.

(188)  **Schedule of Assets and Liabilities** means, as amended, supplemented or modified, a Debtor's schedule of assets and liabilities filed with the Bankruptcy Court on January 31, 2003 (D.I. 516, 518, 521, 524, 526, 528, 531, 533, 535, 539, 541, 543) pursuant to sections 521(1) and 1106(a)(2) of the Bankruptcy Code.

(189)  **Secured Claim** means: (a) that portion of a Claim that is secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to an Avoidance Action, in or upon any right, title or interest of any of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) any Claim that is subject to an offset right pursuant to section 553 of the Bankruptcy Code, to the extent of the amount subject to a valid setoff, in the case of each of (a) and (b) as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.  Such defined term shall not include for voting or distribution purposes any such Claim that has been or will be paid in connection with the cure of defaults under an assumed executory contract or unexpired lease under section 365 of the Bankruptcy Code.

(190)  **Secured Tax Claim** means a Claim for taxes to the extent that it is a Secured Claim under state or federal law, excluding any Claim that is an Administrative Claim or Priority Tax Claim.

(191)  **Senior Notes** mean the 7.875% Senior Notes in the aggregate principal amount of $125 million due March 2004 and the 8.125% Senior Notes in the aggregate principal amount of $175 million due March 2009 pursuant to an Indenture and First Supplemental Indenture, both dated March 2, 1999.

(192)  **Senior Notes Claim** means the Unsecured Claim of the Senior Notes Indenture Trustee under the Senior Notes Indenture, or the Claim of any Holder of Senior Notes for the payment of any principal, premium, if any, and interest owing and unpaid as of the Petition Date in respect of such Senior Notes.

(193)  **Senior Notes Indenture** means the Indenture and First Supplemental Indenture, both dated March 2, 1999, between the Debtors and Bank One, N.A., f/k/a The First National Bank of Chicago, with respect to the Senior Notes, as the same may have been amended from time to time.

(194)  **Senior Notes Indenture Trustee** means U.S. Bank Trust, N.A., as the current indenture trustee under the Senior Notes Indenture, or any successor indenture trustee(s) to U.S. Bank Trust, N.A. under the Senior Notes Indenture.

(195)  **Servicing Agreements** means the servicing agreements assumed by OAC and assigned to OHSC under section 365 of the Bankruptcy Court as authorized by Final Orders entered by the Bankruptcy Court (D.I. 369, D.I. 424 and D.I. 425).

(196)  **Solicitation Procedures Order** means the Order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (D.I. 3543).

(197)  **Stand Alone Option** means the implementation of the Plan pursuant to Section 6.2 and other attendant provisions of the Plan.

(198)  **Stand Alone Voting Trust** means the trust created on the Effective Date pursuant to the Plan and the Stand Alone Voting Trust Agreement.

(199)  **Stand Alone Voting Trust Agreement** means that certain agreement which is to govern the Stand Alone Voting Trust, substantially in the form set forth in the Plan Supplement.

(200)  **Stand Alone Voting Trustee** means the trustees appointed pursuant to the Plan and the Stand Alone Voting Trust Agreement.

(201)  **Statement of Financial Affairs** means, as amended, supplemented or modified, a Debtor's statement of financial affairs filed with the Bankruptcy Court on January 31, 2003 (D.I. 515, 517, 520, 522, 525, 527, 530, 532, 534, 537, 540, 542) pursuant to sections 521(1) and 1106(a)(2) of the Bankruptcy Code.

(202)  **Subservicing Agreements** means the subservicing agreements between OSHC and OAC, as amended, approved by Orders of the Bankruptcy Court (D.I. 369, D.I. 424 and D.I. 425).

(203)  **Thomas Secured Claim** means that portion of the Claim of Lecil V. and Tommie Jane Thomas arising under a note dated January 15, 1993, but only to the extent that it is a Secured Claim secured by property owned by Debtor HBOS Manufacturing, LP and located at 508 Palmer Road, Rockwell, North Carolina.

(204)  **Transfer** shall have the meaning ascribed to such term in section 101(54) of the Bankruptcy Code.

(205)  **U.S. Bank Secured Claim** means that portion of the Claim of U.S. Bank National Association arising under a note dated April 2, 1991, but only to the extent that it is a Secured Claim secured by property owned by Debtor HBOS Manufacturing, LP and located in Albany, Linn County, Oregon.

(206)  **U.S. Government Obligations** means securities that are direct obligations of, or obligations guaranteed by, the United States of America for the timely payment of which obligation or guarantee the full faith and credit of the United States of America is pledged, or funds consisting solely of such securities.

