6.1     **Plan Implementation under the Sale Option.**

(a)     **Consummation of Sale Transaction.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Purchase Agreement and the transactions to be entered into, and actions to be taken, thereunder pursuant to sections 363, 365, 1123, 1129, 1145 and 1146(c) of the Bankruptcy Code. The Debtors shall sell and Transfer the Purchased Business to the Buyer in accordance with the Purchase Agreement.

(b)     **Authorization of the Sale Transaction.**

The confirmation of this Plan shall authorize the consummation of all transactions contemplated by the Purchase Agreement with no requirement of any further authorization by the boards of directors, shareholders, members, managers, partners or general partners of any of the Debtors. Upon confirmation, the appropriate officers of the Debtors shall be authorized to execute any and all documents and perform any and all acts necessary and appropriate to consummate all transactions contemplated by the Purchase Agreement.

(c)     **Revesting and Transfer of Assets.**

Pursuant to Bankruptcy Code section 1141(b), the assets and property of the Estates and of the Debtors shall vest or revest, such that: (i) on the Effective Date, the Purchase Consideration, less the Reorganized Sale Debtors Capitalization Amount, and the Excluded Sale Trust Assets, including any value associated with Debtor Suburban Home Sales, Inc. to the extent such value is an Excluded Asset, shall vest in the Liquidation Trust; and (ii) on the Effective Date, the Excluded Sale Debtor Assets and the Reorganized Sale Debtors Capitalization Amount shall vest or revest in the Reorganized Sale Debtors; provided, however, that the Liquidation Trust may abandon or otherwise not accept any Excluded Sale Trust Assets that the Liquidation Trust believes, in good faith, have no value to the Liquidation Trust. Any Excluded Sale Trust Assets which the Liquidation Trust abandons or otherwise does not accept shall not vest or revest in the Liquidation Trust and shall vest or revest in the Reorganized Sale Debtors.

As of the Effective Date, all Assets vested or revested in the Liquidation Trust or the Reorganized Sale Debtors, and all assets and property dealt with by the Plan, including all Assets transferred to the Buyer pursuant to the Purchase Agreement, shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Any property of any non-debtor affiliates of the Debtors, and any Claims and Liens against any non-debtor affiliates of the Debtors or their respective properties shall not be affected or impaired by the operation of the Plan, the Confirmation Order, or otherwise except as specifically provided herein.

Additionally, as of the Effective Date, under the Sale Option, all of the Estates' rights, benefits, duties and obligations under the Purchase Agreement arising after the closing of the Purchase Agreement shall be assumed by, assigned to and vest in the Liquidation Trust.

(d)    **Merger of Debtors and Vesting of Assets in Reorganized Sale Debtors.**

The Debtors' anticipate that, on the Effective Date, the Reorganized Sale Debtors may or may not each remain organized as they were prior to the Petition Date under the applicable state law of each of their respective jurisdictions of organization, except to the extent a different corporate structure is determined to benefit the Reorganized Sale Debtors or the Liquidation Trust and/or such entities have not previously been merged, liquidated or dissolved in accordance with applicable law prior to the Effective Date. Pursuant to the Plan, each of the surviving Reorganized Sale Debtors will be governed by an independent and disinterested Person selected by the Debtors with the consent of the Creditors' Committee and Berkshire, which consent shall not be unreasonably withheld, and identified in the Plan Supplement, as each Reorganized Sale Debtors' sole officer, director or similar appropriate capacity under state law; provided, however, that an outstanding Fee Claim shall not render a Person ineligible to serve as the sole officer and director of any of the Reorganized Sale Debtors. Such individual shall be empowered to take all necessary and appropriate corporate actions without further meetings or voting by shareholders, members, partners, or holders of ownership interests. If Oakwood Financial Corporation is not a debtor under the Bankruptcy Code as of the Effective Date, Reorganized Sale OKWD shall retain the stock of Oakwood Financial Corporation. If Oakwood Financial Corporation is a debtor under the Bankruptcy Code on the Effective Date, its plan of reorganization shall provide for the ownership of its stock by the Reorganized Sale Debtors.

(e)    **Treatment of Old Common Stock, Interests and Beneficial Interest in the Liquidation Trust.**

On the Effective Date, the shares of Old Common Stock shall remain outstanding pursuant to the terms of the Plan; provided, however, that the rights of Holders of Old Common Stock may be altered to effectuate the purposes of the Plan. The Reorganized Sale Debtors likely will be dissolved in accordance with state law, in which event the shares of Old Common Stock shall not be transferable, shall not be listed on any exchange, and no periodic reports will be filed with the Securities and Exchange Commission. The beneficial interests of the Liquidation Trust issued pursuant to the Plan shall be issued pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code. Any securities issued or transferred by the Reorganized Sale Debtors or the Liquidation Trust shall be issued or transferred pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code and shall be exempt from taxes pursuant to section 1146(c) of the Bankruptcy Code.

(f)    **Considerations Regarding the Additional Debtors.**

In order to consummate the sale under the Purchase Agreement three more entities wholly owned by the Debtors--Oakwood Financial Corporation, Oakwood Investment Corporation and Oakwood Servicing Holdings Co., LLC. (and potentially other similar entities) may become debtors and may file motions and plans of reorganization to facilitate certain transfers. These entities are special purpose entities with limited activities and their filings and bankruptcy cases, even if substantively consolidated with the Debtors, would not have a material effect on distributions to creditors.

Pursuant to the Plan or a separate motion, OHSC shall, under sections 105, 363 and 365 of the Bankruptcy Code, as of the Effective Date, (i) reject the Subservicing Agreements, (ii) assume the Servicing Agreements, and (iii) assign the Servicing Agreements to the Buyer in accordance with Section 4.13 of the Purchase Agreement.    To the extent the Subservicing Agreements and Servicing Agreement are not already the subjects of a separate order or orders of the Bankruptcy Court, the Plan shall constitute a motion for authority to reject the Subservicing Agreements and to assume and assign the Servicing Agreements in accordance with Section 4.13 of the Purchase Agreement.

### (g)    Distributions of Cash.

The Liquidation Trust shall be responsible for making all distribution of Cash to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed Class 3 Claims, subject to appropriate reserves as described in Section 8.2 of the Plan.

### 6.2    Plan Implementation under the Stand Alone Option.

### (a)    Vesting of Assets.

Pursuant to section 1141(b) of the Bankruptcy Code, except for the Initial Stand Alone Trust Assets, as otherwise provided in the Plan, property of the Estates and of the Debtors shall revest, such that: (i) on the Effective Date, the Initial Stand Alone Trust Assets shall vest in the Liquidation Trust; and (ii) on the Effective Date, all of the Assets other than the Initial Stand Alone Trust Assets shall vest or revest in the Reorganized Stand Alone Debtors.

As of the Effective Date, all Assets vested or revested in the Liquidation Trust or the Reorganized Stand Alone Debtors, and all assets and property dealt with by the Plan, shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Any property of any non-debtor affiliates of the Debtors, and any Claims and Liens against any non-debtor affiliates of the Debtors or their respective properties shall not be affected or impaired by the operation of the Plan, the Confirmation Order, or otherwise except as specifically provided herein.

From and after the Effective Date, the Reorganized Stand Alone Debtors may operate their businesses and use, acquire, and dispose of property without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

### (b)    Amended and Restated Certificates of Incorporation.

Upon the Effective Date, the Reorganized Stand Alone Debtors shall file their Amended and Restated Certificates of Incorporation, as set forth in the Plan Supplement, with the offices of the Secretary of State of the state that governs their respective entities in accordance with the respective state law. Each Amended and Restated Certificate of Incorporation will, among other things, provide for the prohibition of the issuance of non-voting

equity securities to the extent required by section 1123(a) of the Bankruptcy Code, and with respect to Reorganized Stand Alone Oakwood, authorize 20,000,000 shares of New Common Stock. After the Effective Date, the Reorganized Stand Alone Debtors may amend and restate their Amended and Restated Certificates of Incorporation and other constituent documents as permitted by applicable law.

### (c)  Amended and Restated Bylaws.

The Reorganized Stand Alone Debtors shall adopt and effect the Amended and Restated Bylaws, as set forth in the Plan Supplement.

