**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OAKWOOD HOMES CORP. *et al.*, | Bankr. Case No. 02-13396 (PJW) |
| Debtors | Jointly Administered |
| JPMORGAN CHASE BANK, TRUSTEE, Appellant, - against - U.S. BANK NATIONAL ASSOCIATION, Appellee | Dist. Ct. Case Nos. 04-CV-951 (JJF) |

**LIMITED OPPOSITION AND ALTERNATIVE PROPOSALS OF JPMORGAN CHASE BANK IN RESPONSE TO THE OHC LIQUIDATION TRUST'S MOTION FOR PARTIAL RELIEF FROM THE COURT'S SEPTEMBER 28, 2004 ORDER GRANTING APPELLANT'S MOTION FOR STAY PENDING APPEAL**

**Preliminary Statement**

On September 28, 2004, this Court issued an order (the "Stay Order"), granting the motion of JPMorgan Chase Bank ("JPMorgan") -- in its capacity as successor trustee on behalf of the appealing holders of certain Class B-2 Certificates (the "B-2 Holders") issued by certain non-debtor "REMIC Trusts" formed by debtor Oakwood Homes Corporation ("OHC") -- for an order granting a stay without bond. The Stay Order extended the Court's prior temporary order, which stayed (also without bond) the bankruptcy court's Reserve Order (the order appealed in the above-captioned "Reserve Appeal") as well as Plan distributions to unsecured creditors to the extent necessary to preserve an amount equal to the disputed portions of the claims asserted in the Amended Proofs of Claim filed by JPMorgan on behalf of the B-2 Holders (the "Limited Guarantee

Claims"), an amount determined to be $61,017,425 (the "Reserve Amount"). The Stay Order is in effect until final resolution of the merits of the Reserve Appeal In the wake of this Court's February 2005 memorandum and order affirming the bankruptcy court's May 6, 2004 "Claims Orders," JPMorgan and the B-2 Holders have further appealed the Claims Orders in the Third Circuit Court of Appeals (the "Claims Appeals"). The Reserve Appeal is pending before this Court

On August 5, 2005, the OHC Liquidation Trustee (the "Trustee") filed a motion (the "Motion") seeking to reduce the Reserve Amount, based on the fact that JPMorgan and the B-2 Holders, in pursuing in their further Claims Appeals, have not sought to recover post-petition interest on their "Limited Guarantee Claims." While JPMorgan and the B-2 Holders acknowledge that some reduction of the Reserve Amount is appropriate, given that the bankruptcy court's denial of the post-petition interest component of the Limited Guarantee Claims is no longer disputed, they respectfully contend that the Trustee's proposed mechanic for addressing the issue fails to provide sufficient protection for JPMorgan and the B-2 Holders under the circumstances presented here

As the Court is aware, the reason the Reserve Appeal and the Stay Order are necessary in the first place is that U.S. Bank National Association ("US Bank") refuses to recognize that JPMorgan and the B-2 Holders are entitled to the treatment afforded under OHC's plan of reorganization (the "Plan") to unsecured creditors with Disputed Claims Indeed, the reason the parties could not reach accord with respect to a stipulated proposal for addressing the issue raised in the Motion is that US Bank, while maintaining that the Reserve Amount implemented by the Stay Order should operate under the same mechanic applied to the Disputed Claims of other unsecured creditors with respect to the holdback of a lesser reserve amount, refuses to acknowledge the rights of JPMorgan and the B-2 Holders under the Plan. Further, it appears that US Bank intends to continue, as it has in the past, to do everything possible to convince the Court to lift the Stay Order,

and then argue that the appeals of JPMorgan and the B-2 Holders are moot and that US Bank is entitled to damages at 7 74% interest on the Reserve Amount