22

(207)   **Unclaimed Property** means any Cash or other distributable property unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto in respect of such Holder's Allowed Claim. Unclaimed Property shall, without limitation, include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) to locate such address which were commercially reasonable under the circumstances. Distributions of cash that otherwise would be payable under the Plan to a Holder but for Section 9.14 of the Plan that never, collectively, exceed fifty dollars ($50.00) as described in Section 9.14 and for which a request is not made within the one (1) year deadline shall become Unclaimed Property.

(208)   **Unimpaired** shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

(209)   **United States Trustee** means the Office of the United States Trustee for the District of Delaware.

(210)   **Unsecured Claim** means any Claim, arising pre-petition, that is not: (a) an Administrative Claim; (b) a Priority Non-Tax Claim; (c) a Priority Tax Claim; (d) a Fee Claim; (e) a Secured Claim; (f) an Intercompany Claim; or (g) an Interest.

(211)   **Warrant Agreement** means that certain agreement governing exercise of the New Warrants, in substantially the form set forth in the Plan Supplement.

(212)   **X REMIC Certificates** mean those certain Class X "pass-through" asset-backed securities that have been issued by the OMI Trust 1998-C, the OMI Trust 1999-C, the OMI Trust 1999-D, the OMI Trust 1999-E, the OMI Trust 2000-A, the OMI Trust 2000-B, the OMI Trust 2001-B, the OMI Trust 2001-C, the OMI Trust 2001-D, the OMI Trust 2001-E, the OMI Trust 2002-A, the OMI Trust 2002-B and the OMI Trust 2002-C.

**1.2     Rules of Interpretation, Computation of Time and Governing Law.**

**(a)     Rules of Interpretation.**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the Plan shall control unless the Purchase Agreement is inconsistent with the Plan, in which case the Purchase Agreement shall control; (e) unless otherwise specified, all references in

23

the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto" and other words of similar import refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with any other provision in this Section; (j) any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein; and (k) any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" unless the context otherwise requires.

(b)    **Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)    **Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II.

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS

## AND GENERAL PROVISIONS

2.1    **General Rules of Classification.**

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**2.2    Holders of Claims Entitled to Vote.**

Each Holder of an Allowed Claim and each Holder of a Claim that has been temporarily allowed for voting purposes by Order under Bankruptcy Rule 3018(a), which Claim is in an Impaired Class of Claims, shall be entitled to vote separately to accept or reject the Plan as provided in the Solicitation Procedures Order. Any Unimpaired Class of Claims shall be deemed to have accepted the Plan. Any Class of Claims or Interests that will not receive or retain any property on account of such Claims or Interests shall be deemed to have rejected the Plan.

**2.3    Acceptance by Impaired Classes.**

An Impaired Class of Claims shall have accepted the Plan if all of the necessary conditions of the Bankruptcy Code and Bankruptcy Rules have been satisfied.

**2.4    Non-Consensual Confirmation.**

To the extent necessary, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Subject to section 1127 of the Bankruptcy Code, the Debtors reserve the right to modify the Plan to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, provided such modifications are consistent with Article XI of the Plan.

**2.5    Administrative Claims, Priority Tax Claims and Fee Claims.**

Administrative Claims, Fee Claims, Priority Tax Claims and OFC and OIC Tax Claims (to the extent that OFC and OIC are included in this Plan) have not been classified and are excluded from the Classes set forth in Article IV in accordance with section 1123(a)(1) of the Bankruptcy Code.

**2.6    Special Provision Regarding Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing herein shall affect the rights and defenses, both legal and equitable, of the Liquidation Trust and the Reorganized Stand Alone Debtors, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims and the right to assert Avoidance Actions against any Holders of an Unimpaired Claim.

**2.7    Intentionally Omitted.**

**2.8    Bar Dates for Administrative Claims.**

Respecting Administrative Claims subject to the Administrative Claim Bar Date Order, a Holder of such Administrative Claim must have complied with the provisions of such order to be eligible to receive distributions under the Plan on account of such Administrative Claim.

To be eligible to receive distributions under the Plan on account of an Administrative Claim that is not subject to the Administrative Claim Bar Date Order and that is not a Fee Claim, all requests for payment of such Administrative Claims must be made by Proof of Administrative Claim filed with the Claims Agent so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is twenty (20) days after the Effective Date, unless otherwise agreed to by the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option). Amendments to such Claims shall be governed by the provisions set forth in Section 10.3 of the Plan.

**Any Holder of an Administrative Claim that does not assert such Claim in accordance with this Section 2.8, shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, the Reorganized Stand Alone Debtors, the Reorganized Sale Debtors, the Liquidation Trust, the Estates or any of their property. Any such Claim shall be discharged and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

**2.9    Bar Date for Fee Claims.**

All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on or before the first Business Day that is sixty (60) days after the Effective Date or such other date as otherwise agreed by the Liquidation Trust (under the Sale Option) or the Reorganization Stand Alone (under the Stand Alone Option).