### (d)  New Securities.

On the Effective Date, Reorganized Stand Alone Oakwood shall issue, in accordance with the provisions of this Plan and the registration rights agreement in the Plan Supplement, 10,000,000 shares of the New Common Stock, which shall constitute 100% of the total number of shares of such New Common Stock to be issued and outstanding on or immediately after the Effective Date, and the New Warrants to be distributed pursuant to the terms of the Plan. The Reorganized Stand Alone Debtors shall endeavor in good faith to list the New Common Stock on a national exchange as soon as reasonably practicable. The New Warrants, as provided in the Warrant Agreement, shall have a seven year maturity and an exercise price initially computed for an initial market value of New Common Stock, which would result in 100% recovery to the Holders of Class 4A, 4B, 4C, 4D and 4E Claims as provided for in the Warrant Agreement. The exercise price will increase annually at the risk free rate (30-year Treasury rate) until their expiration. The shares of New Common Stock and New Warrants issued pursuant to the Plan shall be issued pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code and shall be exempt from taxes pursuant to section 1146(c) of the Bankruptcy Code.

### (e)  Directors.

Upon the Effective Date, the operation of each of the Reorganized Stand Alone Debtors shall become the general responsibility of their respective boards of directors (or their equivalents) who shall, thereafter, have the responsibility for the management, control and operation of each of the Reorganized Stand Alone Debtors. The initial board of directors for Reorganized Stand Alone Oakwood shall be comprised of five (5) directors, all of whom are disinterested under the Bankruptcy Code and independent under applicable securities law; provided, however, that an outstanding Fee Claim shall not render a Person ineligible to serve on the initial board of directors; provided further, however, that the chief executive officer of the Reorganized Stand Alone Debtors may be named to the initial board of directors. The initial board of directors shall be designated by the Creditors' Committee, which such designations shall be reasonably acceptable to the Debtors and Berkshire and shall be included by the Debtors in the Plan Supplement, prior to the Effective Date. If, prior to the Confirmation Hearing, the Creditors' Committee does not so designate an initial board of directors, or designates an incomplete initial board of directors, the existing members of the board of directors of Oakwood, before the Confirmation Hearing, shall so designate those remaining undesignated directorships.

The initial boards of directors of the reorganized Affiliate Debtors shall be the same as that of Reorganized Stand Alone Oakwood unless otherwise designated by the board of directors of Reorganized Stand Alone Oakwood. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the names of each of the director nominees shall be disclosed prior to the entry of any Confirmation Order. All such directors shall be deemed elected, and those directors not continuing in office shall be deemed removed therefrom, effective on the Effective Date, pursuant to the Confirmation Order. Such directors' tenure and the manner of selection of new directors shall be initially as provided in the Amended and Restated Certificates of Incorporation and the Amended and Restated Bylaws.

### (f)    Officers.

On the Effective Date, the existing officers of each of the Debtors shall be retained and shall remain as officers of the Reorganized Stand Alone Debtors and shall continue to serve until such time as they may resign, be removed or be replaced by the board of directors of each of the Reorganized Stand Alone Debtors.

### (g)    Employment Contracts and Professional Retentions.

From and after the Effective Date, the Reorganized Stand Alone Debtors may enter into employment contracts with their respective officers, agents or employees. The Reorganized Stand Alone Debtors may, among other things, retain any employee, professional, consultant, or claims, notice or disbursing agents as it shall deem necessary to comply with the provisions of this Plan, including those Persons that have served as employees, professionals, consultants or agents during the Chapter 11 Cases.

### (h)    Corporate Action and Other Documents and Actions.

The adoption of the Amended and Restated Certificates of Incorporation, the Amended and Restated Bylaws, the selection of directors and officers for the Reorganized Stand Alone Debtors, the issuance and distribution of the New Common Stock and New Warrants, the execution and delivery of any contract, instrument, release, document or agreement, and any other matter provided for under the Plan involving the corporate action to be taken by or required of any of the Reorganized Stand Alone Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders or directors of any of the Debtors or Reorganized Stand Alone Debtors.

### (i)    Approval of the Exit Facility.

Entry of the Confirmation Order shall, to the extent necessary, authorize and approve, without any further action by the Debtors, the Exit Facility Agreement and the transactions to be entered into, and actions to be taken thereunder, pursuant the Bankruptcy Code.

(j)     **Distributions of Cash.**

The Reorganized Stand Alone Debtors shall be responsible for making all distributions of Cash to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed Class 3 Claims, subject to appropriate reserves as described in Section 8.2 of the Plan.

(k)     **Distributions of Proceeds from the Liquidation Trust.**

The Reorganized Stand Alone Debtors shall be responsible for directing the Liquidation Trust with respect to the creation of reserves, as described in Section 8.2 of the Plan, and the distribution of the assets of the Liquidation Trust to Holders of Allowed Claims from Classes 4A, 4B, 4C, 4D and 4E.

6.3     **Provisions Concerning Plan Implementation under Both the Sale Option and the Stand Alone Option.**

(a)     **Substantive Consolidation.**

(i)     **Effect of Substantive Consolidation.**

On the Effective Date, the Estates shall be substantively consolidated for all purposes related to the Plan (but only for those purposes) including voting, confirmation, distributions and claim determinations.  The substantive consolidations of the Estates shall have the following effects: (i) all assets and liabilities of the Debtors shall be treated as though they were merged for purposes of distribution; (ii) all prepetition and postpetition cross-corporate guarantees of the Debtors shall be eliminated; (iii) all Claims based upon guarantees of collection, payment or performance made by one or more Debtors as to the obligations of another Debtor or of any other Person shall be discharged, released and of no further force and effect; (iv) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of the Estate; (v) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the Estate; (vi) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Estate in the consolidated Chapter 11 Cases and shall be deemed a single obligation of the relevant Estate under the Plan on and after the Confirmation Date; and (vii) the Chapter 11 Cases of the Affiliate Debtors shall be closed and the consolidated Estate be administered through Oakwood's Chapter 11 Case.

In connection with, and as a result of, the substantive consolidation of the Debtors' Estates and Chapter 11 Cases as provided in the Plan, on the occurrence of the Effective Date all Intercompany Claims shall be (i) released, (ii) contributed to capital, (iii) dividended or (iv) remain Unimpaired, depending on the tax consequences, and Holders of Intercompany Claims shall not be entitled to, and shall not, receive or retain any property or interest in property on account of such Claims, except to the extent potential tax consequences otherwise dictate.  Notwithstanding this Section 6.3, on the Effective Date, all Debtor Holders of Debtor-Held Interests in any of the Debtors shall either (i) retain such Debtor-Held Interest, in

50

which case the Debtor Holding an Interest in an Affiliate Debtor shall continue to hold such Debtor-Held Interest in the corresponding Reorganized Subsidiary or (ii) receive new equity in the appropriate reorganized Affiliate Debtor upon the cancellation of the old equity.

The substantive consolidation provided for herein shall not, other than for purposes related to the Plan and distributions to be made hereunder, affect the legal and corporate structures of the Debtors or the Non-Debtor-Held Interests, the rights and defenses of the Liquidation Trust and the Reorganized Stand Alone Debtors pertaining to the Causes of Action, and any obligations under any executory contract or unexpired leases assumed in the Plan or otherwise in the Chapter 11 Cases.

(ii)    <b>Plan as Motion for Approval of Substantive Consolidation.</b>

The Plan shall serve as a motion seeking entry of an order substantively consolidating the Estates as provided herein.

(b)    <b>Creation of the Liquidation Trust.</b>

The Liquidation Trustee shall sign the Liquidation Trust Agreement and accept the Liquidation Trust assets on behalf of the beneficiaries thereof, and the Liquidation Trust will then be deemed created and effective without any further action of the directors or shareholders of the Debtors. The Liquidation Trust shall be established for the sole purpose of liquidating its assets, with no objective to continue or engage in the conduct of a trade or business. The beneficiaries of the Liquidation Trust shall be bound by the Liquidation Trust Agreement. Interests in the Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law. The Liquidation Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidation Trustee, in consultation with the Liquidation Trust Advisory Committee, to extend such term as applicable law shall allow.