While JPMorgan and the B-2 Holders are amenable to an order that reduces the present Reserve Amount to account for the fact that a lesser amount is now in dispute, they respectfully maintain that such an order must account for the reality of the circumstances that obtain here, in which the right of JPMorgan and the B-2 Holders to a Disputed Claims Reserve on account of their Disputed Claims, on the terms provided in the Plan, continues to be attacked by US Bank and, accordingly, JPMorgan and the B-2 Holders are situated differently from other unsecured creditors with Disputed Claims with respect to the protections afforded by the Plan to those creditors Put another way, while the amount in dispute is now less than it was, the risks faced by JPMorgan and the B-2 Holders with respect to their Disputed Claims are as great as ever they were, given US Bank's staunch refusal to recognize that JPMorgan and the B-2 Holders are entitled to the same protections the Plan affords to other Holders of Disputed Claims; its challenges to the Stay Order; and its insistence on preserving the purported "right" to pursue a damages claim against JPMorgan in connection with the Reserve Amount

In sum, in an environment in which the risks faced by JPMorgan and the B-2 Holders are far greater than those faced by other unsecured creditors with Disputed Claims, whose rights under the Plan are recognized, it would be inequitable to subject the Disputed Claims of JPMorgan and the B-2 Holders to the lesser degree of protection proposed by the Trustee in the Motion Accordingly, JPMorgan and the B-2 Holders propose the following two (2) alternative resolutions, with the Court's order expressly stating in either case that the Stay Order otherwise shall remain in full force and effect and shall not be subject to alteration, amendment, or countervailing orders absent an express order from this Court:

1 A new fixed Reserve Amount of $36,704,574, based on the following facts and circumstances: The aggregate principal portion of the Limited

Guarantee Claims asserted by JPMorgan on behalf of the B-2 Holders is $98,746,316[1] The bankruptcy court's Claims Orders have reduced that aggregate amount to $25,337,168, leaving $73,409,148 in dispute (the "Disputed Amount") While the Reserve Amount may be reduced to account for the fact that post-petition interest is no longer in dispute, the new amount should be no less than 50% of this Disputed Amount, or $36,704,574, because of the increased risks faced by JPMorgan and the B-2 Holders, as compared to those faced by other Holders of Disputed Claims

2 The mechanic described in paragraph 20 of the Trustee's Motion; provided, however, that (a) the Trustee provides proof of the percentage of distributions made to date and confirms that the Trustee has or will create a Disputed Claims Reserve for JPMorgan and the B-2 Holders based on the percentage of distributions made to date; (b) the Court's order expressly states that (i) the Disputed Claims of JPMorgan and the B-2 Holders shall be treated in exactly the same manner that the Plan provides for Disputed Claims and shall accordingly be entitled to all rights, privileges, and protections that the Plan affords to Disputed Claims; (ii) the Disputed Claims of JPMorgan and the B-2 Holders are immediately entitled to a *pro rata* share of each distribution (past, current, and future) made by the OHC Liquidation Trust, along with the Allowed Claims of JPMorgan and the B-2 Holders; (iii) the OHC Liquidation Trust shall place each distribution in respect of the Disputed Claims of JPMorgan and the B-2 Holders in a Disputed Claim Reserve; (iv) the Disputed Claims of JPMorgan and the B-2 Holders shall at all times have reserved for it an aggregate percentage recovery that is equivalent to the aggregate percentage recovery paid to all Allowed Claims and paid into all other Disputed Claims Reserves; (v) the OHC Liquidation Trust shall establish the required Disputed Claims Reserve in respect of the Disputed Claims of JPMorgan and the B-2 Holders and make each distribution into such reserve as is required to comply herewith; and (vi) if the Trustee fails to comply with the foregoing, then no further distributions shall be made to any unsecured creditors from the OHC Liquidation Trust

JPMorgan and the B-2 Holders also request the opportunity to work with the Trustee in drafting a proposed order that reflects the alternative that the Court deems to

---

[1] JPMorgan and the B-2 Holders recognize that the parties stipulated that the projected principal shortfalls would be $97,239,023 This stipulation was based, however, on a projection that the 1997-B REMIC Trust would generate cash flow that would pay $1,507,293 of the principal, which did not occur Accordingly, the unpaid principal totals $98,746,316

be most appropriate, as the Trustee's proposed order requires further clarifying language. In further support of this position, JPMorgan and the B-2 Holders state as follows:

**Pertinent Background**

1. On or about March 31, 2004, the bankruptcy court confirmed OHC's Plan. The Plan provides that unsecured creditors in Class 4 (which includes JPMorgan on behalf of the B-2 Holders) shall recover their *pro rata* share of assets of the OHC Liquidation Trust. Plan, Section 4.18 & Ex. C.[2] The *pro rata* recovery for unsecured creditors was originally estimated to be 37.4%. Plan, Section 4.18. Upon information and belief, the Trustee has indicated that recovery is currently estimated to be 50% or more.