**Any Holder of a Fee Claim that does not assert such Claim in accordance with this Section 2.9 shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, the Reorganized Stand Alone Debtors, the Reorganized Sale Debtors, the Liquidation Trust, the Estates or any of their property. Any such Claim shall be discharged and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

## ARTICLE III.

## UNCLASSIFIED CLAIMS

**3.1    Administrative Claims.**

Subject to the terms herein, and unless the Holder of an Allowed Administrative Claim agrees to receive other, less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid 100% of the unpaid allowed amount of such Administrative Claim in Cash on or as soon as reasonably practicable after the Initial Distribution Date. Notwithstanding the immediately preceding sentence: (i) under the Stand Alone Option, any Allowed Administrative Claims for goods sold or services rendered representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, subject to compliance with any applicable bar date, shall be paid in the ordinary course in accordance with the terms and conditions of any agreements relating thereto; (ii) Allowed Administrative

26

Claims of the United States Trustee for fees pursuant to section 1930(a)(6) of title 28 of the United States Code shall be paid in accordance with the applicable schedule for payment of such fees; and (iii) all Allowed DIP Claims arising from the Final DIP Agreement shall be paid in accordance with the Final DIP Agreement and the Final DIP Order.

### 3.2    Priority Tax Claims.

Subject to the terms herein, and unless the Holder of an Allowed Priority Tax Claim agrees to receive other, less favorable treatment, each Holder of an Allowed Priority Tax Claim shall be paid 100% of the unpaid amount of such Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the Initial Distribution Date; provided, however, that, under the Stand Alone Option, the Reorganized Stand Alone Debtors may opt to make distributions for any Allowed Priority Tax Claim over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim as provided in section 1129(a)(9)(C) of the Bankruptcy Code. If the Reorganized Stand Alone Debtors elect this option as to any Allowed Priority Tax Claim, then the payment of such Allowed Priority Tax Claim shall be made in equal semi-annual installments with the first installment due on the later of: (i) the Initial Distribution Date; (ii) 30 calendar days after the date on which an order allowing such Allowed Priority Tax Claim becomes a Final Order; or (iii) such other time as may be agreed to by the Holder of such Allowed Priority Tax Claim and the Reorganized Stand Alone Debtors. Each installment shall include simple interest on the unpaid portion of such Allowed Priority Tax Claim, without penalty of any kind, at the statutory rate of interest provided for such taxes under applicable non-bankruptcy law; provided, however, that the Reorganized Stand Alone Debtors shall reserve the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Tax Claim, in full, at any time on or after the Effective Date, without premium or penalty. Any Claim or demand for penalty relating to any Priority Tax Claim (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be Disallowed, and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Estates or any of their respective property.

### 3.3    Fee Claims.

Subject to the terms herein, and unless the Holder of an Allowed Fee Claim agrees to receive other, less favorable treatment, each Holder of an Allowed Fee Claim shall receive 100% of the unpaid allowed amount of such Claim in Cash on or as soon as reasonably practicable after the Initial Distribution Date.

### 3.4    OFC and OIC Tax Claims.

To the extent that OFC and OIC are included under this Plan, all OFC and OIC Tax Claims shall be Unimpaired and shall continue to be valid and fully enforceable against Reorganized Sale Debtor after the Effective Date.

27

# ARTICLE IV.

## CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS

**4.1    Summary.**

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2A | Secured Tax Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2B | 1997 Bonds Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2C | 1998 Bonds Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2D | Auto Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2E | Carolina Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2F | First American Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2G | Foothill Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2J | Thomas Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2K | U.S. Bank Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 2L | Other Secured and Setoff Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| Class 3 | Convenience Claims | Impaired | Entitled to Vote |
| Class 4A | Senior Notes Claims | Impaired | Entitled to Vote |
| Class 4B | Junior Notes Claims | Impaired | Entitled to Vote |
| Class 4C | REMIC Guarantee Claims | Impaired | Entitled to Vote |
| Class 4D | Litigation Claims | Impaired | Entitled to Vote |

28

| Class 4E | Other Unsecured Claims | Impaired | Entitled to Vote |
|---|---|---|---|

| Class 6A | Non-Debtor-Held Interests | Impaired | Entitled to Vote |
|---|---|---|---|

**4.2    Class 1 (Priority Non-Tax Claims).**

Classification: Class 1 shall consist of all Priority Non-Tax Claims.

Treatment: Subject to the terms herein, and unless the Holder of an Allowed Priority Non-Tax Claim agrees to receive other, less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Allowed Priority Non-Tax Claim in Cash on or as soon as reasonably practicable after the Initial Distribution Date.

Voting: Class 1 is an Unimpaired Class, and Holders of Class 1 Claims are not entitled to vote.