The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code and in other prudent investments, as authorized by the Liquidation Trust Advisory Committee; provided, however, that such investment are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect trust assets; (b) pay taxes or other obligations incurred by the trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants (including those Persons that have served as employees, professionals, consultants or claims, noticing and disbursing agents during the Chapter 11 Cases) to advise and assist in the administration, prosecution and distribution of trust assets; (d)

51

calculate and implement distributions of trust assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of that agreement, all Claims and Causes of Action vested in the Liquidation Trust; (f) under the Sale Option, resolve issues involving Claims and Interests pursuant to Article X hereof; (g) under the Sale Option, enter into and perform any and all obligations of the disputed ownership fund escrow account agreement (the "Disputed Ownership Fund Escrow Agreement"); and (h) under the Sale Option, perform any and all duties and obligations arising under the Purchase Agreement and any other agreements executed or entered into pursuant to the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

All costs and expenses associated with the administration of the Liquidation Trust, including reasonable compensation for the Liquidation Trustee and, as set forth in the Liquidation Trust Agreement, the Liquidation Trust Advisory Committee, shall be the responsibility of and paid by the Liquidation Trust in accordance with the Liquidation Trust Agreement. Under the Sale Option, the Liquidation Trust is the successor to the Debtors' rights to books and records under the Purchase Agreement. Under the Stand Alone Option, the Reorganized Stand Alone Debtors shall cooperate with the reasonable requests of the Liquidation Trustee in furtherance of the Liquidation Trustee's responsibility to recover trust assets and shall afford reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Stand Alone Debtors to representatives of the Liquidation Trust to enable the Liquidation Trustee to perform the Liquidation Trustee's tasks under the Liquidation Trust Agreement and the Plan. The Reorganized Stand Alone Debtors will not be required to make expenditures in response to unreasonable requests.

The Liquidation Trust shall be responsible for filing all federal, state and local tax returns for the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trust shall provide reports to holders of interests in the Liquidation Trust as the Liquidation Trust Advisory Committee deems appropriate.

(c)    **Federal Income Tax Treatment of the Trust for the Liquidation Trust Assets.**

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries (i.e., the Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E). Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors of an undivided interest in each of the assets of the Liquidation Trust and then contributed such interests to the Liquidation Trust.

(i)    **Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims.**

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trust, and the Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E) shall treat the transfer of assets to the Liquidating Trust for the benefit of the

Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E, as (A) a transfer of the assets of the Liquidation Trust directly to the Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E, followed by (B) the transfer by such Holders to the Liquidation Trust of the assets of the Liquidation Trust in exchange for beneficial interests in the Liquidation Trust. Accordingly, the Holders of such Allowed Claims shall be treated for federal income tax purposes as the grantors and owners of their respective share of the assets of the Liquidation Trust.

### (ii)    Tax Reporting.

The Liquidation Trust shall file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.3(c). The Liquidation Trust also shall annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated (subject to Section 8.2 of the Plan, relating to Disputed Claims) to the Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E in accordance with their relative beneficial interests in the Liquidation Trust.

As soon as possible after the Effective Date, the Liquidation Trust shall make a good faith valuation of the assets of the Liquidation Trust, and such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidation Trust, and the Holders of Allowed Claims in Classes 4A, 4B, 4C, 4D and 4E) for all federal income tax purposes. The Liquidation Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidation Trust that are required by any governmental unit.

Notwithstanding anything else in the Plan, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidation Trust shall (i) treat any assets allocable to, or retained on account of, Disputed Claims as held by one or more discrete trusts for federal income tax purposes (the "Disputed Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the Tax Code (sections 641 et. seq.), (ii) treat as taxable income or loss of the Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed Claims Reserve any increased amounts distributed by the Liquidation Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, shall report consistent with the foregoing for state and local income tax purposes. All Holders of Claims in Classes 4A, 4B, 4C, 4D and 4E shall report, for tax purposes, consistent with the foregoing.

The Liquidation Trustee shall be responsible for payments, out of the Liquidation Trust Assets, of any taxes imposed on the trust or its assets, including the Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed

53

Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trustee as a result of the resolutions of such Disputed Claims.

The Liquidation Trustee may request an expedited determination of Taxes of the Debtors and of the Liquidation Trust, including the Disputed Claims Reserve under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

### (iii) Dissolution.

The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the assets of the Liquidation Trust have been liquidated, and (iii) all distributions required to be made by the Liquidation Trustee under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Liquidation Trust.

### (d) Appointment of Liquidation Trustee

The Liquidation Trustee for the Liquidation Trust shall be an independent and disinterested Person designated by the Creditors' Committee with the consent of the Debtors and Berkshire, whose approval shall not be unreasonably withheld, and identified in the Plan Supplement; provided, however, that an outstanding Fee Claim shall not render a Person ineligible to serve as the Liquidation Trustee.

### (e) The Liquidation Trust Advisory Committee.

On the Effective Date, the Liquidation Trust Advisory Committee shall be formed pursuant to the Liquidation Trust Agreement. The Liquidation Trust Advisory Committee shall be comprised of five (5) members, consisting of WL Ross & Co. LLC, Aegon USA Investment Management, LLC, and three (3) independent and disinterested members to be appointed by the Creditors' Committee with the consent of the Debtors and Berkshire, whose approval shall not be unreasonably withheld; provided, however, that an outstanding Fee Claim shall not render a Person ineligible to serve on the Liquidation Trust Advisory Committee. The three (3) independent and disinterested members shall be identified in the Plan Supplement. If WL Ross & Co. LLC or Aegon USA Investment Management, LLC subsequently determine that they are no longer interested in serving as members of the Liquidation Trust Advisory

54

Committee, the Creditors' Committee will select replacement members, to be identified in the Plan Supplement, with the consent of the Debtors and Berkshire, whose approval shall not be unreasonably withheld (reasonableness shall be determined in light of the balance between Holders of REMIC Guarantee Claims and Holders of other Claims in connection with the ongoing litigation concerning the Class 4C Claims).  If, as of the Confirmation Date, the Creditors' Committee has not appointed the three (3) independent and disinterested members of the Trust Advisory Committee, until at least three (3) members are so appointed, the Debtors, before the Confirmation Hearing, shall so designate those remaining undesignated members of the Trust Advisory Committee.  The Liquidation Trustee shall make such reports to and seek such advice from, if any, the Liquidation Trust Advisory Committee as required under the Liquidation Trust Agreement.  The Liquidation Trust Advisory Committee may, by majority vote, authorize the Liquidation Trustee to invest the corpus of the Liquidation Trust in prudent investments other than those described in section 345 of the Bankruptcy Code.

        The Liquidation Trust Advisory Committee's role with respect to issues involving Claims and Interests pursuant to Article X of the Plan will be handled only by the three (3) independent and disinterested members of the five (5) member Board.  The Liquidation Trust Advisory Committee shall have only consultation rights with respect to the decisions of the Liquidation Trustee in managing the Liquidation Trust.  In the event that the Liquidation Trust Advisory Committee disagrees with any intended actions or inaction of the Trustee, it shall have (a) the right to seek an order from the Bankruptcy Court compelling the Liquidation Trustee to act or cease acting in accordance with the order and (b) the right to remove the Liquidation Trustee if the Liquidation Trust Advisory Committee believes that the intended actions or inaction rise to the level of gross negligence or willful misconduct.  In the event of the resignation or removal of the Liquidation Trustee, the Liquidation Trust Advisory Committee shall, by majority vote or order of the Bankruptcy Court, designate a person to serve as successor Liquidation Trustee.

        The Liquidation Trust Advisory Committee shall be entitled to retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants (including without limitation claims, noticing and disbursing agents) to advise and assist the Liquidation Trust Advisory Committee in the furtherance of its duties, including those Persons that have served as employees, professionals, consultants or agents during the Chapter 11 Cases.

        The Liquidation Trust Advisory Committee may, at its discretion, require a fidelity bond from the Liquidation Trustee in such reasonable amount as may be agreed to by majority vote of the Liquidation Trust Advisory Committee.

      (f)     **Causes of Actions and Defenses.**

        Prosecution and settlement of all Causes of Action, including Avoidance Actions, shall be the sole responsibility of the Liquidation Trust, pursuant to this Plan, and the Confirmation Order; provided, however, that, under the Stand Alone Option, Avoidance Actions pertaining to the secured status of any Disputed Secured Claim shall be vested in the Reorganized Stand Alone Debtors.  Subject to the foregoing proviso, the Liquidation Trustee shall have all rights, powers, and interests of the Debtors, as debtors in possession, to pursue,

settle or abandon such Causes of Action as a representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code. All Causes of Action, including Avoidance Actions, are reserved and preserved to the extent set forth in Section 7.2 of the Plan and shall not be impacted or affected in any way by the substantive consolidation of the Estates.