2. Distributions are to be made "subject to the establishment of appropriate reserves for Disputed Claims." Plan, Section 4.18. The Plan defines a "Disputed Claim" to include that portion of a Claim that is not an "Allowed Claim" or "Disallowed Claim" and to which an objection has been timely filed. Plan, Section 1.1(74). An Allowed Claim includes a Claim for which a proof of claim has been timely filed and allowed by a Final Order. Plan, Section 1.1(27). In relevant part, a Final Order is an order of the bankruptcy court as to which (i) the time to appeal has expired and no timely appeal is pending or (ii) any appeal taken has been resolved by the highest court to which the order was appealed. Plan, Section 1.1(93). A Disallowed Claim includes a Claim or any portion thereof that has been disallowed by a Final Order. Plan, Section 1.1(70).

3. The Limited Guarantee Claims asserted by JPMorgan on behalf of the B-2 Holders are Disputed Claims within the meaning of the Plan because they (i) have been objected to and (ii) have not been allowed or disallowed by a Final Order. The Limited Guarantee Claims will continue to be Disputed Claims until the appeals of JPMorgan and

---

[2] A copy of the Plan is attached to the Trustee's Motion at Exhibit C.

the B-2 Holders are resolved by the highest court to which the Claims Orders are appealed.

4. The Plan requires the OHC Liquidation Trust to establish a separate Disputed Claims Reserve on account of distributions of cash "as necessary pursuant to the Plan." Plan, Section 8.2(a). Section 8.2(c) governs the establishment of a Disputed Claims Reserve. It provides, in relevant part:

> The Liquidation Trust and/or the Stand Alone Voting Trust ***shall reserve the Ratable proportion of all Cash***, New Common Stock, New Warrants or other property ***allocated for distribution on account of each Disputed Claim based upon the asserted amount of each such Disputed Claim***, or such lesser amount as may be agreed to by the Holder of the Claim on the one hand and the Liquidation Trust or the Stand Alone Voting Trust on the other hand, as applicable, or as may otherwise be determined by order of the Bankruptcy Court.

(Emphasis supplied). Nowhere does the Plan require the posting of a bond as a pre-condition to the establishment of a Disputed Claims Reserve; nor does the Plan provide for damages in connection with Disputed Claims Reserves.

5. Section 8.2(c) further provides that cash distributed into a Disputed Claims Reserve shall be "deposited in an interest-bearing account at a qualified institution, consistent with the Liquidation Trust Agreement." Distributions to a Holder of a Disputed Claim that becomes an Allowed Claim shall be made only to the extent of the distributions the Holder would have received as of the Effective Date. Plan, Section 8.2(d). Once all distributions have been made from a Disputed Claims Reserve, the reserve is to be closed, at which time all cash shall revest in, and become the property of, the Liquidation Trust. Plan, Section 8.2(e). Pursuant to Plan Section 8.4, the Liquidation Trust shall distribute its remaining assets ratably to the other Holders of the Allowed Claims in the same class or group of classes.

6. Pursuant to the bankruptcy court's July 7, 2004 Reserve Order, which is challenged by JPMorgan and the B-2 Holders in the instant Reserve Appeal, distributions under the Plan were scheduled to be made on August 1, 2004, unless JPMorgan posted on

July 30, 2004 a bond in the amount of one year's interest at 7.74% on the original Reserve Amount of $61,017,425. The Plan itself contains no bond requirement.