**4.3    Class 2A (Secured Tax Claims).**

Classification: Class 2A shall consist of all Secured Tax Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, each Holder of an Allowed Secured Tax Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed Secured Tax Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor lien priorities; (c) the reinstatement of the Claim in accordance with section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2A is an Unimpaired Class, and Holders of Class 2A Claims are not entitled to vote.

### 4.4   Class 2B (1997 Bonds Secured Claims).

Classification: Class 2B shall consist of all 1997 Bonds Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, the Holder of the Allowed 1997 Bonds Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed 1997 Bonds Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2B is an Unimpaired Class, and Holders of Class 2B Claims are not entitled to vote.

### 4.5   Class 2C (1998 Bonds Secured Claims).

Classification: Class 2C shall consist of all 1998 Bonds Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed 1998 Bonds Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed 1998 Bonds Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made

on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2C is an Unimpaired Class, and Holders of Class 2C Claims are not entitled to vote.

### 4.6    Class 2D (Auto Secured Claims).

Classification: Class 2D shall consist of all Auto Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed Auto Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed Auto Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2D is an Unimpaired Class, and Holders of Class 2D Claims are not entitled to vote.

### 4.7    Class 2E (Carolina Secured Claims).

Classification: Class 2E shall consist of all Carolina Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed Carolina Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed Carolina Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set

31

up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2E is an Unimpaired Class, and Holders of Class 2E Claims are not entitled to vote.

### 4.8    Class 2F (First American Secured Claims).

Classification: Class 2F shall consist of all First American Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, the Holder of the Allowed First American Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed First American Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2F is an Unimpaired Class, and Holders of the Class 2F Claims are not entitled to vote.

### 4.9    Class 2G (Foothill Secured Claims).

Classification: Class 2G shall consist of all Foothill Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed Foothill Secured Claim shall receive (a) under the Sale Option, 100% of the unpaid amount of such Allowed Claim in accordance with section 5.03 of the Purchase Agreement; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (b) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (c) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (d) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (e) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date.

Voting: Class 2G is an Unimpaired Class, and Holders of Class 2G Claims are not entitled to vote.

**4.10    Intentionally Omitted.**

**4.11    Intentionally Omitted.**

**4.12    Class 2J (Thomas Secured Claims).**

Classification: Class 2J shall consist of all Thomas Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

Treatment: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed Thomas Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed Thomas Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable upon the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

Voting: Class 2J is an Unimpaired Class, and Holders of Class 2J Claims are not entitled to vote.

33

**4.13    Class 2K (U.S. Bank Secured Claims).**

<u>Classification</u>: Class 2K shall consist of all U.S. Bank Secured Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

<u>Treatment</u>: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, a Holder of an Allowed U.S. Bank Secured Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed U.S. Bank Secured Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral).

<u>Voting</u>: Class 2K is an Unimpaired Class, and Holders of Class 2K Claims are not entitled to vote.

**4.14    Class 2L (Other Secured and Setoff Claims).**

<u>Classification</u>: Class 2L shall consist of all Other Secured and Setoff Claims, to the extent (i) validly perfected under applicable non-bankruptcy law prior to the Petition Date or validly perfected after the Petition Date in accordance with section 546(b) of the Bankruptcy Code and (ii) otherwise enforceable against the Debtors' Estates or the property thereof.

<u>Treatment</u>: Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and herein, each Holder of an Allowed Other Secured and Setoff Claim shall receive (i) under the Sale Option, 100% of the unpaid amount of such Allowed Other Secured and Setoff Claim in Cash; or (ii) under the Stand Alone Option, at the option of the Reorganized Stand Alone Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid amount of such Allowed Claim (with such payments to be made, if applicable, from accounts set up by the Debtors, during the Chapter 11 Cases, in connection with the sale of such collateral), subject to applicable inter-creditor Lien priorities; (c) the reinstatement of the Claim in accordance with the provisions of section 1124(2) of the Bankruptcy Code; (d) the indubitable equivalent of such Claim in accordance with section 1129(b)(2)(A)(iii) of the Bankruptcy Code; (e) such other, less favorable, treatment as shall be agreed to between the Holder of such Claim and the Reorganized Stand Alone Debtors; and (f) such other, less favorable, treatment as is determined by Final Order of the Bankruptcy Court. Such distribution, if required, shall be made

34

on or as soon as reasonably practicable after the Initial Distribution Date (subject, if applicable, to the receipt by the Reorganized Stand Alone Debtors or the Liquidation Trust of the Net Proceeds of the sale of the relevant collateral). To the extent a Claim is partially an Allowed Other Secured and Setoff Claim based on an offset right and partially an Allowed Claim of another type, such Other Secured and Setoff Claim shall be deemed to have been (x) setoff only to the extent of the allowed amount of the allowed, liquidated, nondisputed, noncontingent claim owing to the Debtors, Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors and (y) a Claim classified in another relevant Class for any excess of such Claim over the amount so set off. If a Claim is a fully Secured Claim based on an offset right, the allowance of such Claim shall not affect any obligations or liabilities due and payable (at such time) to the Debtors, Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors that are in an amount in excess of the amount validly offset and the payment, in full and in cash, of all amounts due and owing as of the Effective Date to the Debtors, Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors and the turnover of any property of the Debtors, Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors held by such claimant on account of any unliquidated, disputed or contingent right of setoff shall be a precondition of the allowance of such Other Secured and Setoff Claim.