### (g)     Termination of the Final DIP Agreement.

Subject to the payment in full of all amounts owed under the Final DIP Agreement or other such treatment as agreed to by the Debtors and the DIP Lenders, on the Effective Date, the obligations arising under the Final DIP Agreement shall be deemed to have terminated. All amounts due and owing, if any, under the Final DIP Agreement shall be paid in full on the Effective Date as Allowed Administrative Claims, and all liens, mortgages and security interests granted under the Final DIP Agreement shall automatically be extinguished without the need for any filings or further actions under the state or federal laws, and all authorities shall be authorized to accept the Confirmation Order and notice of Effective Date as a release or satisfaction of all such liens, mortgages and security interests.

### (h)     Dissolution of the Creditors' Committee.

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of any continuing duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention and employment of the Creditors' Committee's attorneys, accountants and other agents shall terminate, except with respect to (i) all Fee Claims, (ii) any appeals of the Confirmation Order, and (iii) any estate litigation commenced by the Creditors' Committee pending on the Effective Date not resolved by the Plan.

## ARTICLE VII.

## EFFECTS OF PLAN CONFIRMATION

### 7.1     Discharge.

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtors and all successors in interest, including, without limitation, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors and the Buyer, shall be discharged from, and the Confirmation Order shall operate as a permanent injunction against, the commencement or continuation of any action, the employment of any process, or any act to collect, recover, offset or recoup, right to sue, on account of any Claim or Interest, from or against the Debtors, their Estates and any and all successors in interest (including, without limitation, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors and the Buyer), and the Debtors', their Estates', and all successors' liability in respect thereof shall be extinguished completely, and the Debtors and all successors in interest (including, without limitation, the Liquidation Trust, the Reorganized Sale

Debtors, the Reorganized Stand Alone Debtors and the Buyer) shall be released and discharged from any Claim or Interest of a kind specified in section 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under section 501 of the Bankruptcy Code, such Claim is allowed under section 502 of the Bankruptcy Code, or the Holder of such Claim or Interest has accepted the Plan.

In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, as of the Effective Date, the Confirmation Order will be a judicial determination of a discharge of all Claims or Interests against the Debtors and a termination of all Interests and other rights of equity security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against a Debtor or its successors at any time and shall act as res judicata or collateral estoppel as against third parties, but not as to the Debtors, their Estates or any and all successors in interest.

7.2    **Retention of Causes of Action/Reservation of Rights.**

Except as expressly provided for in the Plan or the Confirmation Order, any and all Causes of Action of any kind or nature whatsoever, against third parties arising before the Effective Date, whether known or unknown and regardless of whether the existence of same has been disclosed, including, without limitation, Avoidance Actions and the right to enforce the terms and conditions of the Purchase Agreement, the Final DIP Agreement and the Exit Facility Agreement, that the Debtors may have on or before the Effective Date shall survive confirmation of the Plan and shall be reserved and preserved.

Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (i) be res judicata or the basis for estoppel of, (ii) create any other defense to the prosecution to judgment on the merits of, (iii) be a waiver of or (iv) be a relinquishment of any Causes of Action, including Avoidance Actions and the right to enforce the terms and conditions of the Purchase Agreement, Exit Facility Agreement or Final DIP Agreement, which the Debtors had on or before the Effective Date, against or with respect to any Causes of Action left unaltered or unimpaired by the Plan. On and after the Effective Date, the Liquidation Trust shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all such Causes of Action which the Debtors had on or before the Effective Date; and all of the Liquidation Trust's legal and equitable rights respecting any Causes of Action, including Avoidance Actions and the right to enforce the terms and conditions of the Purchase Agreement, Exit Facility Agreement or Final DIP Agreement after the Effective Date. For the avoidance of doubt, under the Stand Alone Option, nothing in this Section 7.2 shall be interpreted as empowering the Liquidation Trust with respect to Claims resolution responsibilities reserved for the Reorganized Stand Alone Debtors in Article X of the Plan.

7.3    **Post-Consummation Effect of Evidence of Claims or Interests.**

Outstanding notes and other instruments, including, but not limited to, all Junior Notes, Senior Notes, B-2 REMIC Guarantees, and the Resecuritization Note Put Option, and all related documentation, evidencing a Claim against any of the Debtors and all obligations of the Debtors under or in respect of any of the foregoing shall be cancelled and any rights thereunder terminated. Effective upon the Effective Date, such notes and other instruments represent only

the right to participate in the distributions, if any, contemplated by the Plan to the extent that such Claim is an Allowed Claim under the Plan.  Under the Stand Alone Option, the outstanding Old Common Stock and other instruments evidencing Interests in the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions, if any, contemplated by the Plan to the extent that such Interest is an Allowed Interest under the Plan.  Under the Stand Alone Option, the outstanding Old Common Stock and other instruments evidencing Interests in the Debtors shall be deemed cancelled without any further action of the Debtors.

Notwithstanding the previous paragraph, (i) except to the extent the Plan affects the B-2 REMIC Guarantees and the Resecuritization Note Put Option, nothing contained in this Plan shall affect the rights and obligations of the REMIC Trusts and the Resecuritization Trust under the applicable REMIC Trust and the Resecuritization Trust transaction documents or impair, amend or adversely affect the REMIC Trusts and the Resecuritization Trust and the rights of each REMIC Trustee and the Resecuritization Trustee thereunder relating to the B-Piece REMIC Certificates or the X REMIC Certificates, and (ii) the Senior Notes Indenture and Junior Notes Indenture shall continue in effect for purposes of permitting the Senior Notes Indenture Trustee and the Junior Notes Indenture Trustee to make distributions pursuant to the Plan and to perform such necessary functions with respect thereto.  No party, including but not limited to the Debtors, the Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors, shall have any obligation to recognize any transfer of the B-2 REMIC Guarantees, the Resecuritization Note, the Junior Notes, the Senior Notes or the Interests occurring after the Confirmation Date.  This provision shall not prohibit the surrender of REMIC Certificates or interests therein to the Liquidation Trust (under the Sale Option) or the Reorganized Sale Debtors (under the Stand Alone Option) in connection with the resolution of Disputed Class 4C Claims.  Termination of the Junior Notes Indenture and the Senior Notes Indenture shall not impair the rights of the Junior Notes Indenture Trustee and the Senior Notes Indenture Trustee, as the case may be, to enforce their charging liens, established in law or pursuant to the Junior Notes Indenture and the Senior Notes Indenture, against property that would otherwise be distributed pursuant to this Plan to Holders of the Junior Notes or the Senior Notes.

**7.4    Treatment of Future Claims.**

Unless otherwise explicitly provided for under the Plan, all Future Claims shall be solely the responsibility and liability of the Reorganized Sale Debtors (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) and shall not be the responsibility or liability of the Liquidation Trust or the Buyer.

**7.5    Limited Releases By Debtors.**

As of the Effective Date, the Debtors shall be deemed to have waived and released the Debtors, the Creditors' Committee, Berkshire and the Buyer, and each of those parties' officers, directors, members, ex officio members, and the Interested Party Professionals, from any and all Causes of Action of the Debtors (including claims which the Debtors otherwise have legal power to assert, compromise or settle in connection their Chapter 11 Cases) arising on

58

or before the Effective Date; provided, however, that this provision shall not operate as a waiver or release of any Causes of Action (a) in respect to any loan, advance or similar payment by the Debtors to such parties, (b) in respect of any contractual obligation owed to any of the Debtors by such parties, including, without limitation, the obligations arising under the Purchase Agreement, the Final DIP Agreement and the Exit Facility Agreement, (c) in respect to any Causes of Action based upon the willful misconduct or gross negligence of such parties, (d) to the extent based upon or attributable to such parties gaining in fact a personal profit to which such parties were not legally entitled, including, without limitation, profits made from the purchase or sale of equity securities of Oakwood which are recoverable by Oakwood or its successors pursuant to section 16(b) of the Securities Exchange Act of 1934, as amended and (e) that is an Avoidance Action; provided further, however, that this provision shall not operate as a waiver or release of any right that any party in interest may have to object to any Claim, including Fee Claims, or any Interest and shall not otherwise operate as a waiver or release of any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Debtors or any other party in interest.

### 7.6    Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date after which the discharge provisions and permanent injunctions of the Plan and the Bankruptcy Code will be given full force and effect.

### 7.7    Exculpation.

The Debtors, the Creditors' Committee, Berkshire and the Buyer, and each of those parties' officers, directors, members, ex officio members, and the Interested Party Professionals shall neither have nor incur any liability, in any form, to any Holder of a Claim or Interest, or a governmental entity on behalf of a Holder of a Claim or Interest, for any act or omission in connection with or arising out of their involvement in the filing and conduct of the Chapter 11 Cases, including the type or value of distributions, if any, reserved under the Plan for Holders of Interest, the solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for any liabilities which may arise under the statutes or regulations administered by the Securities and Exchange Commission or from any willful misconduct or gross negligence, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and applicable law.