7. On July 9, 2004, JPMorgan filed in this Court an emergency motion for a stay pending appeal without bond. Although it initially denied JPMorgan's request, the Court granted JPMorgan's alternative request for a temporary stay without bond, to permit JPMorgan to seek relief in the Third Circuit Court of Appeals. Thereafter, the Court extended the temporary stay from time to time, at the request of JPMorgan. After the Third Circuit dismissed JPMorgan's stay motion for lack of jurisdiction, the stay proceedings culminated in this Court's Stay Order of September 28, 2004, extending the temporary stay without bond pending final resolution of the Reserve Appeal.

8. US Bank has contested and continues to contest, not only the right of JPMorgan and the B-2 Holders to the full amount of their Limited Guarantee Claims, but also their right to have their Disputed Claims treated as other Disputed Claims are treated by the negotiated terms of the confirmed Plan. Since the Court issued the Stay Order, US Bank has filed various documents with the Court that challenge the Stay Order, and has insisted on preserving its purported "right" to seek damages from JPMorgan in connection with the Reserve Amount.

**Argument**

9. Unless a different amount is agreed to by the OHC Liquidation Trust and a Disputed Claim Holder, or ordered by the court, the OHC Liquidation Trust is required to reserve the "ratable proportion of all Cash . . . or other property allocated for distribution on account" of the Limited Guarantee Claims based on the face amount of the Amended Proofs of Claim filed by JPMorgan on behalf of the B-2 Holders. Plan, Section 8.2(c). Based on the maximum allowed amount of the principal portion of the Limited Guarantee Claims if JPMorgan and the B-2 Holders prevail on their Claims Appeals, Section 8(c) of the Plan expressly requires a Disputed Claims Reserve of $36,704,574 for the Limited

Guarantee Claims, based on the current estimated 50% recovery under the Plan for unsecured creditors. Plan, Section 4.18 & Ex. C

10. This Disputed Claims Reserve Amount is calculated based upon the following facts and circumstances:

- The current Reserve Amount of $61,017,425 (which the Trustee's Motion seeks to reduce) was determined based upon two components of the Limited Guarantee Claims asserted by JPMorgan on behalf of the B-2 Holders -- the post-petition interest shortfalls component and the principal shortfalls component

- In pursuing their further Claims Appeals in the Third Circuit, JPMorgan and the B-2 Holders challenge the bankruptcy court's Claims Orders only to the extent that the Claims Orders reduced the allowed amount of the principal shortfalls component of the Limited Guaranteed Claims. In other words, the issue of post-petition interest shortfalls is no longer in dispute

- The aggregate principal portion of the Limited Guarantee Claims asserted by JPMorgan on behalf of the B-2 Holders is $98,746,316

- The bankruptcy court's Claims Orders reduced that aggregate principal amount to $25,337,168, leaving $73,409,148 as the Disputed Amount.

- Whereas the *pro rata* portion of assets available from the OHC Liquidation Trust was originally estimated to be 37.4%, *see* Plan, Section 4.18, upon information and belief, the Trustee has indicated that recovery is currently estimated to be 50% or more.

- 50% of the Disputed Amount of $73,409,148 is $36,704,574.

11. As the foregoing demonstrates, JPMorgan and the B-2 Holders acknowledge that a reduction in the Reserve Amount required by the Stay Order is appropriate, in view of the fact that the post-petition interest shortfalls component of the Limited Guarantee Claims is no longer in dispute. Under the circumstances that obtain here, however, JPMorgan and the B-2 Holders must, and hereby do, object to the mechanic proposed in the Trustee's Motion to address this issue.

12. The Motion essentially proposes that the Disputed Claims of JPMorgan and the B-2 Holders be treated in the same way that the Disputed Claims of other

unsecured creditors are treated under the Plan While this proposal might seem to make sense at first glance, it does not account for the fact that, as a result of US Bank's continued assaults on the rights of JPMorgan and the B-2 Holders with respect to their Disputed Claims and the Stay Order, JPMorgan and the B-2 Holders are differently situated from other Holders of Disputed Claims: Unlike these other Holders of Disputed Claims, whose rights with respect to their Disputed Claims and potential recovery on those Claims is protected by the Plan and not challenged by others, JPMorgan and the B-2 Holders must defend their rights and protect the possibility of a potential recovery on their Disputed Claims from the machinations of US Bank.