Voting: Class 2L is an Unimpaired Class, and Holders of Class 2L Claims are not entitled to vote.

### 4.15    Class 3 (Convenience Claims).

Classification: Class 3 shall consist of all Convenience Claims.

Treatment: Subject to the terms herein and unless the Holder of an Allowed Class 3 Claim makes a Convenience Class Opt-Out Election or agrees to receive other, less favorable treatment, a Holder of an Allowed Claim in this Class, including Holders of Other Unsecured Claims making a Convenience Class Opt-In Election, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, 25% of the unpaid amount of such Allowed Class 3 Claim in Cash on or as soon as reasonably practicable after the Initial Distribution Date.

Voting: Class 3 is an Impaired Class, and Holders of Class 3 Claims are entitled to vote. The Convenience Class Election must be made at the time of balloting for voting to accept or reject the Plan and clearly indicated on the Holder's Ballot and any such election for treatment as a Convenience Class through a Convenience Class Opt-In Election shall count as a vote for the Plan; provided, however, that, if any Claim that is otherwise eligible for the Convenience Class Election is a Disputed Claim at the time of balloting, the Convenience Class Election may be made in a Final Order allowing such Claim. Once a Convenience Class Election has been made with respect to a Claim, such election shall be irrevocable; provided, however, that a Convenience Class Election can be changed or made upon the written consent of the Debtors, prior to the Effective Date, and the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option), after the Effective Date. Whether a Holder of a Claim has properly made a Convenience Class Election shall have no effect on whether such Claim is or may become a Disputed Claim or an Allowed Claim.

**4.16    Class 4A (Senior Notes Claims).**

Classification: Class 4A shall consist of all Senior Notes Claims.

Treatment: Subject to the terms herein and unless the Holder of an Allowed Class 4A Claim who is the beneficial holder of such Class 4A Claim agrees to receive other, less favorable treatment, such Holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim: (i) under both the Sale Option and the Stand Alone Option, a beneficial interest in the Liquidation Trust in a proportion Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E; and (ii) under the Stand Alone Option, a portion of the 10,000,000 shares of New Common Stock to be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E. Such distributions, shall be made on or as soon as reasonably practicable after the Initial Distribution Date, subject to the establishment of appropriate reserves for Disputed Claims in accordance with the provisions of the Plan, including reserves of New Common Stock held by the Stand Alone Voting Trust.

Voting: Class 4A is an Impaired Class, and Holders of Allowed Class 4A Claims who are the beneficial holders of such Class 4A Claims are entitled to vote.

**4.17    Class 4B (Junior Notes Claims).**

Classification: Class 4B shall consist of all Junior Notes Claims.

Treatment: Subject to the terms herein and unless a Holder of an Allowed Class 4B Claim who is the beneficial holder of such Class 4B Claim agrees to receive other, less favorable treatment, such Holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim: (i) under both the Sale Option and the Stand Alone Option, a beneficial interest in the Liquidation Trust in a proportion Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E; and (ii) under the Stand Alone Option, a portion of the 10,000,000 shares of New Common Stock to be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E. Such distributions, shall be made on or as soon as reasonably practicable after the Initial Distribution Date, subject to the establishment of appropriate reserves for Disputed Claims in accordance with the provisions of the Plan, including reserves of New Common Stock held by the Stand Alone Voting Trust.

Voting: Class 4B is an Impaired Class, and Holders of Allowed Class 4B Claims who are the beneficial holders of such Class 4B Claims are entitled to vote.

**4.18    Class 4C (REMIC Guarantee Claims).**

Classification: Class 4C shall consist of all REMIC Guarantee Claims.

Treatment: Subject to the terms herein and unless a Holder of an Allowed Class 4C Claim agrees to receive other, less favorable treatment, such Holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange

for such Claim: (i) under both the Sale Option and the Stand Alone Option, a beneficial interest in the Liquidation Trust in a proportion Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E; and (ii) under the Stand Alone Option, a portion of the 10,000,000 shares of New Common Stock to be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E. Such distributions, shall be made on or as soon as reasonably practicable after the Initial Distribution Date, subject to the establishment of appropriate reserves for Disputed Claims in accordance with the provisions of the Plan, including reserves of New Common Stock held by the Stand Alone Voting Trust. This treatment shall not prohibit the surrender of REMIC Certificates or interests therein to the Liquidation Trust (under the Sale Option) or the Reorganized Sale Debtors (under the Stand Alone Option) in connection with the resolution of Disputed Class 4C Claims.