### 7.8    Injunction.

*Confirmation of this Plan shall have the effect of, among other things, permanently enjoining all Persons who have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in any of the Debtors against any of the Debtors, with respect to any such Claim or Interest from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (a)*

59

*commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Buyer or any of their property; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Buyer or any of their property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Buyer or any of their property; (d) asserting any right of setoff, directly or indirectly, against any obligation due the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Buyer or any of their property, except as contemplated or allowed by the Plan; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (f) prosecuting or otherwise asserting any Claim or Interest, including any right, claim or cause of action, released pursuant to the Plan. Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Section shall prohibit the assertion against the Liquidation Trust of all Claims or Interests, if any, related to the Debtors, that are not otherwise discharged or released by the Plan or the Confirmation Order.*

### 7.9   Waiver of Certain Claims.

Subject to the occurrence of the Initial Distribution Date, and except as otherwise expressly provided in the Plan or Confirmation Order, all Holders of Junior Notes Claims, Senior Notes Claims and REMIC Guarantee Claims and Junior Notes Indenture Trustees, the Senior Notes Indenture Trustees, the REMIC Trustees and the Resecuritization Trustee shall all be deemed, by virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to have forever covenanted with each other to waive, release and not to assert, sue, or otherwise seek any recovery from each other or the Debtors, the Creditors' Committee, and each of those parties' officers, directors, members, ex officio members and the Interested Party Professionals, whether for tort, contract, violations of federal or state securities laws, or otherwise, based upon any claim, right or cause of action related to the construction and enforcement of the Junior Notes Indenture, the Senior Notes Indenture or any obligations under the B-2 REMIC Guarantees and the Resecuritization Note Put Option or any alleged priority or subordination in respect of distributions received on account of Junior Notes Claims, Senior Notes Claims or REMIC Guarantee Claims; provided further, however, that this provision shall not operate as a waiver or release of any right that any party in interest may have to object to any Claim, including Fee Claims, or any Interest and shall not otherwise operate as a waiver or release of any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Debtors or any other party in interest.

**7.10     Intentionally Omitted.**

**7.11     Release of Liens and Perfection of Liens.**

Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan: (a) each Holder of (i) a Secured Claim, (ii) a Claim that is purportedly secured and/or (iii) a judgment, personal property or ad valorem tax, mechanics' or similar Secured Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (1) turn over and release to the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer, as the case may be, any and all property of the Debtors or the Estates that secures or purportedly secures such Claim, or such Lien and/or Claim which shall automatically, and without further action by the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer, be deemed released; and (2) execute such documents and instruments as the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer require(s) to evidence such Claim Holder's release of such property or Lien, and if such Holder violates the Confirmation Order and this Plan by refusing to execute appropriate documents or instruments, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer may, in its or their discretion, file a copy of the Confirmation Order which shall serve to release any Claim Holder's rights in such property; and (b) on the Effective Date, all right, title and interest in such property shall revert, vest or revest in accordance with this Plan, free and clear of all Claims and Interests, including, without limitation, Liens, escrows, charges, pledges, encumbrances and/or security interests of any kind; provided, however, that the physical turnover of property described (1), above, is necessary and required only to the extent the Holder is in possession or control of the property that secures or purportedly secures such Claim.

Without limiting the automatic release provisions of the immediately preceding paragraph: (a) no distribution hereunder shall be made to or on behalf of any Claim Holder unless and until such Holder executes and delivers to the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer (respecting property to be Transferred to the Buyer under the Sale Option) such release of Liens or otherwise turns over and releases such Cash, pledge or other possessory Liens; (b) such Holder that fails to execute and deliver such release of Liens within ninety (90) days after the Effective Date shall be deemed to have no Claim against the Debtors, the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer or their assets or property in respect of such Claim and shall not participate in any distribution hereunder; and (c) the Estates, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or the Buyer (respecting property to be Transferred to the Buyer under the Sale Option), who shall be deemed to be appointed as attorney-in-fact for all such Holders of Lien Claims for the purpose of releasing such Liens, shall be authorized to use, and all authorities shall be required to accept, the Confirmation Order and the notice of Effective Date as satisfaction of all Liens.

Notwithstanding the foregoing two Paragraphs, any Lien securing a Claim of a Holder, to the extent that it is valid, perfected and unavoidable, (a) under the Stand Alone Option, remains attached to the property that secures or purportedly secures such Claim or (b) under the Sale Option, attaches to the proceeds of the Transaction (or other relevant Net Proceeds) resulting from the property that secures or purportedly secures such Claim; provided, however, that such Liens are immediately released in accordance with the foregoing two Paragraphs when the Claim of such a Holder becomes (y) a Disallowed Claim or (z) an Allowed Claim and payment on the Allowed Claim is made.

### 7.12   Insurance Preservation.

Nothing in the Plan, including any releases, shall diminish or impair the Debtors' ability to enforce any insurance policies or other policies of insurance that may cover insurance Claims or other Claims against the Debtors, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or any other Person. All such insurance policies or other policies of insurance that may cover Future Claims or other Claims against the Debtors, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors or any other Person shall remain in full force and effect. Under the Sale Option, to the extent requested by the Liquidation Trust, and otherwise appropriate under the circumstances, all policies of insurance vest in or otherwise purchased by the Reorganized Sale Debtors shall list the Liquidation Trust as co-insured.

### ARTICLE VIII.

### GENERAL PROVISIONS REGARDING TREATMENT OF CLAIMS AND

### INTERESTS AND DISTRIBUTIONS UNDER THE PLAN

### 8.1   Special Considerations for Distributions to Classes 4A, 4B and 4C.

Distributions for the benefit of beneficial holders of Senior Notes, Junior Notes, B-2 REMIC Guarantees and the Resecuritization Note shall be made to the Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the individual REMIC Trustees and the Resecuritization Trustee, as applicable. The Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the individual REMIC Trustees and the Resecuritization Trustee shall, in turn, promptly administer the distributions to the beneficial Holders of Allowed Claims in Classes 4A, 4B and 4C, as applicable, in accordance with the Plan and applicable transaction documents. None of the Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the individual REMIC Trustees and the Resecuritization Trustee shall be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court; and in the event that such parties are so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the distributions to the beneficial Holders of Senior Notes Claims, Junior Notes Claims and REMIC Guarantee Claims. Additionally, to the extent necessary to satisfy the charging liens of the Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the REMIC Trustee and the Resecuritization Trustee and satisfy the fees and expenses of the Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the REMIC Trustee and the Resecuritization Trustee, under the Stand Alone Option, at the

request of the Senior Notes Indenture Trustee, the Junior Notes Indenture Trustee, the REMIC Trustee or the Resecuritization Trustee, up to $750,000.00 in Cash will be paid to the Holders of Senior Notes Claims and Junior Notes Claims and up to $750,000.00 in Cash will be paid to the Holders of REMIC Guarantee Claims, in lieu of an identical value of New Common Stock (maintaining a Pro Rata distribution to all Allowed Claims), in order to pay the fees and expenses of such trustees.

8.2    **Disputed Claim Reserves and Stand Alone Voting Trust.**

(a)    **Establishment of Disputed Claim Reserves for Cash Distributions.**

On the Initial Distribution Date (or on any other date on which distributions for any particular Class (or group of Classes in the case of Class 4) of Claims are made pursuant to the Plan by the Liquidation Trust), and in connection with making all distributions required to be made on any such date under the Plan, the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) shall establish, for record keeping purposes only, a separate Disputed Claim reserve on account of distributions of Cash for each of the relevant Classes (or group of Classes in the case of Class 4), as necessary pursuant to the Plan.