13 In view of the foregoing, JPMorgan and the B-2 Holders respectfully submit that, because US Bank refuses to treat them as having the full panoply of rights afforded by the Plan to Holders of Disputed Claims, the Trustee's proposal to treat the Disputed Claims of JPMorgan and the B-2 Holders as other Disputed Claims are treated is insufficient to protect them from the increased risks they face, as compared to other Holders of Disputed Claims.

14 Rather, the equities mandate that, to the extent that the Court is inclined to reduce the Reserve Amount, the Court's order must account for the reality of the circumstances that obtain here, in which the right of JPMorgan and the B-2 Holders to a Disputed Claims Reserve on account of their Disputed Claims on the terms provided in the Plan continues to be attacked by US Bank.

15 Accordingly, JPMorgan and the B-2 Holders respectfully request that the Court adopt one of the following two (2) alternative resolutions, with the Court's order expressly stating in either case that the September 28, 2004 Stay Order otherwise shall remain in full force and effect and shall not be subject to alteration, amendment, or countervailing orders absent an express order from this Court:

(a) A new fixed Reserve Amount of $36,704,574.

(b) The mechanic described in paragraph 20 of the Trustee's Motion; provided, however, that (a) the Trustee provides proof of the percentage of distributions made to date and confirms that the Trustee has or will create a Disputed Claims Reserve for JPMorgan and the B-2 Holders based on the percentage of distributions made to date; (b) the Court's order expressly states that (i) the Disputed Claims of JPMorgan and the B-2 Holders shall be treated in exactly the same manner that the Plan provides for Disputed Claims and shall accordingly be entitled to all rights, privileges, and protections that the Plan affords to Disputed Claims; (ii) the Disputed Claims of JPMorgan and the B-2 Holders are immediately entitled to a *pro rata* share of each distribution (past, current, and future) made by the OHC Liquidation Trust, along with the Allowed Claims of JPMorgan and the B-2 Holders; (iii) the OHC Liquidation Trust shall place each distribution in respect of the Disputed Claims of JPMorgan and the B-2 Holders in a Disputed Claim Reserve; (iv) the Disputed Claims of JPMorgan and the B-2 Holders shall at all times have reserved for it an aggregate percentage recovery that is equivalent to the aggregate percentage recovery paid to all Allowed Claims and paid into all other Disputed Claims Reserves; (v) the OHC Liquidation Trust shall establish the required Disputed Claims Reserve in respect of the Disputed Claims of JPMorgan and the B-2 Holders and make each distribution into such reserve as is required to comply herewith; and (vi) if the Trustee fails to comply with the foregoing, then no further distributions shall be made to any unsecured creditors from the OHC Liquidation Trust

16 JPMorgan and the B-2 Holders also respectfully request the opportunity to work with the Trustee in drafting a proposed order that reflects the alternative that the Court deems to be most appropriate, as the Trustee's proposed order requires further clarifying language

**Conclusion**

17. For the foregoing reasons, JPMorgan and the B-2 Holders respectfully request that the Court allow them the opportunity to work with the Trustee in drafting a proposed order for the Court's consideration that reflects one of the two (2) alternative resolutions of the issue raised in the Trustee's Motion proposed herein

Dated: August 15, 2005
Wilmington, Delaware

Respectfully submitted,

Russell C Silberglied (No 3462)
Jason M Madron (No 4431)
RICHARDS, LAYTON & FINGER, P A
One Rodney Square
Wilmington, DE 19899
(302) 651-7545

M William Munno
John J Galban
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

Christopher D Loizides
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 654-0248

Robert C Goodrich, Jr
STITES & HARBISON, PLLC
SunTrust Center, Suite 1800
424 Church Street
Nashville, TN 37219
(615) 244-5200

Alex P Herrington, Jr
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
(502) 587-3400

G. Eric Brunstad, Jr.
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
860) 240-2700

Timothy B. DeSieno
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Rheba Rutkowski
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

*Co-Counsel for JPMorgan Chase Bank, as Trustee*