Voting: Class 4C is an Impaired Class, and Holders of Allowed Class 4C Claims who are the beneficial holders of such Class 4C Claims are entitled to vote.

### 4.19    Class 4D (Litigation Claims).

Classification: Class 4D shall consist of all Litigation Claims.

Treatment: Subject to the terms herein and unless a Holder of an Allowed Class 4D Claim agrees to receive other, less favorable treatment, such Holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim: (i) under both the Sale Option and the Stand Alone Option, a beneficial interest in the Liquidation Trust in a proportion Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E; and (ii) under the Stand Alone Option, a portion of the 10,000,000 shares of New Common Stock to be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E. Such distributions, shall be made on or as soon as reasonably practicable after the Initial Distribution Date, subject to the establishment of appropriate reserves for Disputed Claims in accordance with the provisions of the Plan, including reserves of New Common Stock held by the Stand Alone Voting Trust.

Voting: Class 4D is an Impaired Class, and Holders of Allowed Class 4D Claims are entitled to vote.

### 4.20    Class 4E (Other Unsecured Claims).

Classification: Class 4E shall consist of all Other Unsecured Claims.

Treatment: Subject to the terms herein and unless a Holder of an Allowed Class 4E Claim makes a Convenience Class Opt-In Election or agrees to receive other, less favorable treatment, such Holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim: (i) under both the Sale Option and the Stand Alone Option, a beneficial interest in the Liquidation Trust in a proportion Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E; and (ii) under the Stand Alone Option, a portion of the 10,000,000 shares of New Common Stock to

be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Claims in Class 4A, Class 4B, Class 4C, Class 4D and Class 4E. Such distributions, shall be made on or as soon as reasonably practicable after the Initial Distribution Date, subject to the establishment of appropriate reserves for Disputed Claims in accordance with the provisions of the Plan, including reserves of New Common Stock held by the Stand Alone Voting Trust.

Voting: Class 4E is an Impaired Class, and Holders of Allowed Class 4E Claims are entitled to vote.

#### 4.21    Intentionally Omitted.

#### 4.22    Class 6A (Non-Debtor-Held Interests).

Classification: Class 6 shall consist of all Non-Debtor-Held Interests.

Treatment: Subject to the terms herein and unless the Holder of an Allowed Class 6A Interest agrees to receive other, less favorable treatment, such Holder of an Allowed Interest in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Interest: (i) under the Sale Option, retention of its Interest in Oakwood; or (ii) under the Stand Alone Option, a portion of the New Warrants to be issued pursuant to the Plan, in an amount that is Ratable to other Allowed Interests in Class 6A. Such distributions shall be made on or as soon as reasonably practicable upon the Initial Distribution Date, subject to the establishment of appropriate reserves under the Stand Alone Option for Disputed Interests in accordance with the provisions of the Plan; provided, however, that no distribution shall be made to Holders of Allowed Class 6A Interests if any of Class 4A, Class 4B, Class 4C, Class 4D or Class 4E does not accept the Plan.

Voting: Class 6A is an Impaired Class, and all Holders of Allowed Class 6A Claims are entitled to vote.

#### 4.23    Intentionally Omitted.

### ARTICLE V.

### CONDITIONS PRECEDENT

#### 5.1    Conditions to Confirmation.

##### (a)    Under the Sale Option.

Unless this condition is waived in accordance with the Plan, the Confirmation Order and the Plan Supplement must be in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, the Buyer and Berkshire, and the Confirmation Order shall:

(i)    order, find, and decree that the Purchase Agreement and all other documents necessary to consummate the sale of the Purchased Business to the Buyer, including the documents

substantially in the form set forth in the Plan Supplement, are approved in all respects and that all parties thereto are authorized and directed to perform all of their obligations thereunder;

(ii)    order, find, and decree that the sale of the Purchased Business to the Buyer pursuant to the Plan and the Purchase Agreement, including, without limitation, OSHC's rejection of the Subservicing Agreements, OSHC's assumption of the Servicing Agreements, and OSHC's assignment of the Servicing Agreements to Buyer (but only if such Subservicing Agreements and Servicing Agreement are not already the subjects of a separate order or orders of the Bankruptcy Court): (a) is in the best interests of all of the Debtors' constituencies, (b) maximizes the value of the Debtors' business enterprises, (c) is approved pursuant to Bankruptcy Code sections 105, 363, 365, 1123, and 1129, and (d) that the Buyer has acted in good faith for the purposes of Bankruptcy Code sections 363(m) and 365;

(iii)    order, find and decree that the Confirmation Order shall supersede any orders of the Court issued prior to the Confirmation Date to the extent that those prior orders may be inconsistent with the Confirmation Order;