(b)    **Establishment of the Stand Alone Voting Trust for New Common Stock and New Warrant Distribution.**

Under the Stand Alone Option, on the Effective Date, there shall be established the Stand Alone Voting Trust pursuant to the Stand Alone Voting Trust Agreement. The purpose of the Stand Alone Voting Trust shall be to hold the New Common Stock and New Warrants, if applicable, in reserve for Disputed Claims or Interests for each of the relevant Classes (or group of Classes in the case of Class 4), as necessary pursuant to the Plan. Pursuant to the Stand Alone Voting Trust Agreement, there will be three (3) independent and disinterested Persons designated as the Stand Alone Voting Trustees by the Creditors' Committee with the consent of the Debtors and Berkshire, whose approval shall not be unreasonably withheld, and identified in the Plan Supplement; provided, however, that an outstanding Fee Claim shall not render a Person ineligible to serve as a Stand Alone Voting Trustee. The Reorganized Stand Alone Debtors shall be responsible for and shall indemnify the Stand Alone Voting Trust for any reasonable costs of administration, including, without limitation, the payment of fees earned by the Stand Alone Voting Trustees under the Stand Alone Voting Trust Agreement and reasonable professional costs. Upon allowance of any Disputed Claim or Interest for which New Common Stock or New Warrants is held in the Stand Alone Voting Trust, an appropriate amount of such New Common Stock or New Warrants shall promptly be released to the Reorganized Stand Alone Debtors for distribution to the Holder of the Allowed Claim or Interest pursuant to the terms of the Plan.

(c)    **Amounts to Be Reserved.**

The Liquidation Trust and/or the Stand Alone Voting Trust shall reserve the Ratable proportion of all Cash, New Common Stock, New Warrants or other property

allocated for distribution on account of each Disputed Claim based upon the asserted amount of each such Disputed Claim, or such lesser amount as may be agreed to by the Holder of the Claim on one hand and the Liquidation Trust or the Stand Alone Voting Trust on the other hand, as applicable, or as may otherwise be determined by order of the Bankruptcy Court. All Cash or other property allocable to the relevant Class (or group of Classes in the case of Class 4) hereunder shall be distributed by the Liquidation Trust to the relevant Disputed Claim reserve on the Initial Distribution Date (or such other date on which distributions for any particular Class of Claims are made pursuant to the Plan). All New Common Stock or New Warrants allocable to the relevant Class (or group of Classes in the case of Class 4) hereunder shall be distributed by the Stand Alone Voting Trustees to the Stand Alone Voting Trust on the Initial Distribution Date (or such other date on which distributions for any particular Class of Claims are made pursuant to the Plan). To the extent that the property placed in a Disputed Claim reserve consists of Cash, that Cash shall be deposited in an interest-bearing account at a qualified institution, consistent with the Liquidation Trust Agreement.

     (d)    **Distribution.**

     Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed on the first Quarterly Distribution Date after the Claim is Allowed. Distributions shall be made only to the extent of the aggregate distributions that the Holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Reserves). No interest shall accrue or be paid on the unpaid amount of any distribution paid on a Quarterly Distribution Date. Distributions to each Holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan governing the Class (or group of Classes in the case of Class 4) of Claims in which the Claim is classified.

     (e)    **Termination of Disputed Claim Reserve or Stand Alone Voting Trust.**

     Each Disputed Claim reserve shall be closed and extinguished by the Liquidation Trustee when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made. Upon closure of a Disputed Claim reserve, all Cash and other property held in that Disputed Claim reserve shall revest in the Liquidation Trust and such Cash and property shall be Ratably distributed to the other Holders of Allowed Claims in the Class (or group of Classes) in respect of which such Disputed Claims reserve was created. The Stand Alone Voting Trust shall be closed and extinguished by the Stand Alone Voting Trustees when all distributions of New Common Stock and New Warrants required to be made under the Plan have been made.

     (f)    **Limitation of Liability for Funding the Disputed Claim Reserve.**

     Except as expressly set forth in the Plan, the Liquidation Trust shall have no duty to fund the Disputed Reserves.

**8.3    Transmittal of Distributions and Notices.**

Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Person's Distribution Address.  Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

A Holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Liquidation Trustee and prior to the Effective Date, the Debtors, of that address in writing.  Any change of Distribution Address must be provided to the Liquidation Trustee or Debtors, as applicable, by registered mail in order to be effective.  Such notification shall be effective only upon receipt.

Distributions and Notices to the Holders of REMIC Guarantee Claims shall be delivered by regular mail, postage prepaid, in an envelope addressed to JPMorgan Chase Bank, 4 New York Plaza, 15th Floor, New York, NY 10004, Attention: James R. Lewis, Esq., Tel: (212) 623-6759, Fax: (212) 623-6165.

**8.4    Unclaimed Distributions.**

Unclaimed Property shall be forfeited by the Holder entitled thereto, whereupon all rights, titles and interests in and to the Unclaimed Property shall immediately and irrevocably revest in the Estate of the Reorganized Debtors or the Liquidation Trust, as appropriate, the Holder of the Allowed Claim previously entitled to such Unclaimed Property shall cease to be entitled thereto, and such Unclaimed Property shall be Ratably distributed to the other Holders of Allowed Claims in the same Class (or group of Classes).  A Claim and the Unclaimed Property distributed on account of such Claim shall not escheat to any federal, state or local government or other entity by reason of the failure of its Holder to claim a distribution in respect of such Claim.

**8.5    Setoffs.**

The Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) may, but shall not be required to, setoff against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against such claimant.

**8.6    Withholding Taxes and Expenses of Distribution.**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Holders of Claims or Interests shall be required to provide any information necessary to effect the

65

withholding of such taxes.  In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.

**8.7    Allocation of Plan Distributions between Principal and Interest.**

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**8.8    Disputed Identity of Holder.**

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Liquidation Trustee may, in lieu of making such distribution to such Person, make such distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court order or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for more than ninety (90) days after the relevant Distribution Date, the property which is the subject of the dispute shall irrevocably become Unclaimed Property.

**8.9    Transfers of Claims.**

As of the close of business on the Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the Holders of record of any of the Claims or Interests.  No party, including but not limited to the Debtors, the Liquidation Trust (under the Sale Option) and the Reorganized Stand Alone Debtors (under the Stand Alone Option), shall have any obligation to recognize any transfer of the Claims or Interests occurring after the Record Date unless notice of the transfer of such Claim or Interest, in form and substance satisfactory to the Debtors, the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option), as appropriate, shall have been received by the Debtors or the Liquidation Trustee, as appropriate, prior to the Record Date.  Subject to the immediately preceding sentence, only those Holders of record stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

### 8.10    Method of Cash Distributions.

Any Cash payment to be made by the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) pursuant to the Plan may be made, at the sole discretion of the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option), by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

### 8.11    *De Minimis* Distributions.

No Cash payment in an amount less than fifty dollars ($50.00) shall be made by the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) to any Holder of a Claim or Interest unless a request therefor is made in writing to the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) prior to one (1) year after the Effective Date. Cash that otherwise would be payable under the Plan but for this Section 8.11 shall be reserved and distributed with future distributions, if any, that, collectively, exceed fifty dollars ($50.00). Distributions of cash that otherwise would be payable under the Plan to a Holder but for this Section 9.14 that never, collectively, exceed fifty dollars ($50.00) as described in the foregoing sentence and for which a request is not made within the one (1) year deadline shall become Unclaimed Property.

### 8.12    No Distribution in Excess of Allowed Amount of Claim.

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the allowed amount of such Claim.

### 8.13    Exemption from Certain Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest; or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Debtors or the Estates, including the Purchase Agreement, any deeds, releases, bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for under section 1146(c) of the Bankruptcy Code.

## ARTICLE IX.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Under the Sale Option, on the Effective Date, and to the extent permitted by applicable law, (a) any and all executory contracts and unexpired leases of any Debtor that are listed on Sections 1.09(a) or 1.09(b) of Sellers' Disclosure Schedule as being assumed and assigned to the Buyer pursuant to the Purchase Agreement shall be deemed assumed and assigned to the Buyer pursuant to the Plan in accordance with the Purchase Agreement and (b) (i) such contracts or leases as are listed on the Executory Contract Schedule filed by the Debtors (which may be modified by the Liquidation Trust up to sixty (60) days after the Effective Date), (ii) the Servicing Agreements, and (iii) any and all executory contracts or unexpired leases assumed prior to entry of the Confirmation Order shall be deemed assumed pursuant to the provisions of section 365 and section 1123 of the Bankruptcy Code as of the Effective Date. All other executory contracts and unexpired leases of each of the Debtors shall be deemed rejected in accordance with the provisions of section 365 and section 1123 of the Bankruptcy Code; provided, however, that any and all executory contracts or unexpired leases which are the subject of separate motions filed pursuant to section 365 of the Bankruptcy Code by the Debtors prior to the commencement of the Confirmation Hearing shall not be deemed rejected and shall be treated as so ordered by the Bankruptcy Court in an order entered pursuant to the motion. Subject to the aforementioned proviso, the Confirmation Order shall constitute an order of the Court approving all such assumption and assignments and rejections pursuant to section 365 of the Bankruptcy Code subject to the occurrence of the Effective Date.