(iv)    order and decree that the Estates of the Debtors shall be substantively consolidated but only to the extent set forth in the Plan;

(v)    authorize the implementation of the Plan in accordance with its terms;

(vi)    provide that any transfers effected or mortgages or other security documents entered into or to be effected or entered into under the Plan shall be and are exempt from any state, city, or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar taxes pursuant to Bankruptcy Code section 1146(c);

(vii)    approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan;

(viii)    provide that all executory contracts or unexpired leases assumed by the Debtors and assigned during the Chapter 11 Cases or under the Plan shall remain in full force and effect for the benefit of the assignee thereof notwithstanding any provisions in any contract or lease (including provisions of the kinds described in Bankruptcy Code section 365(b)(2) and (f)) that prohibit assignment or transfer thereof or that enable or require termination or modification of such contract or lease upon assignment thereof);

(ix)    provide that (A) all executory contracts and unexpired leases of any Debtor that are listed in the Purchase Agreement as

executory contracts and unexpired leases to be assumed and assigned thereunder shall be deemed assumed by the Debtor that is a party thereto and assigned to the Buyer; and (B) effective as of the Petition Date, all other executory contracts and unexpired leases of the Debtors are subject to the treatment provided in Article IX of the Plan;

(x)     provide that with respect to all assumptions and all assignments described or authorized in the preceding paragraph, all such contracts or leases shall remain in full force and effect for the benefit of the Buyer, the Reorganized Sale Debtors or the Liquidation Trust, as applicable, notwithstanding any provisions in any contract or lease (including provisions of the kinds described in Bankruptcy Code section 365(b)(2) and (f)) that prohibit assignment or transfer thereof or that enable or require termination or modification of such contract or lease upon assignment thereof;

(xi)     establish the Liquidation Trust consistent with the terms of the Liquidation Trust Agreement and the Plan;

(xii)     order, find and decree that the Transfers of Assets by the Debtors to the Buyer, the Reorganized Sale Debtors or the Liquidation Trust: (A) are or shall be legal, valid, and effective transfers of property; (B) vest or shall vest the transferee with good title to such property free and clear of all Liens, Claims, encumbrances, and Interests of any Person, except as expressly provided in the Plan, Purchase Agreement or Confirmation Order; (C) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law; and (D) do not and shall not subject the Buyer, the Reorganized Sale Debtors or the Liquidation Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including any laws affecting successor or transferee liability or fraudulent conveyance or transfer laws;

(xiii)     find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(xiv)     order, find and decree that, unless otherwise explicitly stated in the Plan, all Claims related to the Debtors not otherwise discharged or released under the Plan, if any, shall become solely the responsibility of the Reorganized Sale Debtors and shall not be the responsibility or liability of the Liquidation Trust or the Buyer;

(xv)     approve, in all respects, the Plan Supplement;

(xvi)   find that the provisions of Bankruptcy Code sections 1145 and 1146(c) apply to the transactions contemplated hereunder, if applicable; and

(xvii)  appoint a Person to serve as the responsible officer and director for each of the Reorganized Sale Debtors empowered to take action without requiring the vote or consent of the Holders of Old Common Stock in accordance with applicable law.

**(b)    Under the Stand Alone Option.**

Unless this condition is waived in accordance with the Plan, the Confirmation Order and the Plan Supplement must be in form and substance reasonably acceptable to the Debtors, the Creditors' Committee and Berkshire, and the Confirmation Order shall:

(i)    include a provision authorizing the Reorganized Debtors to adopt and file their respective Amended and Restated Certificates of Incorporation and Amended and Restated Bylaws;

(ii)   order, find and decree that the Confirmation Order shall supersede any orders of the Court issued prior to the Confirmation Date to the extent that those prior orders may be inconsistent with the Confirmation Order;

(iii)  order and decree that the Estates of the Debtors shall be substantively consolidated but only to the extent set forth in the Plan;

(iv)   include a provision authorizing the issuance of the New Common Stock and New Warrants, if necessary;

(v)    establish the Liquidation Trust consistent with the terms of the Liquidation Trust Agreement and the Plan;

(vi)   establish the Stand Alone Voting Trust consistent with the terms of the Stand Alone Voting Trust Agreement and the Plan;

(vii)  order, find and decree that the Transfers of Assets by the Debtors to the Reorganized Stand Alone Debtors or the Liquidation Trust: (A) are or shall be legal, valid, and effective transfers of property; (B) vest or shall vest the transferee with good title to such property free and clear of all Liens, Claims, encumbrances, and Interests of any Person, except as expressly provided in the Plan, Purchase Agreement or Confirmation Order; (C) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law; and (D) do not and shall not subject the Reorganized Stand Alone Debtors or the Liquidation Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including any laws affecting successor or transferee liability;

41

(viii)   find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(ix)    order, find and decree that, unless otherwise explicitly stated in the Plan, all claims related to the Debtors not otherwise discharged or released under the Plan, if any, shall become solely the responsibility of the Reorganized Stand Alone Debtors and shall not be the responsibility or liability of the Liquidation Trust;

(x)    find that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Stand Alone Debtors or the need for further financial reorganization, expect as specifically provided in the Plan;

(xi)    approve, in all respects, the Plan Supplement;

(xii)    approve in all respects the other settlements, transactions, and agreements to be effectuated pursuant to the Plan, including the Exit Facility Agreement; and

(xiii)    find that the provisions of Bankruptcy Code sections 1145 and 1146(c) apply to the transactions contemplated hereunder, if applicable.