Under the Stand Alone Option, on the Effective Date, and to the extent permitted by applicable law, (a) such contracts or leases as are listed on the Executory Contract Schedule filed by the Debtors, which may be modified by the Reorganized Stand Alone Debtors up to sixty (60) days after the Effective Date, and (b) any and all executory contracts or unexpired leases rejected prior to entry of the Confirmation Order shall be rejected pursuant to the provisions of section 365 and section 1123 of the Bankruptcy Code as of the Effective Date, if not already rejected as of a prior date. All other executory contracts and unexpired leases of each of the Debtors shall be deemed assumed in accordance with the provisions of section 365 and section 1123 of the Bankruptcy Code as of the Effective Date; provided, however, that any and all executory contracts or unexpired leases which are the subject of separate motions filed pursuant to section 365 of the Bankruptcy Code by the Debtors prior to the commencement of the Confirmation Hearing shall not be deemed assumed and shall be treated as so ordered by the Bankruptcy Court in an order entered pursuant to the motion. Subject to the aforementioned proviso, the Confirmation Order shall constitute an order of the Court approving all such assumption and assignments and rejections pursuant to section 365 of the Bankruptcy Code. Contracts or leases entered into after the Petition Date will be performed by the Reorganized Stand Alone Debtors in the ordinary course of their businesses.

68

**9.2    Bar Date for Rejection Damages.**

If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4E; provided, however, that the Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Liquidation Trust, their successors or properties, unless a proof of such Claim is filed and served on the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) and the Claims Agent within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease which may include, if applicable, the Confirmation Order.

**9.3    Procedures for the Determination of Cure Amounts.**

Unless otherwise noted in the Executory Contract Schedule or the Purchase Agreement, or any schedule thereto, the cure amount pursuant to section 365(b)(1) of the Bankruptcy Code for any executory contracts or unexpired leases shall be $0.00. Any dispute regarding (i) the nature or amount of any payment necessary to satisfy the listed cure amount under the contract or lease to be assumed or assumed and assigned, (ii) the ability of the Debtors, the Buyer or any other assignee, as the case may be, to provide "adequate assurance of future performance," within the meaning of section 365 of the Bankruptcy Code, under the contract or lease to be assumed or assumed and assigned or (iii) any other matter pertaining to assumption or assumption and assignment under section 365 of the Bankruptcy Code shall be forever barred and shall not be enforceable against the Debtors, the Liquidation Trust, the Reorganized Sale Debtor, the Reorganized Stand Alone Debtors, their successors or properties, unless a motion or objection, as appropriate, is filed and served on the Debtors (prior to the Effective Date), the Liquidation Trust and the Buyer (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) within thirty (30) days after the date of notice of proposed assumption or assumption and assignment, or such later date as allowed by the Bankruptcy Court. The Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option), and not the Buyer, shall be responsible for paying any cure costs associated with the assumption and assignment of any executory contract or unexpired lease assumed and assigned to the Buyer, whether pursuant to the Plan or pursuant to any other order of the Bankruptcy Court. The Liquidation Trust (under the Sale Option) and the Reorganized Stand Alone Debtors (under the Stand Alone Option) shall have the right to dispute any asserted cure amounts, including any amounts noted in the Executory Contract Schedule or the Purchase Agreement.

## ARTICLE X.

## DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS

### 10.1    Objections to Claims and Interests.

The Claims/Interests Objection Deadline shall be six (6) months after the Effective Date; provided, however, that the last day for filing Avoidance Actions against a Holder of a Claim or Interest shall be November 15, 2004. Notwithstanding any of the foregoing, the Reorganized Stand Alone Debtors or the Liquidation Trustee, as appropriate, may request from the Bankruptcy Court an extension of the Claims/Interests Objection Deadline, which such extended date shall become the new Claims/Interests Objection Deadline.

The Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) have the exclusive responsibility for reviewing and objecting to the allowance of any Claim or Interest filed in the Chapter 11 Cases. The Liquidation Trust or the Reorganized Stand Alone Debtors, as appropriate, shall have until the Claims/Interests Objection Deadline to file objections to the Claims and Interest in the Chapter 11 Cases. All objections shall be litigated to a Final Order; provided, however, that the Liquidation Trust or the Reorganized Stand Alone Debtors, as the case may be, may compromise and settle any objections to Claims or Interests, subject to the provisions of this Article X without further order of the Bankruptcy Court; and further provided, however, that distributions may be made to a Holder of a Claim or Interest prior to the expiration of the Claims/Interests Objection Deadline if the Liquidation Trustee or the Reorganized Stand Alone Debtors, as appropriate, reasonably believes that no basis exists for objection to such Holder's Claim or Interest. Notwithstanding the foregoing, nothing in this Plan shall be interpreted to operate as a waiver or release of (x) any right that any party in interest may have to object to (a) any Claim or Interest through the Effective Date or (b) any Fee Claim after the Effective Date; or (y) any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Debtors or any other party in interest.

Objections to Claims or Interests shall not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense because of the confirmation of the Plan and all such rights are expressly preserved and reserved by the Plan for the Debtors, their Estates, the Liquidation Trust (under the Sale Option) and the Reorganized Stand Alone Debtors (under the Stand Alone Option). Additionally, the rights of the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to section 502(d) of the Bankruptcy Code are hereby preserved until sixty (60) days after the entry of a Final Order against a Holder of such Claim.

### 10.2    Estimation of Claims or Interests.

Through the Claims/Interests Objection Deadline, the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) may request that the Bankruptcy Court enter an Estimation Order fixing the value of, pursuant to

section 502(c) of the Bankruptcy Code, any Disputed Claim or Interest, regardless of whether a Debtor has previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim or Interest at any time during litigation concerning any objection to any Disputed Claim or Interest, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court enters an Estimation Order estimating any Disputed Claim or Interest, the amount of such estimation will constitute either the allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Liquidation Trust or the Reorganized Stand Alone Debtors (as appropriate) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim or Interest. All of the aforementioned Claims and Interests objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims or Interests may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

### 10.3    Amendments to Claims or Interests.

After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the Holder of such Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount or priority.

### 10.4    Authority To Settle Disputed Claims or Interests.

From and after the Effective Date, the Liquidation Trust (under the Sale Option) or the Reorganized Stand Alone Debtors (under the Stand Alone Option) shall be authorized with respect to those Claims or Interests which are not allowed by Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims with a Disputed Amount in excess of $25,000.00, upon Bankruptcy Court approval of such settlement. Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, the Liquidation Trust or the Reorganized Stand Alone Debtors, as appropriate, may settle or compromise any Disputed Claim with a Disputed Amount of $25,000.00 or less without approval of the Bankruptcy Court. This provision shall not prohibit the surrender of REMIC Certificates or interests therein to the Liquidation Trust (under the Sale Option) or the Reorganized Sale Debtors (under the Stand Alone Option) in connection with the resolution of Disputed Class 4C Claims.

### 10.5    No Recourse.

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other Holders of Allowed Claims in the relevant Class, no Claim or Interest Holder shall have recourse to the Debtors, the Liquidation Trust, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, the Creditors' Committee or

any member or ex officio member thereof, any of the Interested Party Professionals, the Holder of any other Claim or Interest, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim or Interest under section 502(j) of the Bankruptcy Code. THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS OR INTERESTS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS OR INTERESTS.

### ARTICLE XL

### ADMINISTRATIVE PROVISIONS

**11.1    Retention of Jurisdiction.**

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent legally permissible, including, without limitation, for the following purposes:

(a)    to determine the allowance, classification, or priority of Claims upon objection by the Debtors, the Creditors' Committee, the Liquidation Trust or the Liquidation Trustee, or any other party in interest entitled to file an objection, and the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances;

(b)    to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person;

(c)    to protect the property of the Estates, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors, Liquidation Trust or the Buyer as the case may be, including Litigation Claims, from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens, security interests or encumbrances on any property of The Debtors, the Estates, the Liquidation Trust, the Reorganized Sale Debtors or the Reorganized Stand Alone Debtors;

(d)    to determine any and all applications for allowance of Fee Claims;

72

(e)    to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of Claims, including both fees and expenses, entitled to priority under section 507(a) of the Bankruptcy Code;

(f)    to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder, including any and all disputes regarding the Purchase Agreement, as provided in section 10.13 of the Purchase Agreement;

(g)    to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Article IX of the Plan;

(h)    except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

(i)    to enter a Final Order closing the Chapter 11 Cases;

(j)    to modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)    to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(l)    to determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(m)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)    to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)    to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(p)    to authorize sales of assets as necessary or desirable and resolve objections, if any, to such sales;

(q)    to hear and resolve Litigation Claims;

(r)    to resolve any disputes concerning any release, discharge, injunction, exculpation or other waivers and protections provided in the Plan;

(s)    to approve, if necessary, any distributions, or objections thereto, under the Plan;

(t)    to approve any Claims settlement entered into or offset exercised by the Liquidation Trust and the Liquidation Trustee;

(u)    to resolve any dispute or matter arising under or in connection with the Liquidation Trust;

(v)    to oversee any dispute concerning improper or excessive draws under letters of credit issued for the account of the Debtors; and

(w)    to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in this Article XI, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter. Notwithstanding any provisions of the Plan, the Bankruptcy Court shall have concurrent but not exclusive jurisdiction over the prosecution of Causes of Actions, including but not limited to Avoidance Actions.