**5.2    Conditions to Consummation.**

(a)    **Under the Sale Option.**

The Debtors intend to request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and shall be a Final Order. Notwithstanding the foregoing, the Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by the Plan) by the Debtors, the Creditors' Committee, the Buyer and Berkshire (such waivers shall not be unreasonably withheld):

(i)    after the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification;

(ii)    the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with Section 5.1(a), shall have been signed by the judge presiding over the Chapter 11 Cases and shall have become a Final Order;

(iii)    all conditions precedent to the confirmation of the Plan in Section 5.1(a) of the Plan shall have been satisfied and shall continue to be satisfied;

(iv)    all actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date, including any actions, documentation or agreements necessary for the release of any collateral pursuant to Section 5.03 of the Purchase Agreement, shall be reasonably satisfactory to the Debtors, the Creditors' Committee and (to the extent required by the Purchase Agreement) the Buyer, and such actions, documents, and agreements shall have been effected or executed and delivered. All documents to be contained in the Plan Supplement shall be completed and in final form and, as applicable, executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived;

(v)    all conditions to the closing under the Purchase Agreement shall have been satisfied or waived in accordance therewith, and the closing is prepared to occur on the Effective Date; and

(vi)    the Debtors shall have sufficient Cash on hand (or will have sufficient Cash immediately upon the closing of the Purchase Agreement) to make distributions of Cash required pursuant to the Plan on the Initial Distribution Date and to fund reasonably anticipated expenses of the Liquidation Trust.

**(b)    Under the Stand Alone Option.**

The Debtors intend to request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and shall be a Final Order. Notwithstanding the foregoing, the Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by the Plan) by the Debtors, the Creditors' Committee and Berkshire (such waivers shall not be unreasonably withheld):

(i)    after the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification;

(ii)    the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with Section 5.1(b), shall have been signed by the judge presiding over the Chapter 11 Cases and shall have become a Final Order;

(iii)    all conditions precedent to the confirmation of the Plan in Section 5.1(b) of the Plan shall have been satisfied and shall continue to be satisfied;

(iv)    all actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the

43

Debtors, the Creditors' Committee and Berkshire, and such
actions, documents, and agreements shall have been effected or
executed and delivered. All documents to be contained in the Plan
Supplement shall be completed and in final form and, as
applicable, executed by the parties thereto and all conditions
precedent contained in any of the foregoing shall have been
satisfied or waived;

(v)     the Debtors shall have sufficient Cash on hand (or
investments projected by the Debtors to provide timely Cash) to
make distributions of Cash required pursuant to the Plan on the
Initial Distribution Date and to fund reasonably anticipated
expenses of the Liquidation Trust;

(vi)    the Debtors have established the Liquidation Trust; and

(vii)   the Debtors have entered into the necessary agreements and
may commence borrowing under the Exit Facility.

**5.3     Waiver of Conditions.**

The waiver of any condition set forth in this Article V may be made without
further notice or order of the Bankruptcy Court.

**5.4     Effect of Nonoccurrence of the Conditions to Consummation.**

If each of the conditions to consummation and the occurrence of the Effective
Date has not been satisfied or duly waived in accordance with the Plan on or before the first
Business Day that is more than ninety (90) days after the Confirmation Date, or such later date as
shall be agreed by the Debtors, the Creditors' Committee and Berkshire, the Debtors may
schedule a status hearing with the Bankruptcy Court. If the Confirmation Order is ultimately
vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall
constitute an admission, a waiver or release of any Claims against or Interests in any of the
Debtors.

**ARTICLE VI.**

**IMPLEMENTATION**

In addition to the provisions set forth elsewhere in the Plan, the following shall
constitute the means of execution and implementation of the Plan. The Sale Option shall be
implemented unless the Purchase Agreement is terminated by its terms; provided, however, that
the Debtors may not terminate the Purchase Agreement, and thereby consummate the Plan
pursuant to the Stand Alone Option, without the consent of the Creditors' Committee, which
consent shall not be unreasonably withheld. If the Purchase Agreement is terminated by its
terms, the Plan will be implemented according to the Stand Alone Option.