**11.2    Intentionally Omitted.**

**11.3    Amendments.**

    **(a)    Preconfirmation Amendment.**

The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order, provided that (i) the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements and (ii) the Creditors' Committee, Berkshire and the Buyer (under the Sale Option) consent to such modifications, such consent not being unreasonably withheld.

     (b)    **Postconfirmation/Preconsummation Amendment Not Requiring Resolicitation.**

After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; (ii) the Creditors' Committee, Berkshire and the Buyer (under the Sale Option) consent, such consent not being unreasonably withheld; and (iii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Allowed Claims or Interests under the Plan. Any waiver under Section 5.3 hereof shall not be considered to be a modification of the Plan.

     (c)    **Postconfirmation/Preconsummation Amendment Requiring Resolicitation.**

After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Interests, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; (iv) the Debtors comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified; and (v) the Creditors' Committee, Berkshire and the Buyer (under the Sale Option), such consent not being unreasonably withheld.

**11.4    Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision and make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.5    Successors and Assigns.**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**11.6    Effectuating Documents and Further Transactions.**

Each Debtor, each Reorganized Sale Debtor, each Reorganized Stand Alone Debtor, and the Liquidation Trust shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

**11.7    Plan Supplement.**

The Plan Supplement comprised of, among other things, the forms of the documents related to the Amended Certificates of Incorporation, Amended Bylaws, the Liquidation Trust Agreement, the Stand Alone Voting Trust Agreement, the Executory Contract Schedule, the Exit Facility Agreement and, to the extent necessary to implement the Plan, proposed amendments to the Reorganized Sale Debtors' organizational documents, to the extent not filed simultaneously with the Plan and Disclosure Statement, shall be filed with the Bankruptcy Court at least five (5) Business Days prior to the deadline established for voting on this Plan. Upon its filing, the Plan Supplement may be inspected in the offices of the Clerk of the Bankruptcy Court during normal business hours. A copy of the Plan Supplement shall be mailed to the Creditors' Committee, and any Holder of a Claim or Interest that makes a specific written request for such Plan Supplement to the Debtors. The documents contained in the Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**11.8    Confirmation Order and Plan Control.**

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between or among any Debtors, or any of them and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan, the Disclosure Statement and any such agreements; provided, however, that the Purchase Agreement is not controlled by the Plan, the Disclosure Statement or anything contained in the Plan Supplement.

**11.9    Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code as Administrative Fees under the Plan, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash on the Effective Date, or as soon as reasonably practicable thereafter, and neither the Debtors, their Estates, the Reorganized Sale Debtors, the Reorganized Stand Alone Debtors nor the Liquidation Trust shall thereafter be liable for the payment of additional fees under section 1930 of title 28 of the United States Code other than with respect to the consolidated Chapter 11 Case which will continue after the Effective Date.

**11.10   Withdrawal of Plan.**

The Debtors reserve the right, subject to the Purchase Agreement, in the exercise of their reasonable discretion, to revoke and withdraw or to modify the Plan at any time prior to

the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtors revoke or withdraw the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtors or the Creditors' Committee or to prejudice in any manner the rights of the Debtors, the Creditors' Committee or any Person in any further proceeding involving the Debtors or the Creditors' Committee and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

### 11.11  Payment Dates.

Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day or as soon thereafter as practicable.

### 11.12  Notices.

Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be hand delivered or sent by a reputable overnight courier service, and shall be deemed given when received at the following addresses whether hand delivered or sent by overnight courier service:

**If to the Debtors:**

**MORRIS, NICHOLS, ARSHT & TUNNELL**
Robert J. Dehney, Esq.
Derek C. Abbott, Esq.
Daniel B. Butz, Esq.
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Facsimile: (302) 658-3989

- and -

**RAYBURN COOPER & DURHAM, P.A.**
C. Richard Rayburn, Jr. , Esq.
Albert F. Durham, Esq.
Patricia B. Edmondson, Esq.
1200 Carillon, 227 West Trade Street
Charlotte, North Carolina 28202-1675
Facsimile: (704) 377-1897

**If to the Creditors' Committee:**

**MCCARTER & ENGLISH, LLP**
William F. Taylor, Jr. , Esq.
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Facsimile: (302) 984-6399


- and -


**KING & SPALDING LLP**
Robert J. Stark, Esq.
1185 Avenue of the Americas
New York, New York 10036
Facsimile: (212) 556-2222

77

**If to the Buyer or Berkshire:**

**CLAYTON HOMES, INC.**
Kevin Clayton
500 Alcoa Trail
P.O. Box 9790
Maryville, TN  37804
Facsimile:  (865) 380-3750

-and-

| | |
|---|---|
| **MUNGER, TOLLES &** | **YOUNG CONAWAY** |
| **OLSON LLP** | **STARGATT & TAYLOR, LLP** |
| Thomas Walper, Esq. | Michael R. Nestor, Esq. |
| 355 S. Grand Avenue | The Brandywine Building |
| Los Angeles, CA  90071 | 1000 West Street, 17th Floor |
| Facsimile: (213) 687-3702 | Wilmington, DE 19801 |
| | Facsimile: (302) 571-1253 |

          Notwithstanding anything to the contrary provided herein, all notices concerning this Plan shall be served upon the entities prescribed and in the manner prescribed under the Bankruptcy Code and the Bankruptcy Rules.

**11.13  No Admissions.**

          Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

78

## ARTICLE XII.

### CONFIRMATION REQUEST

The Debtors request confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

Dated: February 6, 2004

**NEW DIMENSION HOMES, INC.**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President

**DREAM STREET COMPANY, LLC**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President

**OAKWOOD SHARED SERVICES, LLC**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President

**HBOS MANUFACTURING, LP**
By: Oakwood Mobile Homes, Inc., General Partner

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President

**OAKWOOD MHD4, LLC**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President


**OAKWOOD ACCEPTANCE
CORPORATION, LLC**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President


**OAKWOOD HOMES CORPORATION**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Executive Vice President


**OAKWOOD MOBILE HOMES, INC.**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President


**SUBURBAN HOME SALES, INC.**

By: /s/ Robert A. Smith
      Name: Robert A. Smith
      Title:  Vice President

**FSI FINANCIAL SERVICES, INC.**

By: /s/ Robert A. Smith
     Name: Robert A. Smith
     Title:  Vice President


**HOME SERVICE CONTRACT, INC.**

By: /s/ Robert A. Smith
     Name: Robert A. Smith
     Title:  Vice President


**TRI-STATE INSURANCE AGENCY, INC.**

By: /s/ Robert A. Smith
     Name: Robert A. Smith
     Title:  Vice President


**GOLDEN WEST LEASING, LLC**

By: /s/ Randelle R.. Smith
     Name: Randelle R. Smith
     Title:  Vice President


**CREST CAPITAL, LLC**

By: /s/ Randelle R. Smith
     Name: Randelle R. Smith
     Title:  Vice President

**PREFERRED HOUSING SERVICES, LP**
By: Oakwood Mobile Homes, Inc., General
    Partner


By: /s/ Robert A. Smith
    Name: Robert A. Smith
    Title:  Vice President


- and -


**MORRIS, NICHOLS, ARSHT & TUNNELL**


/s/ Daniel B. Butz
Robert J. Dehney (No. 3578)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

- and -

RAYBURN COOPER & DURHAM, P.A.
C. Richard Rayburn, Jr.
Albert F. Durham
Patricia B. Edmondson
1200 Carillon, 227 West Trade Street
Charlotte, North Carolina 28202-1675
(704) 334-0891

82